IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERMEC TECHNOLOGIES CORP., a Delaware corporation,<br><br>    Plaintiff,<br><br> v.<br><br>PALM, INC., a Delaware corporation,<br><br>    Defendant. | )<br>)<br>)<br>) C. A. No. 07-272-SLR<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT PALM, INC.'S OPPOSITION TO INTERMEC CORP.'S MOTION TO STRIKE PALM, INC.'S INEQUITABLE CONDUCT DEFENSES

OF COUNSEL:

Robert T. Haslam
Nitin Subhedar
Jaideep Venkatesan
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, California 94025
Tel: (650) 324-7000

Robert D. Fram
Michael M. Markman
Robert J. Williams
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Tel: (415) 772-6000

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Palm, Inc.*

Dated: October 2, 2007

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT .................................................................. 1

ARGUMENT ................................................................................................................................. 3

    I.    Motions To Strike Are Disfavored ........................................................................ 3

    II.    Pleading Inequitable Conduct ................................................................................ 3

    III.    Palm Has Adequately Pleaded Its Inequitable Conduct Defense ......................... 4

        A.    Palm Identified The Prior Art Withheld By Intermec's Predecessor From The Patent Office, And Explained Why That Art Was Material ................................................................................ 5

        B.    Palm Set Out The Acts Of Intermec's Alleged Fraud – The Patentees' Knowledge Of And Duty To Disclose The Intermec Prior Art Patents And Their Failure To Do So – With Specificity ................................................................................................ 7

            1.    Palm Specified Those Responsible For The Inequitable Conduct That Renders The '678 Patent Unenforceable, And Pleaded They Had Knowledge Of And A Duty To Disclose The Intermec Prior Art Patents .......................................... 7

            2.    Palm Specifically Alleged That The '678 Patentees Failed To Disclose The Intermec Prior Art Patents To The PTO Despite Having Had Multiple Opportunities To Do So .................................................................................... 8

        C.    Palm Properly Alleged Deceptive Intent By The '678 Patentees On Information And Belief Based On Inferences .................................... 9

    IV.    Palm Has Adequately Pleaded Its Infectious Unenforceability Defense ........................ 12

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page**

### CASES

*Agere Sys. Guardian Corp. v. Proxim, Inc.*,
  190 F. Supp. 2d 726 (D. Del. 2002) .................................................................................. 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. __, 127 S. Ct. 1955 (May 21, 2007) ................................................................ 12

*Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.*,
  394 F.3d 1348 (Fed. Cir. 2005) .................................................................................. 5, 10

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
  295 F.3d 1277 (Fed. Cir. 2002) ...................................................................................... 12

*Chiron Corp. v. Abbott Labs*,
  156 F.R.D. 219 (N.D. Cal. 1994) ..................................................................................... 9

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
  120 F.3d 1253 (Fed. Cir. 1997) ........................................................................................ 9

*DataQuill Ltd. v. Handspring, Inc.*,
  2001 U.S. Dist. LEXIS 15832 (N.D. Ill. 2001) ............................................................. 11

*Dayco Prods., Inc. v. Total Containment, Inc.*,
  329 F.3d 1358 (Fed. Cir. 2003) ........................................................................................ 4

*Digital Control Inc. v. Charles Machine Works*,
  437 F.3d 1309 (Fed. Cir. 2006) .................................................................................... 3, 6

*EMC Corp. v. Storage Tech. Corp.*,
  921 F. Supp. 1261 (D. Del. 1996) ................................................................................. 5, 9

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
  417 F. Supp. 2d 580 (D. Del. 2006) ............................................................................... 13

*Fox Indus., Inc. v. Structural Preservation Sys., Inc.*,
  922 F.2d 801 (Fed. Cir. 1990) ..................................................................................... 2, 13

*Hebert v. Lisle Corp.*,
  99 F.3d 1109 (Fed. Cir. 1996) ........................................................................................ 12

*Kingsdown Med. Consultants v. Hollister, Inc.*,
  863 F.2d 867 (Fed. Cir. 1988) ..................................................................................... 3, 4

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.,*
    487 F.3d 897 (Fed. Cir. 2007) .................................................................................. 3

*McKesson Info. Solutions, L.L.C. v. Trizetto Group,*
    C.A. No. 04-1258-SLR 2005, U.S. Dist. LEXIS 6733 (D. Del. April 20, 2005) ............. 3, 7, 10

