IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERMEC TECHNOLOGIES CORP.,<br>a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PALM, INC.,<br>a Delaware corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 07-272 (SLR) |

**INTERMEC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PALM'S INEQUITABLE CONDUCT DEFENSES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff*
*Intermec Technologies Corp.*

OF COUNSEL:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000

October 15, 2007

TABLE OF CONTENTS

| | | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| INTRODUCTION | | 1 |
| I. | THE SUPREME COURT HAS RULED THAT ACTUAL FACTS MUST BE PLED SHOWING A RIGHT TO RELIEF | 1 |
| II. | PALM HAS FAILED EVEN TO PLEAD FACTS SHOWING ACCESS TO INFORMATION, LET ALONE KNOWLEDGE OF THAT INFORMATION | 3 |
| III. | PALM'S ULTIMATE CONCLUSION IS BASED ON A SERIES OF ASSUMPTIONS, NOT FACTS | 6 |
| CONCLUSION | | 7 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) 1-2

*Bruno Independent Living Aids v. Acorn Mobility Servs., Ltd.*,
394 F.3d 1348 (Fed. Cir. 2005) 6

*Carter-Wallace, Inc. v. Riverton Laboratories, Inc.*,
47 F.R.D. 366 (S.D.N.Y. 1969) 4

*Conley v. Gibson*,
355 U.S. 41 (1957) 1

*Critikon, Inc. v. Becton Dickinson Vascular Access*,
120 F.3d 1253 (Fed. Cir. 1997) 6

*McKesson Information Solutions, Inc. v. The Trizetto Group*,
2005 U.S. Dist. LEXIS 6733 (D. Del.) 5

*Schwarzkopf Technologies Corp. v. Ingersoll Cutting Tool Co.*,
820 F. Supp 150 (D. Del. 1992) 5

*Upjohn Co. v. Mova Pharm. Corp.*,
225 F.3d 1306 (Fed. Cir. 2000) 7

## INTRODUCTION

### I. THE SUPREME COURT HAS RULED THAT ACTUAL FACTS MUST BE PLED SHOWING A RIGHT TO RELIEF

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court rejected just the type of conclusory and factually unsupported conclusions made by Palm in this case as being insufficiently pled under the Federal Rules of Civil Procedure. In *Twombly*, the Supreme Court overruled the oft-cited language of *Conley v. Gibson*, 355 U.S. 41, 47 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that . . . [a party] can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. at 1968-69. Pleadings are required to include "enough factual matter (taken as true) to suggest [wrongful conduct.]" *Id*. at 1965. It is no longer enough to allege a set of facts that might entitle a claimant to relief, there must be facts plead that show wrongful conduct is plausible. *Id*. at 1966. It is proper to dismiss pleadings, therefore, where all that is plead are facts showing ambiguous behavior, which could be either actionable or not, and nothing more. *Id*. at 1973.

Because the pattern of alleged conduct in *Twombly* and the pattern of Palm's inequitable conduct claim are so similar, a brief review of the facts in *Twombly* is relevant to this case. In *Twombly*, the Court addressed allegations of parallel conduct under the Sherman Act. *Id*. at 1962. The complaint alleged that the accused companies "engaged in parallel conduct" and entered "agreements . . . to refrain from competing against each other" in violation of the Act. *Id*. Each of those allegations was accompanied by alleged facts and a conclusory inference of wrongful conduct from those facts. *Id*. at 1962-63. Specifically, plaintiff alleged that there was an absence of meaningful competition between the companies, and that the companies had engaged in a parallel course of conduct, which precluded the entry of competitors into the

market. *Id*. at 1970. From those alleged facts -- which the Court found to be potentially actionable, and potentially non-actionable -- plaintiff alleged a violation of the act. *Id*.

Palm's allegations are similar. Palm alleges potential, but not actual, access to information. Palm also alleges that the information is material to the patentability of the '678 Patent. Palm alleges circumstances under which there may have been an opportunity to disclose that information to the USPTO. From that, Palm concludes -- without facts -- that the information was actually known, and that the information was withheld with intent to mislead the patent office. But there are any number of reasons why this information may not have been disclosed, including but not limited to: (1) that it was not known (or remembered) by those in a position to disclose the information to the USPTO; (2) that it was not considered material to patentability, or that it was cumulative of other art already in front of the patent office; or even (3) that mere error, and not an intent to mislead, resulted in its non-disclosure.[1] The conduct alleged as wrongful by Palm -- non-disclosure of prior art -- is ambiguous and does not support Palm's factually-unsupported conclusion of wrongdoing.