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,*
    331 F.3d 406 (3d Cir. 2003) .................................................................................. 4

*Praxair, Inc. v. ATMI, Inc.,*
    489 F. Supp. 2d 387 (D. Del. 2007) ...................................................................... 10

*Procter & Gamble Co. v. Nabisco Brands*, Inc.,
    697 F. Supp. 1360 (D. Del. 1988) ......................................................................... 3

*Salcer v. Envicon Equities Corp.,*
    744 F.2d 935 (2d Cir. 1984) ................................................................................. 3

*Schwarzkopf Techs. Corp. v. Ingersoll Cutting Tool Co.,*
    820 F. Supp. 150 (D. Del. 1992) ...................................................................... 4, 7, 10

*Scripps Clinic & Research Found. v. Baxter Travenol Labs.,*
    7 U.S.P.Q.2d 1562, 1988 U.S. Dist. LEXIS 1972 (D. Del. 1988) ................................ 4

*Trueposition, Inc. v. Allen Telecom, Inc.,*
    C.A. No. 01-823-GMS, 2003 U.S. Dist. LEXIS 881 (D. Del. Jan. 21, 2003) ............... 3, 4, 10

*Upjohn Co. v. Mova Pharm. Corp.,*
    225 F.3d 1306 (Fed. Cir. 2000) ............................................................................ 12

### FEDERAL RULES

37 C.F.R. 1.56(a)(1977) ............................................................................................. 4

Fed. R. Civ. P. 9(b) ........................................................................................ 4, 10, 11, 12

## INTRODUCTION AND SUMMARY OF ARGUMENT

Palm, Inc. ("Palm") alleges that one of the five patents asserted against it by Intermec Technology Corp. ("Intermec") is tainted and unenforceable as a direct result of inequitable conduct. Palm further alleges that two additional patents are unenforceable by virtue of the doctrine of infectious unenforceability.

The Fifth Affirmative Defense in Palm's Second Amended Answer, D.I. 17, ("SAA"), which Intermec now seeks to strike, spells out its inequitable conduct defense in great detail. At the heart of Palm's defense is the failure by Norand Corp., acquired by Intermec in 1997, to disclose *two of its own patents* to the Patent and Trademark Office during efforts to obtain U.S. Patent No. 5,349,678 ("the '678 patent"). (*See* SAA ¶¶ 40-63). Intermec is now asserting the '678 patent against Palm. It is not asserting, however, the two prior art patents that give rise to Palm's inequitable conduct defense (U.S. Patent Nos. 4,972,463 and 5,239,662), referred to here as the Intermec "Prior Art Patents."

The Intermec Prior Art Patents were material to the alleged invention in the '678 patent – a reasonable patent examiner would have considered the Prior Art Patents important to the patentability of the '678 patent. Not only did the Intermec Prior Art Patents both disclose a series of key elements that then turned up again in the '678 patent (SAA ¶¶ 47, 56), but they disclosed the one element that the PTO Examiner expressly found to be novel about the '678 patent – the "two data format feature." (SAA ¶¶ 48-50, 57-59.)

The patentees knew or should have known of the Prior Art Patents at the time they were trying to obtain the '678 patent from the PTO. All three of the patents share the same co-inventor, Michael D. Morris. (SAA ¶¶ 41-45, 46, 55). Further, some of the same attorneys prosecuted the '678 patent and the Prior Art Patents. (SAA ¶¶ 41, 45, 51, 60). And, since the

'678 Patent and the Prior Art Patents were all assigned to Norand, these individuals were also apparently all working for the same entity (later acquired by Intermec). Yet, none of these individuals disclosed the existence of the Intermec Prior Art Patents to the PTO. (SAA ¶¶ 44-45, 62-64).

Intermec contends that Palm fails to allege facts sufficient to show that inventor Michael Morris and the patent attorneys "had the knowledge necessary to make a knowing misrepresentation to the Patent Office" regarding Norand's (now Intermec's) Prior Art Patents. To the contrary, however, Palm has spelled out how the patentees violated their duty to the PTO to disclose the Prior Art Patents in detail. Those allegations will be explored thoroughly during discovery. For pleading purposes, however, Palm has exceeded its obligation to specifically plead its inequitable conduct defense.