Palm's pleadings are the exact type of conclusory allegations that the Supreme Court ruled were improper in *Twombly*. Intermec does not argue that Palm has made *no* factual allegations related to inequitable conduct. It has simply failed to plead facts regarding the *key* allegations that would be needed to support such a claim, including: (1) failing to identify the persons that supposedly had access to information sufficient to have engaged in inequitable conduct; (2) failing to plead a factual basis for access to that information; and (3) failing to provide any factual basis showing an intent to deceive by those persons (other than its allegations

---

1 Intermec does not by this motion concede this information is material to patentability.

of presumed knowledge). For all these reasons, Palm's affirmative defense must be stricken as insufficient.

## II. PALM HAS FAILED EVEN TO PLEAD FACTS SHOWING ACCESS TO INFORMATION, LET ALONE KNOWLEDGE OF THAT INFORMATION

Palm's Second Amended Answer (D.I. 17) fails to plead any facts showing that persons associated with both the applications that led to the '463 and 662 Patents ("Other Applications") and the application that led to the '678 Patent ("678 Application") (collectively "Applications") were in a position to obtain the information necessary to trigger a duty to disclose the Other Applications to the USPTO.

Of the nineteen attorneys named in its Second Amended Answer, Palm alleges no facts showing that any of the individual attorneys were involved in the prosecution of *both* the '678 Application and either of the Other Applications. Further, for the one remaining named individual -- the named inventor Michael Morris -- Palm alleges no facts showing that he was involved in the prosecution of either of the Other Applications, or the '678 Application. As such, Palm's allegation that these individuals were "aware" of the Other Applications amounts to nothing more than a formulaic, conclusory allegation.

Palm fails to identify with specificity any of the attorneys that were supposedly involved in the prosecution of both the application that led to the '678 Patent and either one of the applications that led to the '463 or the '662 Patents. Palm alleges simply and conclusorily that "one or more" of a group of nineteen attorneys was "associated with the [applications that led to the '463 and the '662 Patents.]"). D.I. 17, ¶¶ 44, 45. Palm's Opposition does not attempt to defend this deficiency. Instead, Palm argues that its generic pleading of 19 individual attorneys was done "out of an abundance of caution and to provide as specific disclosure as possible." D.I. 28 at 8.

By naming all 19 attorneys that were given a bulk associate power of attorney on a file, however, Palm has essentially accused an entire law firm of inequitable conduct. But inequitable conduct requires specific knowledge and intent to deceive, which necessarily can be attributed only to individuals, not law firms. If, indeed, naming an entire law firm with no identification of the individual lawyer's supposed relationship to the applications is "as specific disclosure as possible," Palm has conceded Intermec's point. Palm's pleading fails to identify even the individuals who could have had knowledge sufficient to commit inequitable conduct.

Perhaps recognizing this shortcoming, Palm includes in its Opposition the names of the persons supposedly associated with the Applications, including William Wesley, who Palm claims was "a primary prosecutor of the '678 and older '463 patents," and R. Lewis Gable, who Palm claims "signed many of the documents used to prosecute the '678 Patent." D.I. 28 at 8, citing D.I. 17, ¶ 41. Paragraph 41 of Palm's Second Amended Answer, however, includes no specific factual allegation showing the role either Mr. Wesley or Mr. Gable played in relation to those applications. Because the roles played by Mr. Wesley and Mr. Gable in the prosecution of the Other Applications and the '678 Application are not contained in the Second Amended Answer itself, Palm's comments should not be considered in this motion to strike. *See Carter-Wallace, Inc. v. Riverton Laboratories, Inc.*, 47 F.R.D. 366, 368 (S.D.N.Y. 1969) (holding that, in ruling on a motion to strike, "[i]n examining the defenses, the Court . . . should not consider matters contained outside the pleadings").

Even if this Court were to consider Palm's explanation regarding the relevance of Mr. Wesley and Mr. Gable, that explanation is incorrect. Although Palm argues conclusorily that Mr. Wesley was "a primary prosecutor" on both the '678 Patent and the older '463 Patent, that allegation is neither supported by the allegations in the Second Amended Answer, nor is it

true. Mr. Wesley did not sign a single paper sent to the USPTO during the prosecution of the '463 Patent, and signed only the associate power of attorney for the '678 Patent. Thus, even Palm's alleged facts in its Opposition paper are incorrect.[2]

Palm cites two cases that purportedly stand for the proposition that a defendant need only allege who the fraudulent parties are generally to support a claim of inequitable conduct. Both cases are inapposite. First, neither case stands for the proposition argued by Palm, that it is somehow acceptable generally to plead inequitable conduct "by the inventors and/or their agents."[3]

Second, Palm's Second Amended Answer fails to provide any factual basis that any of the individuals named -- including the inventor Michael Morris -- had knowledge of facts sufficient to raise the possibility of disclosure of the Other Applications to the USPTO. Palm alleges only that the group of attorneys and Michael Morris were "aware" of the applications that led to the '463 and '662 Patents, and were "aware" that they were material to patentability. D.I. 17, ¶¶ 52, 53, 61, 62. As shown above, Palm fails to plead facts showing that any attorney actually prosecuting the '678 Application was in a position to be "aware" of the Other Applications. Furthermore, Palm pleads no facts showing that Mr. Morris could have been aware of facts that would trigger a duty to disclose.