Palm's Sixth Affirmative Defense, which Intermec also seeks to strike, is related. Palm alleges that two of the other patents now asserted by Intermec – U.S. Patent Nos. 5,568,645 ("'645 patent") and 5,987,499 ("'499 patent"), referred to here as the "Infected Patents" – are also unenforceable. Palm's defense invokes the well-established doctrine of infectious unenforceability. The inequitable conduct that taints the '678 patent legally infects its progeny. *See Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990). The Infected Patents are the "child" and "grandchild" of the same '678 patent that Palm alleges is unenforceable due to inequitable conduct: the '645 patent is a continuation of the '678 patent, and the '499 patent in turn is a continuation of the '645 patent. (SAA ¶¶ 65).

Intermec's motion does not discuss a ground for striking this defense that is independent of its effort to strike Palm's inequitable conduct defense; Intermec's reasoning appears to be that

2

if Palm's inequitable conduct defense is stricken then the infectious unenforceability defense should be stricken, too. Both of Palm's defenses are properly in the case.

## ARGUMENT

### I. Motions To Strike Are Disfavored

Motions to strike affirmative defenses under Fed. R. Civ. P. 12(f) are disfavored. A court considering such a request construes all facts in favor of the nonmoving party and will deny the motion if the defense is deemed sufficient under the law. *See Procter & Gamble Co. v. Nabisco Brands*, Inc., 697 F. Supp. 1360, 1362 (D. Del. 1988); *Trueposition, Inc. v. Allen Telecom, Inc.*, C.A. No. 01-823-GMS, 2003 U.S. Dist. LEXIS 881 at *18-20 (D. Del. Jan. 21, 2003). As this Court has noted, "courts prefer not to grant a motion to strike 'unless it appears to a certainty that ... [the movant] would succeed despite any state of the facts, which could be proved in support of the defense.'" *McKesson Info. Solutions, LLC v. Trizetto Group*, C.A. No. 04-1258-SLR, 2005 U.S. Dist. LEXIS 6733, *3 (D. Del. April 20, 2005) (Robinson, S.) (quoting *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984)).

### II. Pleading Inequitable Conduct

An inequitable conduct defense is predicated on a "failure to disclose material information, or submission of false material information, with an intent to deceive." *Kingsdown Med. Consultants v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988); *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007). The materiality of prior art that was not disclosed to the Patent Examiner can be assessed by asking whether "a reasonable examiner would have considered such prior art important in deciding whether to allow the parent application." *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309,

3

1314 (Fed. Cir. 2006) (quoting *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003))(additional citations omitted).

Inequitable conduct is pleaded with particularity under Fed. R. Civ. P. 9(b), but even these averments "remain subject to the liberal pleading standard of Rule 8, which requires only a 'short and plain' statement of a claim or defense." *Trueposition*, 2003 U.S. Dist. LEXIS 881 at *17; *see also Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n. 2 (3d Cir. 2003) ("The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim."). Under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); *see also Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 730 (D. Del. 2002) (summary allegation of "intent to deceive" sufficient); *Schwarzkopf Tech. v. Ingersoll Cutting Tool Co.*, 820 F. Supp. 150, 153 (D. Del. 1992) (holding pleading of intent "upon information and belief" sufficient).[1]

### III. Palm Has Adequately Pleaded Its Inequitable Conduct Defense

Palm's Second Amended Answer satisfies the pleading requirements for inequitable conduct. Spanning twenty-seven paragraphs over eight pages of the Answer, Palm spells out its defense with great specificity. (SAA ¶¶ 40-67).

To plead an inequitable conduct defense, Palm need only disclose the allegedly withheld prior art and the acts of the alleged fraud. *Trueposition*, 2003 U.S. Dist. LEXIS 881 at *18-20; *Schwarzkopf*, 820 F. Supp. at 154; *Scripps Clinic & Research Found. v. Baxter Travenol Labs.*, 7

---

[1] Intermec incorrectly states the standard for assessing inequitable conduct, suggesting that Palm must allege "a knowing misrepresentation to the patent office...." Intermec Brief (D.I. 24) at 1. That statement accurately describes one species of inequitable conduct, but not the one that Palm is alleging here. Palm alleges that the '678 patentees failed to disclose key information – the Intermec Prior Art Patents – with the intent to deceive the PTO. The non-disclosure of material prior art with an intent to deceive the Examiner is a well-recognized species of inequitable conduct. *See Kingsdown*, 863 F.2d at 872; 37 C.F.R. 1.56(a)(1977).