---

2 By citing these facts, Intermec does not intend to convert its motion to strike into a motion for summary judgment. Instead, Intermec is simply pointing out Palm's misstatements in its briefing.

3 In *McKesson Information Solutions, Inc. v. The Trizetto Group*, 2005 U.S. Dist. LEXIS 6733,*7 (D. Del.), the Court did not address whether generically pleading a law firm committed inequitable conduct was sufficient, it addressed only what was sufficient pleading as far as the alleged prior art and the acts alleged to be fraud. In *Schwarzkopf Technologies Corp. v. Ingersoll Cutting Tool Co.*, 820 F. Supp 150 (D. Del. 1992), the Court allowed an inequitable conduct claim to be maintained, but only after the pleadings had been amended to recite more specific information. *Id*. at 154.

Palm attempts to overcome this shortcoming by contending conclusorily that "it would defy credulity to suggest that Mr. Morris was totally unaware of his own two earlier patents." D.I. 17 at 7. Palm misses the point. Palm is required to plead facts showing that it is probable that Mr. Morris was aware that his two earlier patents could be material to patentability of the '678 Application, and required disclosure. All Palm has pled is that Mr. Morris should be assumed to know that the Other Applications were material to the '678 Application. But Palm has pled no facts -- other than Mr. Morris is an inventor -- supporting those assumptions.

## III. PALM'S ULTIMATE CONCLUSION IS BASED ON A SERIES OF ASSUMPTIONS, NOT FACTS

If Palm's assumptive conclusions of access to information and knowledge of the materiality of that information were not enough to warrant striking its affirmative defense, Palm assumes, yet again, that the information was deliberately withheld by the patentee with intent to mislead. Palm relies upon pure inference to establish "intent to mislead." D.I. 17, ¶¶ 54, 63. Although some case law supports inferring intent to mislead,[4] no case law supports the contention that an entire claim of inequitable conduct can be inferred based on information not being disclosed.

Palm's argument is a house of cards. Palm assumes that one or more people within a larger group had the requisite knowledge of certain information. Then, Palm assumes that those persons would have recognized that information as something that should be disclosed to the USPTO. Then, Palm assumes that the information was not disclosed with intent to

[4] In both *Critikon* and *Bruno Independent Living Aids*, the courts had specific, direct, and extensive evidence of awareness and knowledge of uncited prior art. *Critikon, Inc. v. Becton Dickinson Vascular Access*, 120 F.3d 1253, 1257-58 (Fed. Cir. 1997); *Bruno Independent Living Aids v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351-52 (Fed. Cir. 2005). Palm has failed to plead any facts that establish the same in this case.

mislead. Its ultimate conclusion, therefore, is that the patentees for the '678 Patent should be assumed to have engaged in inequitable conduct based upon not one, not two, but three separate assumptions, which are supported only by the fact that certain information was not disclosed. Stripping these assumptions away, Palm has pled no facts showing wrongdoing, and thus no facts making it plausible that the wrongdoing took place. *See Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1312 (Fed. Cir. 2000) ("[I]ntent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.").

CONCLUSION

Palm's affirmative defense of inequitable conduct should be struck for failure to plead facts showing: (1) potential access to information that might be material to patentability by any person; (2) knowledge that the information was material to patentability; and (3) the information was withheld from the USPTO for any reason, let alone with an intent to deceive the USPTO. Such assumptive pleadings are inadequate, and should be dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff*
*Intermec Technologies Corp.*

OF COUNSEL:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000

October 15, 2007

1268046

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP

I further certify that I caused copies of the foregoing document to be served on October 15, 2007, upon the following in the manner indicated:

*VIA ELECTRONIC MAIL AND HAND DELIVERY*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*VIA ELECTRONIC MAIL AND FIRST CLASS MAIL*

Robert T. Haslam
Nitin Subhedar
Jaideep Venkatesan
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025
robert.haslam@hellerehrman.com
nitin.subhedar@hellerehrman.com
jay.venkatesan@hellerehrman.com

Robert D. Fram
Michael M. Markman
Robert J. Williams
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
robert.fram@hellerehrman.com
michael.markman@hellerehrman.com
robert.williams@hellerehrman.com

/s/ Rodger D. Smith II

Rodger D. Smith II (#3778)