U.S.P.Q.2d 1562, 1988 U.S. Dist. LEXIS 1972 (D. Del. 1988); *EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996).

As explained below, Palm identifies the prior art at issue, explains why the prior art was material to patentability of the '678 patent, alleges that the '678 patentees knew of the prior art (and explains how they knew of it), alleges the "acts of fraud" -- the failure to disclose the prior art (setting out when the art could and should have been disclosed to the Examiner), and alleges why an inference of deceptive intent is appropriate. The law does not require more. *See id.*; *Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.*, 394 F.3d 1348, 1351-54 (Fed. Cir. 2005) (upholding finding of clear and convincing evidence supporting allegations of knowledge, materiality, and inferences of intent).

### A.   Palm Identified The Prior Art Withheld By Intermec's Predecessor From The Patent Office, And Explained Why That Art Was Material

Palm has disclosed the prior art the '678 patentees withheld from the PTO. They failed to disclose two of their own company's patents to the Examiner while they attempted to obtain the '678 patent. The Intermec Prior Art Patents were U.S. Patent No. 4,972,463, for an "In-Store Multiple Device Communications Unit And Centralized Data System Utilizing Same" (*see* SAA ¶ 46), and U.S. Patent No. 5,239,662, for a "System Including Multiple Device Communications Controller Which Converts Data Received From Two Different Customer Transaction Devices Each Using Different Communications Protocols Into A Single Communications Protocol." (SAA ¶ 55). Though not mentioned in the answer, the patents were originally owned by Norand, and acquired by Intermec in 1997.

Both of the Intermec Prior Art Patents name Michael Morris as a co-inventor, as does the '678 patent. (SAA ¶¶ 46, 55). The attorneys who were given powers of attorney to prosecute the '678 patent are listed in the Second Amended Answer. (*See* SAA ¶ 41).[2]

Palm has described the relationship between the technology disclosed in the Intermec Prior Art Patents and in Intermec's asserted '678 patent in detail, in order to describe why those patents were material to the '678 patent. Two sets of allegations are particularly noteworthy.

*First,* Palm explains that both the Intermec Prior Art Patents disclose "several of the elements of the '678 patent." (SAA ¶¶ 47, 56). Palm spells out at length what the overlapping elements between the older Intermec patents and the asserted '678 patent included. *Id.*[3]

*Second,* Palm alleges detailed reasons why "there is a substantial likelihood that a reasonable examiner would have considered" the Intermec Prior Art Patents to be "prior art information important in deciding whether to allow the '678 patent to issue" (SAA ¶¶ 48-49, 57-58). *See Digital Control Inc.*, 437 F.3d at 1314 (describing "reasonable examiner" standard). Specifically, the Examiner reviewing the '678 patent unambiguously explained why he was issuing that patent – based on his research, a key element of the patent claims (a "two data format feature") was not taught by the prior art. (SAA ¶¶ 49, 58). But, the Examiner did not have before him copies of the two Intermec Prior Art Patents – both of which are prior art, and both of which disclosed this key feature. (SAA ¶¶ 48-50, 57-59).

---

[2] Though not mentioned in the answer, these individuals were attorneys with the law firm McAndrews, Held & Malloy.

[3] The Intermec Prior Art Patents, along with the asserted '678 patent, have "a data communications system consisting of a plurality of client data collection terminals, a server station with a mass memory means, communication means for interconnecting the server station with the client terminals, and the sever station operating on data in a second format style different from the first format style of the data terminal" also found in at least claim 1 of the '678 patent." (SAA ¶¶ 47, 56).

6

Palm not only identifies the prior art at issue. It describes the key "two data format feature" pointed to by the Examiner, and specifically points to the very columns and lines in the Intermec Prior Art Patents where – unbeknownst to the Examiner – that feature had first been disclosed. (SAA ¶¶ 50, 59).

### B. Palm Set Out The Acts Of Intermec's Alleged Fraud – The Patentees' Knowledge Of And Duty To Disclose The Intermec Prior Art Patents And Their Failure To Do So – With Specificity

Allegations of the '678 patentee's wrong-doing follow directly from Palm's materiality allegations. Palm discloses that the '678 patentees knew of the Intermec Prior Art Patents. Palm also alleges that the patentees had a duty to disclose those patents, and that they failed to do so.

#### 1. Palm Specified Those Responsible For The Inequitable Conduct That Renders The '678 Patent Unenforceable, And Pleaded They Had Knowledge Of And A Duty To Disclose The Intermec Prior Art Patents

Intermec wrongly suggests that Palm did not adequately identify the individual perpetrators of Intermec's alleged inequitable conduct. This Court has refused to strike inequitable conduct allegations where no individual is specifically named, and the allegations instead identify a failure to submit prior art to the PTO merely "by the inventors and/or their agents." *See McKesson*, 2005 U.S. Dist. LEXIS at *5-8; *Schwarzkopf*, 820 F. Supp. at 154 (alleging misrepresentations or omissions "by the assignee, the patentee, and/or the attorney who prosecuted" the patent).

For its part, Palm has alleged much more. Palm pleads that Michael Morris, named as an inventor of the '678 patent and the Intermec Prior Art Patents, owed a duty of candor. (SAA ¶¶ 41-46, 55). It would defy credulity to suggest that Mr. Morris was totally unaware of ***his own*** two earlier patents, or of their materiality, and Palm justifiably alleges that he had knowledge of the Intermec Prior Art Patents. (SAA ¶¶ 53, 62).

7

Palm also noted that several of the attorneys who prosecuted the '678 patent, and who were on notice of the Intermec Prior Art Patents since either they or their colleagues participated in prosecution of those patents, also owed this duty. (SAA ¶¶ 41-46, 55). While some may bear a greater share of the responsibility to adhere to the duty of candor required by the PTO (including William Wesley who was a primary prosecutor of the '678 and older '463 patents, and R. Lewis Gable, who signed many of the documents used to prosecute the '678 patent) in an abundance of caution and to provide as specific a disclosure as possible, Palm disclosed all of the attorneys who had a power of attorney to prosecute the '678 patent. (*See* SAA ¶ 41). Palm understandably alleges on information and belief that those responsible for prosecuting the '678 patent knew of the Intermec Prior Art Patents and their materiality. (*See* SAA ¶¶ 53, 62).[4]

### 2. Palm Specifically Alleged That The '678 Patentees Failed To Disclose The Intermec Prior Art Patents To The PTO Despite Having Had Multiple Opportunities To Do So

Palm alleges that those involved with the prosecution of the '678 patent – including Michael Morris and patent counsel – should have disclosed the Intermec Prior Art Patents on at least two separate occasions. (SAA ¶¶ 51, 60). But, they never did.

*First,* the '678 patentees should have disclosed the Intermec Prior Art Patents at any point during the initial prosecution of the '678 patent. They knew the Prior Art '463 Patent had been published, and the Prior Art '662 Patent had been issued, before they even filed the application for the '678 patent. (SAA ¶¶ 44-45.) The '678 patent application listed a common co-inventor.

---

[4] The prosecution histories of the asserted '678 patent, and the two Intermec Prior Art Patents, set out the identities of the attorneys who actually signed each document to the PTO. A comparison of those documents also identifies those involved in the prosecution of multiple patents (and therefore unquestionably aware of the materiality of the Prior Art Patent). These sources are publicly available, and should already be in Intermec's possession given that Intermec will need to produce it in discovery.

(SAA ¶¶ 41, 46, 55.) And at least some prosecuting agents overlapped with the Intermec Prior Art Patents. *Id.*

*Second,* they should have disclosed the earlier patents when the Examiner told them exactly why he was issuing the '678 patent in the Notice of Allowability. When the Examiner explained that the "two data format feature" was not disclosed in the prior art, the '678 patentees were put on notice of the importance of a feature that they knew (or should have known) was disclosed in the two earlier Intermec patents. (SAA ¶¶ 49-50, 57-58.) The prosecution of the patent application remained open for three months after the Examiner made this statement. (SAA ¶¶ 52, 61). Yet the '678 patentees disclosed nothing.

Palm's pleading thus exceeds the standard articulated in the two cases cited by Intermec concerning the degree to which the defense must "disclose the acts of the alleged fraud." *See EMC Corp.*, 921 F. Supp. at 1263 (striking inequitable conduct defense because it failed to identify the withheld prior art); *Chiron Corp. v. Abbott Labs*, 156 F.R.D. 219, 223 (N.D. Cal. 1994) (striking inequitable conduct defense that merely asserted a 7-page affidavit submitted to the PTO was misleading, without setting out how or what paragraphs were deceptive).

### C. Palm Properly Alleged Deceptive Intent By The '678 Patentees On Information And Belief Based On Inferences

Based on the facts articulated above, Palm alleges on information and belief that the '678 patentees intended to mislead the PTO. (*See* SAA ¶¶ 54, 63). Palm's allegation is grounded on inferences derived from three specific sets of allegations.

*First,* the inference of deceptive intent is based on the fact that the Intermec Prior Art Patents are overwhelmingly material. *See* Section III.A *supra*. The fact that a reference is both material and withheld can provide the basis for an inference of deceptive intent. *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997).

9

*Second*, the fact that Mr. Morris was the inventor of both the '678 patent and the withheld Intermec Prior Art patents demonstrates that he had clear knowledge of those patents and of their materiality. (SAA ¶¶ 53, 62). In such circumstances, this Court has found a basis for an inference of an intent to mislead. *See McKesson*, 2005 U.S. Dist. LEXIS at *6 (denying motion to strike where defense included allegation of failure to disclose inventor's own prior art publication and allegation on information and belief of intent to deceive PTO).[5]

*Third*, there can be no question of the '678 patentees knowledge of the specific feature that the examiner found to be the point of novelty – the "two data format feature." This feature was present in the Intermec Prior Art Patents and therefore was known to the patentee. In such circumstances, a reasonable inference can be drawn that the patentee withheld those references precisely to avoid disclosing the fact that this feature in fact was in the prior art.

There is no defect in Palm's pleadings based on the fact that its allegations of deceptive intent are based on circumstantial evidence. The law recognizes that direct evidence of intent is rarely available, and "[i]ntent need not, and rarely can, be proven by direct evidence." *Bruno Independent Living Aids*, 394 F.3d at 1354. In fact, "intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." *Id.* And "[a]n inference of intent . . . is warranted where a patent applicant knew or should have known that the withheld information would be material to the PTO's consideration of a patent application." *Praxair, Inc. v. ATMI, Inc.*, 489 F. Supp. 2d 387, 393 (D. Del. 2007) (Robinson, S.).

---

[5] Other Courts have found sufficient for Rule 9(b) inequitable conduct allegations even less specific than those in *McKesson*. *See Trueposition*, 2003 U.S. Dist. LEXIS 881 at *18-20 (pleading had "one paragraph which names the title and publication date of at least one allegedly withheld material prior art publication"); *Schwarzkopf*, 820 F. Supp. at 154 (pleading named the withheld reference and summarily asserted an intentional failure to disclose).

10

Nor does Rule 9(b) require specific pleading as to issues of ultimate intent. The rule states that "allegations of 'malice, intent, knowledge and other conditions of mind of a person may be averred generally.' Fed. R. Civ. Pro. 9(b)." *DataQuill Ltd. v. Handspring, Inc.*, 2001 U.S. Dist. LEXIS 15832, *8 (N.D. Ill. 2001). An allegation that the patentee's failure to disclose material information "was knowing, willful, and done with an intent to deceive the PTO into issuing the patent-in-suit … sufficiently pleads knowledge and the intent element for inequitable conduct." *Id.* at *9. Whether the patentee "actually had the requisite intent or actually had knowledge of the material prior art during the application process is a factual determination that cannot be made at this stage of the litigation and, indeed, must be proved by clear and convincing evidence." *Id.* But it is sufficient for pleading purposes, "and merits the opportunity to develop more facts in support of its allegations." *Id.* at *10.

Palm does more than just identify the withheld art, assert that it is material, and then allege that it was withheld with deceptive intent. Rather, Palm has provided a detailed description of *why* the withheld art was material (because of the disclosure in the Intermec Prior Art Patents of the very feature that the Examiner decided made the '678 patent patentable), *how* the '678 Patentees were aware of the prior art patents and their materiality to the '678 patent (the same co-inventor is named on all three patents, and there was a degree of overlap between attorneys involved in prosecution), and *how* deceptive intent can properly be inferred (the high degree of materiality of the Intermec Prior Art Patents, the involvement of some of the same patentees, and the failure to disclose the Intermec Prior Art Patents even after being put on

further notice of their materiality based on the Examiner's reasoning in the Notice of Allowability).[6]

Given that considerably less detailed allegations have been found by Courts in this District and elsewhere to satisfy the strictures of Rule 9(b), Palm's inequitable conduct defenses are pleaded adequately. Palm has done far more than provide mere "labels and conclusions" or a "formulaic recitation of the elements" of its defense, deemed insufficient and criticized by the Supreme Court's recent antitrust decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1965 (May 21, 2007), on which Intermec attempts to rely.

### IV.   Palm Has Adequately Pleaded Its Infectious Unenforceability Defense

Intermec's motion also seeks to strike Palm's sixth affirmative defense, alleging infectious unenforceability. Intermec does not directly attack the substance of this defense; its motion appears based on the fact that Palm's infectious unenforceability defense relies on the inequitable conduct defense described at length above.

Just as Palm has properly alleged its inequitable conduct defense, its infectious unenforceability defense also passes muster. Palm alleges that the two Infected Patents asserted against Palm – Intermec's '645 and '499 patents – are rendered unenforceable by the inequitable conduct, described at length above, that taints Intermec's '678 patent. The Infected Patents are

---

[6] Intermec suggests that Palm's allegations are insufficient based on two cases – *Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306 (Fed. Cir. 2000), and *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277 (Fed. Cir. 2002). Neither case relates to pleading inequitable conduct, but rather to proving it at trial. And neither case suggests that an inference of intent is barred by the law. Rather, both cases stand for the basic principle that "intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Upjohn*, 225 F.3d at 1312 (quoting *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996)). As noted above, however, Palm is *not* relying upon mere nondisclosure to infer deceptive intent. The totality of the circumstances alleged by Palm, coupled with the '678 patentees' nondisclosure, all point to deceptive intent.

both in the same "family" as the '678 patent. (*See* SAA ¶ 65). The specification of all three patents are the same. *Id.* Inequitable conduct with respect to the '678 patent taints and infects its progeny (SAA ¶¶ 66-67). *See Fox Industries, Inc.*, 922 F.2d at 804; *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 595-96 (D. Del. 2006).

Intermec gives no independent reason for this Court to strike Palm's infectious unenforceability defense. Having satisfied its pleading obligations with respect to inequitable conduct, Palm's infectious unenforceability defense should not be stricken.

## **CONCLUSION**

Palm's pleading contains far more than mere "labels and conclusions" or a "formulaic recitation of the elements of" inequitable conduct. For the foregoing reasons, the Court should deny Intermec's motion to strike.

Respectfully submitted,

OF COUNSEL:

Robert T. Haslam
Nitin Subhedar
Jaideep Venkatesan
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, California 94025
Tel: (650) 324-7000

Robert D. Fram
Michael M. Markman
Robert J. Williams
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Tel: (415) 772-6000

Dated: October 2, 2007
822675 / 31950

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
　　Richard L. Horwitz (#2246)
　　David E. Moore (#3983)
　　Hercules Plaza, 6th Floor
　　1313 North Market Street
　　Wilmington, DE 19801
　　Tel: (302) 984-6000
　　rhorwitz@potteranderson.com
　　dmoore@potteranderson.com

*Attorneys for Defendant Palm, Inc.*

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on October 2, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on October 2, 2007, I have Electronically Mailed the documents to the following person(s):

| | |
|---|---|
| Jack B. Blumenfeld<br>Rodger D. Smith, II<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 N. Market Street<br>Wilmington, DE 19899<br>JBlumenfeld@MNAT.com<br>rdsefiling@mnat.com | Carson P. Veach<br>Leland W. Hutchinson, Jr.<br>Jacob D. Koering<br>Freeborn & Peters LLP<br>311 South Wacker Drive, Suite 3000<br>Chicago, IL 60606<br>cveach@freebornpeters.com<br>lhutchinson@freebornpeters.com<br>jkoering@freebornpeters.com |

By: /s/ David E. Moore
   Richard L. Horwitz
   David E. Moore
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   Wilmington, Delaware 19899-0951
   Tel: (302) 984-6000
   rhorwitz@potteranderson.com
   dmoore@potteranderson.com

805081 / 31950