IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERMEC TECHNOLOGIES CORP., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 07-272 (SLR) |
| v. | ) | |
| | ) | |
| PALM, INC., | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**INTERMEC'S ANSWER TO
PALM'S THIRD AMENDED COUNTERCLAIMS**

Counterclaim defendant Intermec Technologies Corp. ("Intermec") hereby replies to

counterclaim plaintiff Palm, Inc.'s ("Palm") Counterclaims as follows:

**NATURE AND BASIS OF ACTION**

1.      This is an action arising under the United States Patent Act, 35 U.S.C. § 1 *et seq*.

**REPLY**:      Intermec admits the allegations of this paragraph.

**PARTIES**

2.      Counterclaim Defendant Intermec is, on information and belief, a corporation
incorporated under the laws of the State of Delaware and has its princip[al] place of business at
6001 36th Avenue West, Everett, WA 98803.

**REPLY**:      Intermec admits the allegations of this paragraph.

3.      Counterclaimant Palm is a corporation organized and existing under the laws of
Delaware, having a place of business at 950 West Maude Avenue, Sunnyvale, CA 94085.

**REPLY**:      Intermec is without knowledge or information sufficient to form a belief

as to the truth of the allegations in this paragraph, and accordingly denies same, leaving Palm to

its proofs.

## JURISDICTION AND VENUE

4.      This is an action for declaratory judgment of non-infringement and invalidity of U.S. Patent No. 5,349,678 ("the '678 patent"), U.S. Patent No. 5,568,645 ("the '645 patent"), U.S. Patent No. 5,987,499 ("the '499 patent"), U.S. Patent No. 5,468,947 ("the '947 patent"), and U.S. Patent No. 5,892,971 ("the '971 patent"). This is also an action for infringement of U.S. Patent No. 6,665,803 ("the '803 patent") (Ex. A hereto), and U.S. Patent No. 7,096,049 ("the '049 patent") (Ex. B hereto). This court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

**REPLY**:      Intermec admits that this Court has subject matter jurisdiction over the

claims identified in this paragraph.

5.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c).

**REPLY**:      Intermec admits the allegations of this paragraph.

## GENERAL ALLEGATIONS

6.      On May 18, 2007, Intermec filed suit against Palm, claiming infringement of the '678, '645, '499, '947 and '971 patents.

**REPLY**:      Intermec admits the allegations of this paragraph.

7.      A justiciable controversy exists between Intermec and Palm concerning the infringement and validity of the '678, '645, '499, '947 and '971 patents.

**REPLY**:      Intermec admits the allegations of this paragraph.

## FIRST COUNTERCLAIM
## (NONINFRINGEMENT OF THE INTERMEC PATENTS-IN-SUIT)

8.      Palm incorporates paragraphs 1-7 as if fully set forth herein.

**REPLY**:      Intermec incorporates its replies to paragraphs 1-7 as if fully set forth

herein.

9.      Palm has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '678 patent asserted by the plaintiff in this litigation ("the asserted '678 claims").

**REPLY**:      Intermec denies the allegations of this paragraph.

10.    Palm is entitled to a declaratory judgment that Palm does not infringe the asserted '678 claims.

**REPLY**:    Intermec denies the allegations of this paragraph.

11.    Palm has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '645 patent asserted by the plaintiff in this litigation ("the asserted '645 claims").

**REPLY**:    Intermec denies the allegations of this paragraph.

12.    Palm is entitled to a declaratory judgment that Palm does not infringe the asserted '645 claims.

**REPLY**:    Intermec denies the allegations of this paragraph.

13.    Palm has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '499 patent asserted by the plaintiff in this litigation ("the asserted '499 claims").

**REPLY**:    Intermec denies the allegations of this paragraph.

14.    Palm is entitled to a declaratory judgment that Palm does not infringe the asserted '499 claims.

**REPLY**:    Intermec denies the allegations of this paragraph.

15.    Palm has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '947 patent asserted by the plaintiff in this litigation ("the asserted '947 claims").

**REPLY**:    Intermec denies the allegations of this paragraph.

16.    Palm is entitled to a declaratory judgment that Palm does not infringe the asserted '947 claims.

**REPLY**:    Intermec denies the allegations of this paragraph.

17.    Palm has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '971 patent asserted by the plaintiff in this litigation ("the asserted '971 claims").

**REPLY**:    Intermec denies the allegations of this paragraph.

18.     Palm is entitled to a declaratory judgment that Palm does not infringe the asserted '971 claims.

**REPLY**:     Intermec denies the allegations of this paragraph.

## SECOND COUNTERCLAIM
## (INVALIDITY OF THE INTERMEC PATENTS IN SUIT)

19.     Palm incorporates paragraphs 1-18 as if fully set forth herein.

**REPLY**:     Intermec incorporates its replies to paragraphs 1-18 as if fully set forth herein.

20.     One or more claims of the '678 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

**REPLY**:     Intermec denies the allegations of this paragraph.

21.     Palm is entitled to declaratory judgment that one or more claims of the '678 patent are invalid.

**REPLY**:     Intermec denies the allegations of this paragraph.

22.     One or more claims of the '645 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

**REPLY**:     Intermec denies the allegations of this paragraph.

23.     Palm is entitled to declaratory judgment that one or more claims of the '645 patent are invalid.

**REPLY**:     Intermec denies the allegations of this paragraph.

24.     One or more claims of the '499 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

**REPLY**:     Intermec denies the allegations of this paragraph.

25.     Palm is entitled to declaratory judgment that one or more claims of the '499 patent are invalid.

**REPLY**:     Intermec denies the allegations of this paragraph.

26.    One or more claims of the '947 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

**REPLY**:    Intermec denies the allegations of this paragraph.

27.    Palm is entitled to declaratory judgment that one or more claims of the '947 patent are invalid.

**REPLY**:    Intermec denies the allegations of this paragraph.

28.    One or more claims of the '971 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

**REPLY**:    Intermec denies the allegations of this paragraph.

29.    Palm is entitled to declaratory judgment that one or more claims of the '971 patent are invalid.

**REPLY**:    Intermec denies the allegations of this paragraph.

**THIRD COUNTERCLAIM**
**(UNENFORCEABILITY OF THE PATENTS-IN-SUIT**
**DUE TO INEQUITABLE CONDUCT)**

30.    Palm refers to and incorporates by reference Paragraphs 1-29 of its Counterclaims as though fully set forth herein.

**REPLY**:    Intermec incorporates its replies to paragraphs 1-29 as if fully set forth

herein.

31.    Palm is entitled to a declaratory judgment that one or more of the claims of the

patents-in-suit are unenforceable due to inequitable conduct, as specifically alleged below.

**REPLY**:    Intermec denies the allegations of this paragraph.

**A.    Unenforceability Of The '947 Patent**

32.    On March 29, 1993, the named inventors of the '947 Patent and their agents associated with the prosecution of the applications that resulted in the '947 Patent -- i.e., Arvin D. Danielson, Dennis A. Durbin, and attorneys John Sherman, Winifrid O.E. Schellin, and William M. Wesley among others -- (collectively "the '947 patentees") filed United States Patent Application Serial No. 08/040,313 with the PTO, prosecuted that initial application thereafter,

and/or prosecuted a continued patent application with the same application number, until it was issued by the PTO as the '947 Patent on November 21, 1995 (hereinafter, "the '947 Patent's prosecution").

      **REPLY**:      Intermec admits that U.S. Patent Application Serial No. 08/040,313 was

filed with the United States Patent and Trademark Office on November 21, 1995, and that Arvin

D. Danielson and Dennis A. Durbin were named as inventors in that application, but denies the

remainder of this paragraph.

33.     During the '947 Patent's prosecution, each of the '947 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

      **REPLY**:      Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the

individuals associated with the filing and prosecution of a patent application, but denies the

remainder of this paragraph.

34.     As further described in paragraphs 36-57 below, because the '947 patentees were aware of prior art material to the patentability of the '947 Patent during the '947 Patent's prosecution, pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '947 patentees had a duty to file at least one IDS to the PTO during the '947 Patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

      **REPLY**:      Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the

individuals associated with the filing and prosecution of a patent application to disclose

information material to patentability of a claim to the PTO, but denies the remainder of this

paragraph.

35.     As further described in paragraphs 36-57 below, the '947 patentees withheld prior art from the PTO that they knew or should have known existed and was material to the patentability of the '947 Patent during the '947 Patent's prosecution.

      **REPLY**:      Intermec denies the allegations of this paragraph.

## THE HANSON '188 PATENT

36.    United States Patent No. 5,218,188 ("the Hanson '188 Patent") resulted from an initial patent application filed on October 24, 1989 and issued on June 8, 1993. It was material to the patentability of the '947 Patent. There is a substantial likelihood that a reasonable examiner would have considered the Hanson '188 Patent important in deciding whether to allow the issuance of the '947 Patent, and it was not cumulative of other references provided by the '947 patentees to the PTO during the '947 Patent's prosecution.

**REPLY**:    Intermec admits that the cover page of the Hansen '188 Patent purports to show that it was filed on October 24, 1989, and issued on June 8, 1993, but denies the remainder of this paragraph.

37.    Specifically, the Hanson '188 Patent discloses a "compact hand-held RF data terminal." ('188 Patent, at [57]). The Hanson '188 Patent further discloses that the hand-held terminal includes means for manually entering data and data display means. ('188 Patent col. 3:31-35). The Hanson '188 Patent also discloses that a bar code reader may be optionally attached to the hand-held terminal. ('188 Patent col. 3:58-61). The Hanson '188 Patent further discloses that the hand-held terminal may be inserted into and substantially contained within a data cradle for communication with a peripheral device. ('188 Patent col. 3:51-58, figure 9).

**REPLY**:    Intermec states that Hansen '188 speaks for itself, and accordingly denies the allegations of this paragraph.

38.    The Hanson '188 Patent is material to (without limitation) at least claims 1, 4, 5, 9, 13-16, and 20-22 of the '947 Patent, for example because they purport to disclose a hand-held terminal including: display means, means for manually entering data; means operable for carrying out an optical reader function; and the capability to insert the hand-held terminal into a peripheral shell module such that the hand-held module is substantially contained within said shell module.

**REPLY**:    Intermec denies that Hansen '188 is material to the patentability of the '947 patent, and accordingly denies the allegations of this paragraph. Intermec further denies that there is any case or controversy regarding all of the claims identified in this paragraph, and thus any subject-matter basis for Palm's claims.

39.     The Hanson '188 Patent is prior art to the '947 Patent under 35 U.S.C. section 102(e)(l) and 35 U.S.C. section 103(a).  The Hanson '188 Patent was filed on October 24, 1989 before the March 29, 1993 filing date of the '947 Patent.

**REPLY**:        Intermec denies the allegations of this paragraph.

40.     Palm is informed and believes, and thereupon alleges, that the Hanson '188 Patent was known to Mr. Sherman, Ms. Schellin, and/or Mr. Wesley during the '947 Patent's prosecution.  Specifically, the Mr. Sherman, Ms. Schellin and/or Mr. Wesley participated as attorneys in the prosecution of the '188 Patent, which issued on June 8, 1993.  As of that date, the '947 Patent's prosecution was ongoing in the PTO.  Further, John Sherman signed the patent application that resulted in the '188 Patent on or about October 24, 1989; William Wesley signed a "Change of Correspondence Address and Associate Power of Attorney Transmittal Letter" during his prosecution of the application that resulted in the '188 Patent on or about January 3, 1992; and Ms Schellin signed an Amendment during her prosecution of the '188 Patent on or about August 28, 1992, as well as a further Amendment on or about February 16, 1993.

**REPLY**:        Intermec admits that Mr. Wesley signed the document identified in the above paragraph, and that Ms. Schellin signed the documents identified in this paragraph, but denies the remainder of this paragraph.

41.     Palm is informed and believes, and thereupon alleges, that one or more of the '947 patentees knew of the materiality of the Hanson '188 Patent to the patentability of the '947 Patent during the '947 Patent's prosecution.  Specifically, Mr. Sherman, Ms. Schellin and/or Mr. Wesley participated as attorneys in the prosecution of the '188 Patent, issued at a time when one or more of them were actively participating in the '947 Patent's prosecution. The '947 patentees failed, however, to disclose the Hanson '188 Patent to the examiner of the '947 Patent.

**REPLY**:        Intermec denies that Hansen '188 was material to the patentability of the '947 Patent, and denies that Mr. Sherman or Mr. Wesley participated in the prosecution of the '188 Patent, and accordingly denies the allegations of the paragraph.

42.     Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld by the '947 patentees with an intent to mislead the PTO.

**REPLY**:        Intermec denies the allegations of this paragraph.

### THE HANSON '991 PATENT

43.     United States Patent No. 5,322,991 ("the Hanson '991 Patent") resulted from an initial patent application filed on February 23, 1993 and was issued on June 21, 1994.  It was also material to the patentability of the '947 Patent.  There is a substantial likelihood that a

reasonable examiner would have considered the Hanson '991 Patent important in deciding whether to allow the issuance of the '947 Patent, and it was not cumulative of other references provided by the '947 patentees to the PTO during the '947 Patent's prosecution.

**REPLY**:    Intermec admits that the cover page of the Hansen '991 Patent purports to show that it was filed on February 23, 1993, and issued on June 21, 1994, but denies the remainder of this paragraph.

44.    Specifically, the Hanson '991 Patent discloses a "compact hand-held RF data terminal." ('991 Patent, at [57]). The Hanson '991 Patent further discloses that the hand-held terminal includes means for manually entering data and data display means. ('991 Patent col. 3:39-43). The Hanson '991 Patent also discloses that a bar code reader may be optionally attached to the hand-held terminal. ('991 Patent col. 3:66-4:1). The Hanson '991 Patent further discloses that the hand-held terminal may be inserted into and substantially contained within a data cradle for communication with a peripheral device. ('991 Patent col. 359-66, figure 9).

**REPLY**:    Intermec states that Hansen '991 speaks for itself, and accordingly denies the allegations of this paragraph.

45.    The Hanson '991 Patent is material to (without limitation) at least claims 1, 4, 5, 9, 13-16, and 20-22 of the '947 Patent, for example because they purport to disclose a hand-held terminal including: display means, means for manually entering data; means operable for carrying out an optical reader function; and the capability to insert the hand-held terminal into a peripheral shell module such that the hand-held module is substantially contained within said shell module.

**REPLY**:    Intermec denies that Hansen '991 is material to the patentability of the '947 patent, and accordingly denies the allegations of this paragraph. Intermec further denies that there is any case or controversy regarding all of the claims identified in this paragraph, and thus any subject-matter basis for Palm's claims.

46.    The Hanson '991 Patent is prior art to the '947 Patent under 35 U.S.C. section 102(e)(l) and 35 U.S.C. section 103(a). The Hanson '991 Patent is a continuation of the Hanson '188 Patent, which was filed on October 24, 1989, before the March 23, 1993 filing date of the '947 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

47.    Palm is informed and believes, and thereupon alleges, that the Hanson '991 Patent was known to Mr. Sherman, Ms. Schellin, and/or Mr. Wesley during the '947 Patent's

prosecution.    Specifically, Mr. Sherman, Ms. Schellin and/or Mr. Wesley participated as attorneys in the prosecution of the '991 Patent which issued on June 21, 1994 on which date the '947 Patent's prosecution was ongoing in the PTO.    For example, John Sherman signed the patent application that resulted in the '991 Patent on or about February 23, 1993; Winifrid O.E. Schellin signed a Preliminary Amendment during her prosecution of the application that resulted in the '991 Patent on or about February 23,1993, and an Amendment during her prosecution of the application that resulted in the '991 Patent on or about October 18, 1993; and William Wesley signed an Issue Fee Transmittal during his prosecution of the application that resulted in the '991 Patent on about March 16,1994.

**REPLY**:      Intermec admits that Mr. Wesley signed the document identified in the above paragraph, and that Ms. Schellin signed the document identified in this paragraph, but denies the remainder of this paragraph.

48.    Palm is informed and believes, and thereupon alleges, that one or more of the '947 patentees knew of the materiality of the '991 Hanson Patent to the patentability of the '947 Patent during the '947 Patent's prosecution.    Specifically, Mr. Sherman, Ms. Schellin and/or Mr. Wesley participated as attorneys in the prosecution of the '991 Patent, which issued while one or more of them were actively participating in the '947 Patent's prosecution.    The '947 patentees failed however to disclose the Hanson '991 Patent to the examiner of the '947 Patent.

**REPLY**:      Intermec denies the allegations of this paragraph.

49.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:      Intermec denies the allegations of this paragraph.

## THE GOMBRICH '441 PATENT

50.    United States Patent No. 4,916,441 ("the Gombrich '441 Patent"), resulted from an initial patent application filed on September 19, 1988 and was issued on April 10, 1990.    It was material to the patentability of the '947 Patent.    There is a substantial likelihood that a reasonable examiner would have considered the Gombrich '441 Patent important in deciding whether to allow the issuance of the '947 Patent, and it was not cumulative of other references provided by the '947 patentees to the PTO during the '947 Patent's prosecution.

**REPLY**:      Intermec admits that the cover page of the Gombrich '441 Patent purports to show that it was filed on September 19, 1988, and issued on April 10, 1990, but denies the remainder of this paragraph.

51.     Specifically, the Gombrich '441 patent discloses "portable handheld terminal." ('441 Patent, at [57]).  The Gombrich '441 Patent also discloses that the handheld terminal includes a touch sensitive display means and keyboard means for manually entering data.  ('441 Patent col. 2:3-8, 5:40-42).  The Gombrich '441 Patent also discloses that the handheld terminal includes optical sensing means, including bar code reader means.  ('441 Patent col. 2:3-8).  The Gombrich '441 Patent further discloses that the handheld terminal may be inserted into and substantially contained within a base station, said base station offering additional functionality to the handheld terminal.  ('441 Patent col. 5:51-6:12).

**REPLY**:     Intermec states that Gombrich '441 speaks for itself, and accordingly denies the allegations of this paragraph.

52.     The Gombrich '441 Patent is material to (without limitation) at least claims 1, 4-6, 9, 13-16, and 20-22 of the '947 Patent, which purport to disclose a hand-held terminal including:  display means, means for manually entering data; means operable for carrying out an optical reader function; touch screen display means; and the capability to insert the hand-held terminal into a peripheral shell module such that the hand-held module is substantially contained within said shell module.

**REPLY**:     Intermec denies that Gombrich '441 is material to the patentability of the '947 patent, and accordingly denies the allegations of this paragraph.  Intermec further denies that there is any case or controversy regarding the claims identified in this paragraph, and thus any subject-matter basis for Palm's claims.

53.     The Gombrich '441 Patent is prior art to the '947 Patent under 35 U.S.C. section 102(b) and 35 U.S.C. section 103(a).  The Gombrich '441 Patent was issued on April 10, 1990, more than one year before the March 23, 1993 filing date of the '947 Patent.

**REPLY**:     Intermec denies the allegations of this paragraph.

54.     Palm is informed and believes, and thereupon alleges, that the Gombrich '441 Patent was known to Mr. Sherman, Ms. Schellin, and/or Mr. Wesley during the '947 Patent's prosecution.  Specifically, the Gombrich '441 Patent was cited to these '947 patentees by another patent examiner of the PTO on or around May 23, 1992, in the course of prosecution of the '188 Patent as United States Application Serial No. 07/426,135, and on or around July 13, 1993, in the course of prosecution of the '991 Patent as United States Application Serial No. 08/022,577.

**REPLY**:     Intermec admits that the Gombrich '441 Patent was cited as prior art against the applications for the Hansen '188 and Hansen '991 Patents, but denies the remaining allegations of this paragraph.

55.     Palm is informed and believes, and thereupon alleges, that one or more of the '947 patentees knew of the materiality of the Gombrich '441 Patent to the patentability of the '947 Patent during the '947 Patent's prosecution.    Specifically, Mr. Schellin submitted a response and amendment to the PTO on or around October 18, 1993 that addressed the Gombrich '441 Patent with respect to the '991 Patent's prosecution, and Mr. Schellin submitted a response and amendment to the PTO on or around August 28, 1992 that addressed the Gombrich '441 Patent with respect to the '188 Patent's prosecution.    However, the '947 Patentees failed to disclose the Gombrich '441 Patent to the examiner of the '947 Patent.

**REPLY**:        Intermec admits that Ms. Schellin signed amendments dated October 18, 1993 and August 28, 1992, that discussed Gombrich '441, but denies the remaining allegations of this paragraph.

56.     Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:        Intermec denies the allegations of this paragraph.

57.     Given the conduct of the '947 patentees during the prosecution of that patent, as described above, the '947 patentees engaged in inequitable conduct during the '947 patent's prosecution by their knowing failure to disclose material prior art to the PTO, including the Hanson '188 Patent, the Hanson '991 Patent, and the Gombrich '441 Patent.  The '947 patent is unenforceable against Palm because of said inequitable conduct.

**REPLY**:        Intermec denies the allegations of this paragraph.

## B.        Unenforceability Of The '971 Patent

58.     On May 23, 1995, the named inventors of the '971 Patent and their agents associated with the prosecution of the applications that resulted in the '971 Patent -- i.e., Arvin D. Danielson, Dennis A. Durbin, and attorneys John Sherman, Sean Patrick Suiter, and William M. Wesley among others -- (collectively "the '971 patentees") filed United States Patent Application Serial No. 08/448,169 with the PTO, prosecuted that initial application thereafter, and/or prosecuted a continued patent application with the same application number, until it was issued by the PTO as the '971 Patent on April 6, 1999 (hereinafter, "the '971 Patent's prosecution").

**REPLY**:        Intermec admits that U.S. Patent Application Serial No. 08/448,169 was filed with the United States Patent and Trademark Office on May 23, 1995, and that Arvin D. Danielson and Dennis A. Durbin were named as inventors in that application, but denies the remainder of this paragraph.

59. During the '971 Patent's prosecution, each of the '971 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

**REPLY**:     Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the individuals associated with the filing and prosecution of a patent application to disclose information material to patentability of a claim to the PTO, but denies the remainder of this paragraph.

60. As further described in paragraphs 62-90 below, because the '971 patentees were aware of prior art material to the patentability of the '971 Patent during the '971 Patent's prosecution, pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '971 patentees had a duty to file at least one IDS to the PTO during the '971 Patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

**REPLY**:     Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the individuals associated with the filing and prosecution of a patent application to disclose information material to patentability of a claim to the PTO, but denies the remainder of this paragraph.

61. As further described in paragraphs 62-90 below, the '971 patentees withheld prior art from the PTO that they knew or should have known existed and was material to the patentability of the '971 patent during the '971 patent's prosecution.

**REPLY**:     Intermec denies the allegations of this paragraph.

## THE HANSON '188 PATENT

62. As described in paragraph 63, The Hanson '188 Patent was material to the patentability of the '971 Patent.  There is a substantial likelihood that a reasonable examiner would have considered the Hanson '188 Patent important in deciding whether to allow the issuance of the '971 Patent, and it was not cumulative of other references provided by the '971 patentees to the PTO during the '971 Patent's prosecution.  Disclosures made in the '188 Patent are set forth in paragraph 37 above.

**REPLY**:     Intermec denies the allegations of this paragraph.

63.    The Hanson '991 Patent further discloses that the data cradle may include a printer. ('991 Patent col. 359-66, figure 9).

**REPLY**:    Intermec states that Hansen '991 speaks for itself, and accordingly denies the allegations of this paragraph.

64.    The Hanson '188 Patent is material to (without limitation) at least claims 1, 5, 6, 10, 11, 14, and 18 of the '971 Patent, which disclose a hand-held terminal including: a display, a user interface system; an indicia reader input system; and the capability to insert the hand-held terminal into a peripheral shell module and that the shell module may include a printer.

**REPLY**:    Intermec denies that Hansen '188 is material to the patentability of the '947 patent, and accordingly denies the allegations of this paragraph. Intermec further denies that there is a case or controversy regarding all of the claims identified in this paragraph, and thus any subject-matter basis for Palm's claims.

65.    The Hanson '188 Patent is prior art to the '971 Patent under 35 U.S.C. section 102(b) and 35 U.S.C. section 103(a). The Hanson '188 Patent was issued on June 8, 1993, more than one year before the May 23, 1995 filing date of the '971 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

66.    Palm is informed and believes, and thereupon alleges, that the Hanson '188 Patent was known to Mr. Sherman, Mr. Suiter, and/or Mr. Wesley during the '971 Patent's prosecution. Specifically, the Mr. Sherman, Ms. Suiter and/or Mr. Wesley participated as attorneys in the prosecution of the '188 Patent which issued on June 8, 1993 before the '971 Patent's prosecution commenced in the PTO. William Wesley signed a "Change of Correspondence Address and Associate Power of Attorney Transmittal Letter" during his prosecution of the application that resulted in the '188 Patent on or about February 3, 1992; and Mr. Suiter is listed as an Associate Attorney on the prosecution of the application that resulted in the '188 Patent on or about January 28, 1992.

**REPLY**:    Intermec admits that Mr. Wesley signed the document identified in this paragraph, and that Mr. Suiter was listed in a bulk-associate-power-of-attorney in prosecution history of Hansen '188, but denies the remaining allegations of this paragraph.

67.    Palm is informed and believes, and thereupon alleges, that one or more of the '971 patentees knew of the materiality of the '188 Hanson Patent to the patentability of the '971 Patent during the '971 Patent's prosecution. Specifically, Mr. Sherman, Mr. Suiter and/or Mr. Wesley participated as attorneys in the prosecution of the '188 Patent which was issued at a

time before one or more of them were actively participating in the '971 Patent's prosecution. However, the '971 patentees failed to disclose the Hanson '188 Patent to the examiner of the '971 Patent.

> **REPLY**:        Intermec denies the allegations of this paragraph.

68.     Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

> **REPLY**:        Intermec denies the allegations of this paragraph.

### THE HANSON '991 PATENT

69.     The Hanson '991 Patent, was material to the patentability of the '971 Patent. There is a substantial likelihood that a reasonable examiner would have considered the Hanson '991 Patent important in deciding whether to allow the issuance of the '971 Patent, and it was not cumulative of other references provided by the '971 patentees to the PTO during the '971 Patent's prosecution.  Disclosures made in the Hanson '991 Patent are described in paragraph 44 above.

> **REPLY**:        Intermec denies the allegations of this paragraph.

70.     The Hanson '991 Patent further discloses that the data cradle may include a printer.  ('991 Patent col. 3:59-66, figure 9).

> **REPLY**:        Intermec states that Hansen '991 speaks for itself, and accordingly denies the allegations of this paragraph.

71.     The Hanson '991 Patent is material to (without limitation) at least claims 1, 5, 6, 10, 11, 14, and 18 of the '971 Patent, which disclose a hand-held terminal including: a display, a user interface system; an indicia reader input system; and the capability to insert the hand-held terminal into a peripheral shell module and that the shell module may include a printer.

> **REPLY**:        Intermec denies that Hansen '991 is material to the patentability of the '947 patent, and accordingly denies the allegations of this paragraph.  Intermec further denies that there is a case or controversy regarding all of the claims identified in this paragraph, and thus any subject-matter basis for Palm's claims.

72.    The Hanson '991 Patent is prior art to the '971 Patent under 35 U.S.C. section 102(a) and 35 U.S.C. section 103(a).  The Hanson '991 Patent was issued on June 21, 1994, before the May 23, 1995 filing date of the '971 Patent.

**REPLY**:        Intermec denies the allegations of this paragraph.

73.    Palm is informed and believes, and thereupon alleges, that the Hanson '991 Patent was known to Mr. Sherman and/or Mr. Wesley during the '971 Patent's prosecution. Specifically, Mr. Sherman and/or Mr. Wesley participated as attorneys in the prosecution of the '991 Patent which issued on June 21, 1994 before which date the '971 Patent's prosecution was ongoing in the PTO.  John Sherman signed the patent application that resulted in the '991 Patent on or about February 23, 1993; and William Wesley signed an Issue Fee Transmittal during his prosecution of the application that resulted in the '991 Patent on about March 16, 1994.

**REPLY**:        Intermec denies the allegations of this paragraph.

74.    Palm is informed and believes, and thereupon alleges, that one or more of the '971 patentees knew of the materiality of the '991 Hanson Patent to the patentability of the '971 Patent during the '971 Patent's prosecution.  Specifically, Mr. Sherman and/or Mr. Wesley participated as attorneys in the prosecution of the '991 Patent which was issued at a time before one or more of them were actively participating in the '971 Patent's prosecution.  However, the '971 patentees failed to disclose the Hanson '991 Patent to the examiner of the '971 Patent.

**REPLY**:        Intermec denies the allegations of this paragraph.

75.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:        Intermec denies the allegations of this paragraph.

## THE GOMBRICH '441 PATENT

76.    The Gombrich '441 Patent was material to the patentability of the '971 Patent. There is a substantial likelihood that a reasonable examiner would have considered the Gombrich '441 Patent important in deciding whether to allow the issuance of the '971 Patent, and it was not cumulative of other references provided by the '971 patentees to the PTO during the '971 Patent's prosecution.

**REPLY**:        Intermec denies the allegations of this paragraph.

77.    Disclosures made in the Gombrich '441, Patent are set forth in para 51 above.

**REPLY**:        Intermec states that Gombrich '441 speaks for itself, and accordingly

denies the allegations in this paragraph.

78.    The Gombrich '441 Patent is material to (without limitation) at least claims 1, 5, 6, 10, 11, and 18 of the '971 Patent, which disclose a hand-held terminal including: a display a user interface system; an indicia reader input system; and the capability to insert the hand-held terminal into a peripheral shell module.

**REPLY**:    Intermec denies that Gombrich '441 is material to the patentability of the

'971 patent, and accordingly denies the allegations of this paragraph.  Intermec further denies

that there is a case or controversy regarding all of the claims identified in this paragraph, and

thus any subject-matter basis for Palm's claims.

79.    The Gombrich '441 Patent is prior art to the '971 Patent under 35 U.S.C. section 102(b) and 35 U.S.C. section 103 (a).  The Gombrich '441 Patent was issued on April 10, 1990 more than one year before the May 23, 1995 filing date of the '971 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

80.    Palm is informed and believes, and thereupon alleges, that the Gombrich '441 Patent was known to Mr. Sherman, Ms. Schellin, and/or Mr. Wesley during the '971 Patent's prosecution.  Specifically, the Gombrich '441 Patent was cited to these '971 patentees by another patent examiner of the PTO on or around May 23, 1992, in the course of prosecution of the '188 Patent as United States Application Serial No. 07/426,135, and on or around July 13, 1993, in the course of prosecution of the '991 Patent as United States Application Serial No. 08/022,577.

**REPLY**:    Intermec denies the allegations of this paragraph.

81.    Palm is informed and believes, and thereupon alleges, that one or more of the '971 patentees knew of the materiality of the Gombrich '441 Patent to the patentability of the '971 Patent during the '971 Patent's prosecution.  However, the '971 Patentees failed to disclose the Gombrich '441 Patent to the examiner of the '971 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

82.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:    Intermec denies the allegations of this paragraph.

### THE GOMBRICH '716 PATENT

83.    United States Patent No. 4,857,716 ("the Gombrich '716 Patent), resulted from an initial patent application filed on June 8, 1988 and was issued on August 15, 1989.  It was material to the patentability of the '971 Patent.  There is a substantial likelihood that a reasonable examiner would have considered the Gombrich '716 Patent important in deciding whether to

allow the issuance of the '971 Patent, and it was not cumulative of other references provided by the '971 patentees to the PTO during the '971 Patent's prosecution.

**REPLY**:        Intermec admits that the cover page of the Gombrich '716 Patent purports

to show that it was filed on June 8, 1988, and issued on August 15, 1989, but denies the

remainder of this paragraph.

84.    Specifically, the Gombrich '716 patent discloses "patient identification and verification system and method." ('716 Patent, at [57]).  The Gombrich '716 Patent further discloses that the handheld terminal includes a display and input means for manually entering data. ('716 Patent col. 11:12-15).  The Gombrich '716 Patent further discloses that the handheld terminal includes bar code reader. ('716 Patent col. 11:22-26).  The Gombrich '716 Patent further discloses that the handheld terminal may be inserted into and contained within a base station, said base station offering additional functionality to the handheld terminal. ('716 Patent col. 11:46-53).

**REPLY**:        Intermec states that Gombrich '716 speaks for itself, and therefore denies

the allegations of this paragraph.

85.    The Gombrich '716 Patent is material to (without limitation) at least claims 1, 5, 6, 10, 11, and 18 of the '971 Patent, which disclose a hand-held terminal including: a display a user interface system; an indicia reader input system; and the capability to insert the hand-held terminal into a peripheral shell module.

**REPLY**:        Intermec denies that Gombrich '716 is material to the patentability of the

'971 patent, and accordingly denies the allegations of this paragraph.  Intermec further denies

that there is a case or controversy regarding all of the claims identified in this paragraph, and

thus any subject-matter basis for Palm's claims.

86.    The Gombrich '716 Patent is prior art to the '971 Patent under 35 U.S.C. section 102(b) and 35 U.S.C. section 103(a).  The Gombrich '716 Patent was issued on August 15,1989 more than one year before the May 23, 1995 filing date of the' 971 Patent.

**REPLY**:        Intermec denies the allegations of this paragraph.

87.    Palm is informed and believes, and thereupon alleges, that the Gombrich '716 Patent was known to Mr. Danielson, Mr. Durbin, Mr. Sherman and/or Mr. Suiter during the '971 Patent's prosecution.  Specifically, the Gombrich '716 Patent was cited to these '971 patentees by another patent examiner of the PTO on or around February 14, 1996, on or around

November 18, 1996, and on or around October 18, 1997, in the course of prosecution of United States Application Serial No. 08/453,687.

**REPLY**:    Intermec denies the allegations of this paragraph.

88.    Palm is informed and believes, and thereupon alleges, that one or more of the '971 patentees knew of the materiality of the Gombrich '716 Patent to the patentability of the '971 Patent during the '971 Patent's prosecution.   Specifically, Mr. Sherman submitted a response and amendment to the PTO on or around August 26, 1996 that addressed the Gombrich '716 Patent with respect to the prosecution of United States Application Serial No. 08/453,687. However, the '971 Patentees failed to disclose the Gombrich '716 Patent to the examiner of the '971 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

89.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:    Intermec denies the allegations of this paragraph.

90.    Given the conduct of the '971 patentees during the prosecution of that patent, as described above, the '971 patentees engaged in inequitable conduct during the '971 patent's prosecution by their knowing failure to disclose material prior art to the PTO, including the Hanson '188 Patent, the Hanson '991 Patent, the Gombrich '441 Patent, and the Gombrich '716 Patent. The '971 patent is unenforceable against Palm because of said inequitable conduct.

**REPLY**:    Intermec denies the allegations of this paragraph.

**C.**    **Unenforceability Of The '678, '645 and '499 Patents**

91.    On August 21, 1991, the named inventors of the '678 Patent and their agents associated with the prosecution of the applications that resulted in the '678 Patent -- i.e., Michael D. Morris, Lyle L. Zumbach, and attorneys John Sherman, Winifrid O.E. Schellin, William M. Wesley, R. Lewis Gable, Van Metre Lund, Robert Polit, Gregory Beggs, Richard Cederoth, James Dowdall, Robert Fieseler, Herber Hart III, John Held, Jr., John Leaheey, Timothy Malloy, Sidney Neuman, Arthur Olson, Jr., Donald Peterson, Phillip Petti, Robert Ryan, Noel Smith, George Wheeler, and Fred Williams, among others -- (collectively "the '678 patentees") filed United States Patent Application Serial No. 08/748,150 with the PTO, prosecuted that initial application thereafter, and/or prosecuted a continued patent application with the same application number, until it was issued by the PTO as the '678 Patent on September 20, 1994 (hereinafter, "the '678 Patent's prosecution").

**REPLY**:    Intermec admits that U.S. Application Serial No. 08/748,150 was filed

with the United States Patent and Trademark Office, and that Michael D. Morris, and Lyle L.

Zumbach were named as inventors in that application, but denies the remainder of this paragraph.

92.     On July 5, 1994, the named inventors of the '645 Patent and their agents associated with the prosecution of the applications that resulted in the '645 Patent -- i.e., Michael D. Morris, Lyle L. Zumbach, and attorney William M. Wesley among others -- (collectively "the '645 patentees") filed United States Patent Application Serial No. 08/267,758 with the PTO, prosecuted that initial application thereafter, and/or prosecuted a continued patent application with the same application number, until it was issued by the PTO as the '645 Patent on October 22, 1996 (hereinafter, "the '645 Patent's prosecution").

**REPLY**:     Intermec admits that U.S. Application Serial No. 08/267,758 was filed with the United States Patent and Trademark Office, and that Michael D. Morris, and Lyle L. Zumbach were named as inventors in that application, but denies the remainder of this paragraph.

93.     On October 22, 1996, the named inventors of the '499 Patent and their agents associated with the prosecution of the applications that resulted in the '499 Patent -- i.e., Michael D. Morris, Lyle L. Zumbach, and attorneys John Sherman and William M. Wesley among others-(collectively "the '499 patentees") filed United States Patent Application Serial No. 08/735,351 with the PTO, prosecuted that initial application thereafter, and/or prosecuted a continued patent application with the same application number, until it was issued by the PTO as the '499 Patent on November 16, 1999 (hereinafter, "the '499 Patent's prosecution").

**REPLY**:     Intermec admits that U.S. Application Serial No. 08/735,351 was filed with the United States Patent and Trademark Office, and that Michael D. Morris, and Lyle L. Zumbach were named as inventors in that application, but denies the remainder of this paragraph.

94.     During the '678 Patent's prosecution, each of the '678 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

**REPLY**:     Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the individuals associated with the filing and prosecution of a patent application to disclose

information material to patentability of a claim to the PTO, but denies the remainder of this paragraph.

95.     During the '645 Patent's prosecution, each of the '645 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

**REPLY**:     Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the individuals associated with the filing and prosecution of a patent application to disclose information material to patentability of a claim to the PTO, but denies the remainder of this paragraph.

96.     During the '499 Patent's prosecution, each of the '499 patentees had a continuing duty of candor and good faith to disclose to the PTO all information known to that individual that is material to patentability, pursuant to the United States patent laws and regulations, including 37 C.F.R. § 1.56.

**REPLY**:     Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the individuals associated with the filing and prosecution of a patent application to disclose information material to patentability of a claim to the PTO, but denies the remainder of this paragraph.

97.     As further described in paragraphs 101-160 below, because the '678 patentees were aware of prior art material to the patentability of the '678 Patent during the '678 Patent's prosecution, pursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '678 patentees had a duty to file at least one IDS to the PTO during the '678 Patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

**REPLY**:     Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the individuals associated with the filing and prosecution of a patent application to disclose information material to patentability of a claim to the PTO, but denies the remainder of this paragraph.

98.    As further described in paragraphs 101-160 below, because the '645 patentees were aware of prior art material to the patentability of the '645 Patent during the '645 Patent's prosecution, [p]ursuant to 37 C.F.R. §§ 1.56, 1.97, and 1.98, the '645 patentees had a duty to file at least one IDS to the PTO during the '645 Patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

**REPLY**:    Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the individuals associated with the filing and prosecution of a patent application to disclose information material to patentability of a claim to the PTO, but denies the remainder of this paragraph.

99.    As further described in paragraphs 101-160 below, because the '499 patentees were aware of prior art material to the patentability of the '499 Patent during the '499 Patent's prosecution, [p]ursuant to 37 CFR §§ 1.56, 1.97, and 1.98, the '499 patentees had a duty to file IIDS to the PTO during the '499 Patent's prosecution, setting forth all patents, publications, applications, or other information known to be material to patentability for consideration by the PTO.

**REPLY**:    Intermec admits that 37 C.F.R. § 1.56 imposes a duty of candor on the individuals associated with the filing and prosecution of a patent application to disclose information material to patentability of a claim to the PTO, but denies the remainder of this paragraph.

100.    As further described in paragraphs 101-160 below, the '678 patentees, the '645 patentees, and the '499 patentees withheld prior art from the PTO that they knew or should have known existed and was material to the patentability of the '678 patent during the '678 patent's prosecution, the patentability of the '645 patent during the '645 patent's prosecution, and the patentability of the '499 patent during the '499 patent's prosecution.

**REPLY**:    Intermec denies the allegations of this paragraph.

## THE DANIELSON '463 PATENT

101.    United States Patent No. 4,972,463 ("the Danielson '463 Patent") resulted from an initial patent application filed on September 15, 1986 and was issued on November 20, 1990. It was material to the patentability of the '678 Patent. There is a substantial likelihood that a reasonable examiner would have considered the Danielson '463 Patent important in deciding whether to allow the issuance of the Danielson '463 Patent, and it was not cumulative of other references provided by the '678 patentees to the PTO during the '678 Patent's prosecution.

**REPLY**:        Intermec admits that the cover page of the Danielson '463 Patent purports to show that it was filed on September 15, 1986, and issued on November 20, 1990, but denies the remainder of this paragraph.

102.    Specifically, the Danielson '463 Patent discloses a data communications system consisting of a plurality of client data collection terminals, a server station with mass memory means, and communications means for interconnecting the server station with the client terminals.  ('463 Patent, at [57]).  The '463 Patent further discloses the server station operating on data in a second format style different from the first format style of the data terminal, and therefore discloses a "two-data format" feature.  For example, terminals that collect data ('463 Patent col. 3:28-36, 3:18-19) operate on data using communication protocols specific to, for example, an A.T.M. network, a credit/debit network, or a point of sale network.  (col. 3:21, 3:30, 3:32).  The data is then transmitted to a server (col. 5:15-22), where an interface may "convert the device [i.e., terminal] protocols to a standard high level communications architecture, e.g., SDLC/SNA" (col. 5:43-45, col. 5:54-58).  This process also takes place in reverse, when data received by the server in the SDLC/SNA format is converted into a format recognized by the terminal by adding any "needed control characters" before transmission to the terminal. (col. 6:14-24).

**REPLY**:        Intermec states that the Danielson '463 Patent speaks for itself, and accordingly denies the allegations of this paragraph.

103.    The two different data "protocols" in the Danielson '463 Patent qualify as two different "formats" of data, since each refers to a structure for the data that allows it to be processed by devices that comply with the given protocol (e.g., SDLC/SNA used at the server, or the proprietary communication protocol used at the given terminal).

**REPLY**:        Intermec states that the Danielson '463 Patent speaks for itself, and accordingly denies the allegations of this paragraph.

104.    The Danielson '463 Patent is material to (without limitation) at least claims 1, 91 10, 12, 22 and 23 of the '678 Patent, which purport to disclose a data communication system consisting of a plurality of client data collection terminals, a server station with a mass memory means, and communication means for interconnecting the server station with the client terminals. These claims also purport to disclose a server station operating on data in a second format style different from the first format style of the data terminal.  For example, the claims of the '678 Patent disclose in a terminal a "means operating on data formatted in a first style," and they disclose in a server a "means operating on data in a second style different from said first style." ('678 Patent col. 15:9-10, 15:17-18, claim l) (hereinafter the "two data format feature").  This includes "translat[ing] the format" of data from a format used by the terminal to a format used by the server and vise versa.  ('678 Patent, col. 14:16-17, 14:21-32, claim 7).

**REPLY**:        Intermec denies that Danielson '463 is material to the patentability of the

'678 patent, and accordingly denies the allegations of this paragraph.  Intermec further denies

that there is a case or controversy regarding all of the claims identified in this paragraph, and

thus any subject-matter basis for Palm's claims.

105.    In the Notice of Allowability for the '678 Patent, the examiner emphasized that the prior art did not disclose the "two data format feature" by stating that "the prior art, either individually or in combination, does not teach a data capture system comprising portable data collection terminals with a first control means operating on data formatted in a first style and a server station with a second control means operating on data formatted in a second style." (Notice of Allowability mailed 9/23/93 at 2).

**REPLY**:        Intermec states that the Notice of Allowability in the '678 Patent

prosecution history speaks for itself, and accordingly denies the allegations of this paragraph.

106.    The examiner had before him prior art that showed portable data collection terminals, but on information and belief, he did not have before him prior art that disclosed the "two data format feature."    The Danielson '463 Patent in particular was not before the examiners.

**REPLY**:        Intermec states that the '678 Patent prosecution history speaks for itself,

and accordingly denies the allegations of this paragraph.

107.    The Danielson '463 Patent is prior art to the '678 Patent under 35 U.S.C. section 102(a) and 35 U.S.C. section 103(a).  The Danielson '463 Patent was issued on November 20, 1990, before the August 21, 1991 filing date of the '678 Patent.

**REPLY**:        Intermec denies the allegations of this paragraph.

108.    Palm is informed and believes, and thereupon alleges, that the Danielson '463 Patent was known to Mr. Morris, Mr. Sherman, Mr. Lund, and/or Mr. Wesley during the '678 Patent's prosecution.  Specifically, Mr. Sherman, Mr. Lund, and/or Mr. Wesley participated as attorneys in the prosecution of the Danielson '463 Patent which issued on November 20, 1990 before which date the '678 Patent's prosecution was ongoing in the PTO.  For example, Van Metre Lund signed the patent application that resulted in the '463 Patent on or about September 15, 1986; John Sherman signed a "Letter Transmitting Formal Drawings" during his prosecution of the application that resulted in the '463 Patent on or about December 22, 1989; and William Wesley signed a "Change of Correspondence and Associate Power of Attorney Transmittal Letter" during his prosecution of the application that resulted in the '463 Patent on or about January 28, 1992.  Further, Mr. Morris is a named inventor of both the '678 Patent as well as the Danielson '463 Patent.

**REPLY**:      Intermec admits that Mr. Sherman signed the document identified in this paragraph, that Mr. Wesley signed the document identified in this paragraph, and that Mr. Morris is a named inventor of the '678 Patent and the Danielson '463 Patent, but denies the remainder of this paragraph.

109.     Palm is informed and believes, and thereupon alleges, that the Danielson '463 Patent was or should have been known to other attorneys associated with the prosecution of the '678 also associated with the prosecution of the Danielson '463 Patent (and included in the '678 patentees) during the '678 Patent's prosecution including, but not limited to: Gregory Beggs, Richard Cederoth, James Dowdall, Robert Fieseler, Herber Hart III, John Held, Jr., John Leaheey, Timothy Malloy, Sidney Neuman, Arthur Olson, Jr., Donald Peterson, Phillip Petti, Robert Ryan, Noel Smith, George Wheeler, and Fred William.

**REPLY**:      Intermec denies the allegations of this paragraph.

110.     Palm is informed and believes, and thereupon alleges, that one or more of the '678 patentees knew of the materiality of the '463 Danielson Patent to the patentability of the '678 Patent during the '678 Patent's prosecution.  Specifically 'Mr. Sherman, Mr. Lund, and/or Mr. Wesley participated as attorneys in the prosecution of the Danielson '463 Patent, and Mr. Morris was a named inventor of the Danielson '463 Patent which was issued at a time before one or more of them were actively participating in the '678 Patent's prosecution.  The '678 patentees, however, failed to disclose the Danielson '463 Patent to the examiner of the '678 Patent.

**REPLY**:      Intermec denies the allegations of this paragraph.

111.     Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:      Intermec denies the allegations of this paragraph.

## THE DANIELSON '662 PATENT

112.     United States Patent No. 5,239,662 ("the Danielson '662 Patent") resulted from an initial patent application filed on June 26, 1992 and was issued on August 24, 1993.  It was material to the patentability of the '678 Patent.  There is a substantial likelihood that a reasonable examiner would have considered the Danielson '662 Patent important in deciding whether to allow the issuance of the Danielson '662 Patent, and it was not cumulative of other references provided by the '678 patentees to the PTO during the '678 Patent's prosecution.

**REPLY**:          Intermec admits that the cover page of Danielson '662 purports to show that it was filed on June 26, 1992, and issued on August 24, 1993, but denies the remainder of this paragraph.

113.     Specifically, the Danielson '662 Patent discloses a data communications system consisting of a plurality of client data collection terminals, a server station with mass memory means, and communications means for interconnecting the server station with the client terminals[.]  The Danielson '662 Patent further discloses the server station operating on data in a second format style different from the first format style of the data terminal, and therefore discloses a "two-data format" feature.

**REPLY**:          Intermec states that Danielson '662 speaks for itself, and accordingly denies the remainder of this paragraph.

114.     For example, terminals that collect data ('662 Patent col. 2:64-68, 2:54-55) operate on data using communication protocols specific to, for example, an A.T.M. network, a credit/debit network, or a point of sale network.   (col. 2:57, 2:66, 3:2).   The data is then transmitted to a server (col. 4:61-68), where an interface may "convert the device [i.e., terminal] protocols to a standard high level communications architecture, e.g., SDLC/SNA" (col. 5:14-16, col. 5:24-28).  This process also takes place in reverse, when data received by the server in the SDLC/SNA format is converted into a format recognized by the terminal by adding any "needed control characters" before transmission to the terminal.  (col. 5:52-62).  The two different data "protocols" in the Danielson '662 Patent qualify as two different "formats" of data, since each refers to a structure for the data that allows it to be processed by devices that comply with the given protocol (e.g., SDLC/SNA used at the server, or the proprietary communication protocol used at the given terminal).

**REPLY**:          Intermec states that Danielson '662 speaks for itself, and accordingly denies the remainder of this paragraph.

115.     The Danielson '662 Patent is material to (without limitation) at least claims 1, 91 10, 12, 22 and 23 of the '678 Patent, which purport to disclose a data communication system consisting of a plurality of client data collection terminals, a server station with a mass memory means, and communication means for interconnecting the server station with the client terminals.

**REPLY**:          Intermec denies that Danielson '662 is material to the patentability of the '678 patent, and accordingly denies the allegations of this paragraph.  Intermec further denies that there is a case or controversy regarding all of the claims identified in this paragraph, and thus any subject-matter basis for Palm's claims.

116.    These claims also server station operating on data in a second format style different from the first format style of the data terminal.  For example, the claims of the '678 Patent disclose in a terminal a "means operating on data formatted in a first style," and they disclose in a server a "means operating on data in a second style different from said first style." ('678 Patent col. 15:9-10, 15:17-18, claim 1) (hereinafter the "two data format feature").  This includes "translat[ing] the format" of data from a format used by the terminal to a format used by the server and vise versa.  ('678 Patent, col. 14:16-17, 14:21-32, claim 7).

    **REPLY**:        Intermec states that the claims of the '678 Patent speak for themselves,

and accordingly deny the allegations of this paragraph.

117.    In the Notice of Allowability for the '678 Patent, the examiner emphasized that the prior art did not disclose the "two data format feature" by stating that "the prior art, either individually or in combination, does not teach a data capture system comprising portable data collection terminals with a first control means operating on data formatted in a first style and a server station with a second control means operating on data formatted in a second style." (Notice of Allowability mailed 9/23/93 at 2).  The examiner had before him prior art that showed portable data collection terminals, but, on information and belief, he did not have before him prior art that disclosed the "two data format feature."  The Danielson '662 Patent in particular was not before the examiner.

    **REPLY**:        Intermec admits that the Examiner that allowed the '678 Patent issued a

Notice of Allowability that included some of the language quoted above, but denies the

remainder of this paragraph.

118.    The Danielson '662 Patent is prior art to the '678 Patent under 35 U.S.C. section 102(e)(l) and 35 U.S.C. section 103(a).  The Danielson '463 Patent is a continuation of the Danielson '662 Patent which was filed on September 15, 1986, before the August 21, 1991 filing date of the '678 Patent.

    **REPLY**:        Intermec states that the Danielson '662 Patent speaks for itself, and

accordingly denies the allegations of this paragraph.

119.    Palm is informed and believes, and thereupon alleges, that the Danielson '463 Patent was known to Mr. Morris, and/or Mr. Polit during the '678 Patent's prosecution. Specifically, Mr. Polit participated as attorneys in the prosecution of the Danielson '662 Patent which issued on August 24, 1993 during which time the '678 Patent's prosecution was ongoing in the PTO Robert Polit signed the patent application that resulted in the '662 Patent on or about June 26, 1992.  Further, Mr. Morris is a named inventor of both the '678 Patent as well as the Danielson '662 Patent.

**REPLY**:    Intermec admits that Mr. Morris is a named inventor in both the '678 Patent and Danielson '463 Patent, but denies the remainder of this paragraph.

120.    Palm is informed and believes, and thereupon alleges, that the Danielson '662 Patent was known to other attorneys associated with the prosecution of the '678 also associated with the prosecution of the Danielson '662 Patent (and included in the '678 patentees) during the '678 Patent's prosecution including, but not limited to: Gregory Beggs, Richard Cederoth, James Dowdall, Robert Fieseler, Herber Hart III, John Held, Jr., John Leaheey, Timothy Malloy, Sidney Neuman, Arthur Olson, Jr., Donald Peterson, Robert Ryan, Noel Smith, George Wheeler, and Fred William

**REPLY**:    Intermec denies the allegations of this paragraph.

121.    Palm is informed and believes, and thereupon alleges, that one or more of the '678 patentees knew of the materiality of the '662 Danielson Patent to the patentability of the '678 Patent during the '678 Patent's prosecution.  Specifically, Mr. Polit participated as an attorney in the prosecution of the Danielson '662 Patent, and Mr. Morris is a named inventor of the Danielson '662 Patent which was issued at a time before one or more of them were actively participating in the '678 Patent's prosecution.  The '678 patentees, however, failed to disclose the Danielson '662 Patent to the examiner of the '678 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

122.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:    Intermec denies the allegations of this paragraph.

## THE HANSON '188 PATENT

123.    The Hanson' 188 Patent was material to the patentability of the '678 Patent, the '645 Patent, and the '499 Patent.  There is a substantial likelihood that a reasonable examiner would have considered the Hanson '188 Patent important in deciding whether to allow the issuance of each of the '678 Patent, the '645 Patent, and the '499 Patent, and it was not cumulative of other references provided by the '678 patentees to the PTO during the '678 Patent's prosecution, by the '645 patentees to the PTO during the '645 Patent's prosecution, or by the '499 patentees to the PYO during the '499 Patent's prosecution.

**REPLY**:    Intermec denies the allegations of this paragraph.

124.    Specifically, the Hanson' 188 Patent discloses a "compact hand-held RF data terminal." ('188 Patent, at [57]).  The Hanson '188 Patent further discloses that the hand-held terminal includes means for manually entering data and data display means.  ('188 Patent col. 3:31-35).  The Hanson '188 Patent also discloses that a bar code reader may be optionally attached to the hand-held terminal.  ('188 Patent col. 3:58-61).  The Hanson '188 Patent further

discloses that the hand-held terminal may be inserted into and substantially contained within a data cradle for communication with a peripheral device. ('188 Patent col. 3:51-58, figure 9). The Hanson '188 Patent further discloses that the hand-held terminal is connected via an RF link to a central computer. ('188 Patent col. 3:23-30, 3:39:42).

**REPLY**:    Intermec states that Hansen '188 speaks for itself, and accordingly denies

the allegations in this paragraph.

125.    The Hanson' 188 Patent is material to (without limitation) at least claims 1, 2, 4, 8 and 19-21 of the '678 Patent, which purport to disclose a hand-held terminal including, a display, means for collecting data; RF radio means, and wireless connectivity between the hand-held terminal and a server station.

**REPLY**:    Intermec denies that Hansen '188 is material to the patentability of the

'678 patent, and accordingly denies the allegations of this paragraph. Intermec further denies

that there is a case or controversy regarding all of the claims identified in this paragraph, and

thus any subject-matter basis for Palm's claims.

126.    The Hanson '188 Patent is prior art to the '678 Patent under 35 U.S.C. section 102(e)(1) and 35 U.S.C. section 103(a). The Hanson '188 Patent was filed on October 24, 1989, before the August 21, 1991 filing date of the '678 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

127.    The Hanson' 188 Patent is material to (without limitation) at least claims 1,5, and 6 of the '645 Patent, which purport to disclose a hand-held terminal including, a display, means for collecting data; RF radio means, and wireless connectivity between the hand-held terminal and a server station.

**REPLY**:    Intermec denies that Hansen '188 is material to the patentability of the

'645 patent, and accordingly denies the allegations of this paragraph. Intermec further denies

that there is a case or controversy regarding all of the claims identified in this paragraph, and

thus any subject-matter basis for Palm's claims.

128.    The Hanson '188 Patent is prior art to the '645 Patent under 35 U.S.C. section 102(b) and 35 U.S.C. section 103(a). The Hanson' 188 Patent was issued more than one year before the July 5, 1994 filing date of the '645 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

129.    The Hanson '188 Patent is material to (without limitation) at least claims 1, 5, 6, 9, and 10 of the '499 Patent, which purport to disclose a hand-held terminal including, a display, means for collecting data; RF radio means, and wireless connectivity between the hand-held terminal and a server station.

**REPLY**:    Intermec denies that Hansen '188 is material to the patentability of the

'499 patent, and accordingly denies the allegations of this paragraph.  Intermec further denies

that there is a case or controversy regarding all of the claims identified in this paragraph, and

thus any subject-matter basis for Palm's claims.

130.    The Hanson '188 Patent is prior art to the '499 Patent under 35 U.S.C. section 102(b) and 35 U.S.C. section 103(a).  The Hanson '188 Patent was issued more than one year before the October 22, 1996 filing date of the '499 Patent.

**REPLY**:    Intermec denies the allegations of this paragraph.

131.    Palm is informed and believes, and thereupon alleges, that the Hanson '188 Patent was known to Mr. Sherman, Ms. Schellin, and/or Mr. Wesley during the '678 Patent's prosecution, during the '645 Patent's prosecution, and during the '499 Patent's prosecution. Specifically, Mr. Sherman, Ms. Schellin and/or Mr. Wesley participated as attorneys in the prosecution of the '188 Patent which issued on June 8, 1993 on which date the '678 Patent's prosecution was ongoing in the PTO, before the '645 Patent's Prosecution commenced, and before the '499 Patent's Prosecution commenced.  John Sherman signed the patent application that resulted in the '188 Patent on or about October 24, 1989; William Wesley signed a "Change of Correspondence Address and Associate Power of Attorney Transmittal Letter" during his prosecution of the application that resulted in the' 188 Patent on or about January 28, 1992; Ms. Schellin signed an Amendment during her prosecution of the '188 Patent on or about August 28, 1992, as well as a further Amendment on or about February 16, 1993.

**REPLY**:    Intermec admits that Mr. Wesley signed the document identified in this

paragraph, and that Ms. Schellin signed the documents identified in this paragraph, but denies

the remaining allegations of this paragraph.

132.    Palm is informed and believes, and thereupon alleges, that one or more of the '678 patentees knew of the materiality of the '188 Hanson Patent to the patentability of the '678 Patent during the '678 Patent's prosecution.  Specifically, Mr. Sherman, Ms. Schellin and/or Mr. Wesley participated as attorneys in the prosecution of the' 188 Patent which was issued at a time when one or more of them were actively participating in the '678 Patent's prosecution. However, the '678 patentees failed to disclose the Hanson '188 Patent to the examiner of the '678 Patent.

**REPLY**:     Intermec denies the allegations of this paragraph.

133.    Palm is informed and believes, and thereupon alleges, that one or more of the '645 patentees knew of the materiality of the '188 Hanson Patent to the patentability of the '645 Patent during the '645 Patent's prosecution.  Specifically, Mr. Wesley participated as an attorney in the prosecution of the '188 Patent which was issued before the time when he actively participated in the '645 Patent's prosecution.  The '645 patentees, however, failed to disclose the Hanson '188 Patent to the examiner of the '645 Patent.

**REPLY**:     Intermec denies the allegations of this paragraph.

134.    Palm is informed and believes, and thereupon alleges, that one or more of the '499 patentees knew of the materiality of the' 188 Hanson Patent to the patentability of the '499 Patent during the '499 Patent's prosecution.   Specifically, Mr. Sherman and/or Mr. Wesley participated as attorneys in the prosecution of the '188 Patent which was issued before the time when one or more of them actively participated in the '499 Patent's prosecution.  The '499 patentees, however, failed to disclose the Hanson '188 Patent to the examiner of the '499 Patent.

**REPLY**:     Intermec denies the allegations of this paragraph.

135.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:     Intermec denies the allegations of this paragraph.

## THE HANSON '991 PATENT

136.    The Hanson '991 Patent was material to the patentability of the '678 Patent, the '645 Patent, and the '499 Patent.  There is a substantial likelihood that a reasonable examiner would have considered the Hanson '991 Patent important in deciding whether to allow the issuance of each of the '678 Patent, the '645 Patent, and the '499 Patent, and it was not cumulative of other references provided by the '678 patentees to the PTO during the '678 Patent's prosecution, by the '645 patentees to the PTO during the '645 Patent's prosecution, or by the '499 patentees to the PTO during the '499 Patent's prosecution.

**REPLY**:     Intermec denies the allegations of this paragraph.

137.    Specifically, the Hanson '991 Patent discloses a "compact hand-held RF data terminal."  ('991 Patent, at [57]).  The Hanson '991 Patent further discloses that the hand-held terminal includes means for manually entering data and data display means.  ('991 Patent col. 3:39-43).  The Hanson '991 Patent also discloses that a bar code reader may be optionally attached to the hand-held terminal.  ('991 Patent col. 3:66-4:1).  The Hanson '991 Patent further discloses that the hand-held terminal may be inserted into and substantially contained within a data cradle for communication with a peripheral device.  ('991 Patent col. 3:59-66, figure 9).  The Hanson '991 Patent further discloses that the hand-held terminal is connected via an RF link to a central computer.  ('991 Patent col. 3:31:38, 3:47-50).

**REPLY**:        Intermec states that Hansen '991 speaks for itself, and accordingly denies

the allegations in this paragraph.

138.    The Hanson '991 Patent is material to (without limitation) at least claims 1, 2, 4, 8
and 19-21 of the '678 Patent, which purport to disclose a hand-held terminal including, a display,
means for collecting data; RF radio means, and wireless connectivity between the hand-held
terminal and a server station.

**REPLY**:        Intermec denies that Hansen '991 is material to the patentability of the

'499 patent, and accordingly denies the allegations of this paragraph.  Intermec further denies

that there is a case or controversy regarding all of the claims identified in this paragraph, and

thus any subject-matter basis for Palm's claims.

139.    The Hanson '991 Patent is prior art to the '678 Patent, the '645 Patent, and the
'499 Patent under 35 U.S.C. section 102(e)(1) and 35 U.S.C. section 103(a).  The Hanson '991
Patent is a continuation of the Hanson '188 Patent, which was filed on October 24, 1989, before
the August 21, 1991 filing date of the '678 Patent, the July 5, 1994 filing date of the '645 Patent,
and the October 22, 1996 filing date of the '499 Patent.

**REPLY**:        Intermec denies the allegations of this paragraph.

140.    The Hanson '991 Patent is material to (without limitation) at least claims 1, 5, and
6 of the '645 Patent, which purport to disclose a hand-held terminal including, a display, means
for collecting data; RF radio means, and wireless connectivity between the hand-held terminal
and a server station.

**REPLY**:        Intermec denies the allegations of this paragraph.

141.    The Hanson '991 Patent is material to (without limitation) at least claims 1, 5, 6,
9, and 10 of the '499 Patent, which purport to disclose a hand-held terminal including, a display,
means for collecting data; RF radio means, and wireless connectivity between the hand-held
terminal and a server station.

**REPLY**:        Intermec denies the allegations of this paragraph.

142.    Palm is informed and believes, and thereupon alleges, that the Hanson '991 Patent
was known to Mr. Sherman, Ms. Schellin, and/or Mr. Wesley during the '678 Patent's
prosecution, during the '645 Patent's prosecution, and during the '499 Patent's prosecution.
Specifically, Mr. Sherman, Ms. Schellin and/or Mr. Wesley participated as attorneys in the
prosecution of the '991 Patent which issued on June 21, 1994 on which date the '678 Patent's
prosecution was ongoing in the PTO, before the '645 Patent's Prosecution commenced, and
before the '499 Patent's Prosecution commenced.  John Sherman signed the patent application

that resulted in the '991 Patent on or about February 23, 1993; Winifrid O.E. Schellin signed a Preliminary Amendment during her prosecution of the application that resulted in the '991 Patent on or about February 23, 1993, and an Amendment during her prosecution of the application that resulted in the '991 Patent on or about October 18, 1993; William Wesley signed an Issue Fee Transmittal during his prosecution of the application that resulted in the '991 Patent on about March 16, 1994.

**REPLY**:     Intermec admits that Ms. Schellin signed the document identified in this paragraph, and that Mr. Wesley signed the document identified in this paragraph, but denies the remaining allegations of this paragraph.

143.     Palm is informed and believes, and thereupon alleges, that one or more of the '678 patentees knew of the materiality of the '991 Hanson Patent to the patentability of the '678 Patent during the '678 Patent's prosecution.     Specifically, Mr. Sherman, Ms. Schellin and/or Mr. Wesley participated as attorneys in the prosecution of the '991 Patent which was issued at a time when one or more of them were actively participating in the '678 Patent's prosecution. However, the '678 patentees failed to disclose the Hanson '991 Patent to the examiner of the '678 Patent.

**REPLY**:     Intermec denies the allegations of this paragraph.

144.     Palm is informed and believes, and thereupon alleges, that one or more of the '645 patentees knew of the materiality of the '991 Hanson Patent to the patentability of the '645 Patent during the '645 Patent's prosecution.  Specifically, Mr. Wesley participated as an attorney in the prosecution of the '991 Patent which was issued before the time when he actively participated in the '645 Patent's prosecution.  However, the '645 patentees failed to disclose the Hanson '991 Patent to the examiner of the '645 Patent.

**REPLY**:     Intermec denies the allegations of this paragraph.

145.     Palm is informed and believes, and thereupon alleges, that one or more of the '499 patentees knew of the materiality of the '991 Hanson Patent to the patentability of the '499 Patent during the '499 Patent's prosecution.  Specifically, Mr. Sherman and/or Mr. Wesley participated as attorneys in the prosecution of the '991 Patent which was issued before the time when one or more of them actively participated in the '499 Patent's prosecution.  However, the '499 patentees failed to disclose the Hanson '991 Patent to the examiner of the '499 Patent.

**REPLY**:     Intermec denies the allegations of this paragraph.

146.     Based on the foregoing, Palm is informed and believes, and thereupon, alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:     Intermec denies the allegations of this paragraph.

## THE GOMBRICH '441 PATENT

147.  The Gombrich '441 Patent was material to the patentability of the '678 Patent, the '645 Patent, and the '499 Patent.  There is a substantial likelihood that a reasonable examiner would have considered the Gombrich '441 Patent important in deciding whether to allow the issuance of the '678 Patent, the '645 Patent, and the '499 Patent, and it was not cumulative of other references provided by the '678 patentees to the PTO during the '678 Patent's prosecution, the '645 patentees to the PTO during the '645 Patent's prosecution, or the '499 patentees to the PTO during the '499 Patent's prosecution.

**REPLY**:        Intermec denies the allegations of this paragraph.

148.  Specifically, the Gombrich '441 patent discloses "portable handheld terminal." ('441 Patent, at [57]).  The Gombrich '441 Patent further discloses that the handheld terminal includes a touch sensitive display means and keyboard means for manually entering data.  ('441 Patent col. 2:3-8, 5:40-42).  The Gombrich '441 Patent further discloses that the handheld terminal includes optical sensing means, including bar code reader means.  ('441 Patent col. 2:38).  The Gombrich '441 Patent further discloses that the handheld terminal may be inserted into and substantially contained within a base station, said base station offering additional functionality to the handheld terminal.  ('441 Patent col. 5:51-6:12).  The Gombrich '441 Patent further discloses that the handheld terminal may be connected to a central information system.  ('441 Patent col. 6:7-6:12).

**REPLY**:        Intermec states that Gombrich '441 speaks for itself, and therefore denies

the allegations of this paragraph.

149.  The Gombrich '441 Patent is material to (without limitation) at least claims 1, 2, 4, 8 and 19-21 of the '678 Patent, which purport to disclose a hand-held terminal including, a display, means for collecting data; RF radio means, and wireless connectivity between the hand held terminal and a server station.

**REPLY**:        Intermec denies the allegations of this paragraph.

150.  The Gombrich '441 Patent is prior art to the '678 Patent, the '645 Patent, and the '499 Patent under 35 U.S.C. section 102(b) and 35 U.S.C. section 103(a).  The Gombrich '441 Patent was issued on April 10, 1990 more than one year before the August 21, 1991 filing date of the '678 Patent, the July 5, 1994 filing date of the '645 Patent, and the October 20, 1996 filing date of the '499 Patent.

**REPLY**:        Intermec denies the allegations of this paragraph.

151.  The Gombrich '441 Patent is material to (without limitation) at least claims 1,5, and 6 of the '645 Patent, which purport to disclose a hand-held terminal including, a display, means for collecting data; RF radio means, and wireless connectivity between the hand-held terminal and a server station.

**REPLY**:          Intermec denies the allegations of this paragraph.

152.     The Gombrich '441 Patent is material to (without limitation) at least claims 1, 5, 6, 9, and 10 of the '499 Patent, which purport to disclose a hand-held terminal including, a display, means for collecting data; RF radio means, and wireless connectivity between the hand held terminal and a server station.

**REPLY**:          Intermec denies the allegations of this paragraph.

153.     Palm is informed and believes, and thereupon alleges, that the Gombrich '441 Patent was known to Mr. Sherman, Ms. Schellin, and/or Mr. Wesley during the '678 Patent's prosecution, during the '645 Patent's prosecution, and during the '499 Patent's prosecution. Specifically, the Gombrich '441 Patent was cited to these patentees by another patent examiner of the PTO on or around May 23, 1992, in the course of prosecution of the '188 Patent as United States Application Serial No. 07/426,135, and on or around July 13, 1993, in the course of prosecution of the '991 Patent as United States Application Serial No. 08/022,577.

**REPLY**:          Intermec admits that the Gombrich '441 Patent was cited as prior art

against the application that led to the Hansen '188 and Hansel '991 Patents, but denies the

remainder of this paragraph.

154.     Palm is informed and believes, and thereupon alleges, that one or more of the '678 patentees knew of the materiality of the '441 Gombrich Patent to the patentability of the '678 Patent during the '678 Patent's prosecution.  Specifically, Mr. Schellin submitted a response and amendment to the PTO on or around October 18, 1993 that addressed the Gombrich '441 Patent with respect to the '991 Patent's prosecution, and Mr. Schellin submitted a response and amendment to the PTO on or around August 28, 1992 that addressed the Gombrich '441 Patent with respect to the' 188 Patent's prosecution.  The '678 Patentees, however, failed to disclose the Gombrich '441 Patent to the examiner of the '678 Patent.

**REPLY**:          Intermec admits that Ms. Schellin signed responses and amendments dated

October 18, 1993, and August 28, 1992 during the prosecution of the Hansen '188 and Hansen

'991 Patents, which response discussed Gombrich '441, but denies the remaining allegations of

this paragraph.

155.     Palm is informed and believes, and thereupon alleges, that one or more of the '645 patentees knew of the materiality of the '991 Hanson Patent to the patentability of the '645 Patent during the '645 Patent's prosecution.  The '645 Patentees, however, failed to disclose the Gombrich '441 Patent to the examiner of the '645 Patent.

**REPLY**:          Intermec denies the allegations of this paragraph.

156.    Palm is informed and believes, and thereupon alleges, that one or more of the '499 patentees knew of the materiality of the '991 Hanson Patent to the patentability of the '499 Patent during the '499 Patent's prosecution. The '499 Patentees, however, failed to disclose the Gombrich '441 Patent to the examiner of the '499 Patent.

**REPLY**:      Intermec denies the allegations of this paragraph.

157.    Based on the foregoing, Palm is informed and believes, and thereupon alleges, that this reference was withheld with an intent to mislead the PTO.

**REPLY**:      Intermec denies the allegations of this paragraph.

158.    Given the conduct of the '678 patentees during the prosecution of that patent, as described above, the '678 patentees engaged in inequitable conduct during the '678 patent's prosecution by their knowing failure to disclose material prior art to the PTO, including the Danielson '463 Patent, the Danielson '662 Patent, the Hanson '188 Patent, the Hanson '991 Patent, and the Gombrich '441 Patent. The '678 patent is unenforceable against Palm because of said inequitable conduct.

**REPLY**:      Intermec denies the allegations of this paragraph.

159.    Given the conduct of the '645 patentees during the prosecution of that patent, as described above, the '645 patentees engaged in inequitable conduct during the '645 patent's prosecution by their knowing failure to disclose material prior art to the PTO, including the Hanson '188 Patent, the Hanson '991 Patent, and the Gombrich '441 Patent. The '645 patent is unenforceable against Palm because of said inequitable conduct.

**REPLY**:      Intermec denies the allegations of this paragraph.

160.    Given the conduct of the '499 patentees during the prosecution of that patent, as described above, the '499 patentees engaged in inequitable conduct during the '499 patent's prosecution by their knowing failure to disclose material prior art to the PTO, including the Hanson '188 Patent, the Hanson '991 Patent, and the Gombrich '441 Patent. The '499 patent is unenforceable against Palm because of said inequitable conduct.

**REPLY**:      Intermec denies the allegations of this paragraph.

## FOURTH COUNTERCLAIM
## (INFECTIOUS UNENFORCEABILITY OF THE '645 AND '499 PATENTS)

161.    Palm refers to and incorporates by reference Paragraphs 1-160 of its Counterclaims as though fully set forth herein.

**REPLY**:      Intermec repeats and incorporates its replies to paragraphs 1-160 above.

162.    The '645 and '499 patents are unenforceable based on the doctrine of infectious unenforceability.

**REPLY**:    Intermec denies the allegations of this paragraph.

163.    The '645 and '499 patents have an immediate and necessary relation to the '678 patent.  For example:

    (a)    The '645 and '499 patents claim on their face that they are related to the '678 patent;

    (b)    the '645 and '499 patents make claims of priority to the '678 patent;

    (c)    the '645 patent is a continuation of the '678 patent;

    (d)    the '499 is a continuation of the '645 patent;

    (e)    the '645 and '499 patents are based on the same specification as the '678 patent; and

    (f)    large portions of the description of the invention are the same in both patents.

Thus, the specification and claims of the '678 patent provide the foundation upon which the '645 and '499 patents are built.

**REPLY**:    Intermec admits that the '678 Patent is related to the '645 and '499

Patents, but denies the remainder of this paragraph.

164.    The failures to disclose known material prior art to the PTO during prosecution of the '678 patent, as alleged above, also renders unenforceable the '645 and '499 patents.

**REPLY**:    Intermec denies the allegations of this paragraph.

165.    An immediate and necessary relationship exists between conduct in the prosecution of the '678 patent and the prosecution of the '645 and '499 patents.  Under the doctrine of infectious unenforceability, a patent which relates to, or is dependent upon, a patent procured through fraud and misrepresentation during prosecution in the PTO is likewise tainted in the same manner as the patent with respect to which the fraud occurred.  Therefore, the '645 and '499 patents are unenforceable by reason of the doctrine of infectious unenforceability.

**REPLY**:    Intermec denies the allegations of this paragraph.

### FIFTH COUNTERCLAIM
### (INFRINGEMENT OF U.S. PATENT NO. 6,665,803)

166.    Palm incorporates paragraphs 1-7 as if fully set forth herein.

**REPLY**:    Intermec repeats and incorporates its replies to paragraphs 1-7 above.

167.    On December 16, 2003, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,665,803 (the "'803 Patent") to Palm, Inc. for an invention entitled "System and method for detection of an accessory device connection status." A true and correct copy of the '803 patent is attached hereto as Exhibit A.

**REPLY**:    Intermec admits that U.S. Patent No. 6,665,803 is entitled "System and method for detection of an accessory device connection status," and was issued on December 16, 2003, and admits that Exhibit A is a purported copy of the '803 Patent.  Intermec denies the remainder of this paragraph, leaving Palm to its proofs.

168.    Palm, Inc. is the sole holder of the entire right, title, and interest in the '803 Patent.

**REPLY**:    Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and accordingly denies same, leaving Palm to its proofs.

169.    On information and belief, Intermec has been and is infringing, literally and/or under the doctrine of equivalents, contributing to the infringement of, and/or actively inducing the infringement of one or more claims of the '803 patent by making, using, offering for sale, selling, causing to be sold, and/or importing one or more products, including, without limitation the CN3 Mobile Computer (the "Accused Products").

**REPLY**:    Intermec denies the allegations of this paragraph.

170.    By reason of Intermec's infringement of the '803 patent, Palm has suffered, is suffering, and will continue to suffer injury to its business and property rights, for which it is entitled to damages in an amount to be proven at trial.

**REPLY**:    Intermec denies the allegations of this paragraph.

171.    By reason of Intermec's infringement of the '803 patent, Palm has suffered, is suffering, and will continue to suffer irreparable harm unless such acts are enjoined by the Court.

**REPLY**:    Intermec denies the allegations of this paragraph.

## SIXTH COUNTERCLAIM
## (INFRINGEMENT OF U.S. PATENT NO. 7.096.049)

172.    Palm realleges and incorporates by reference Paragraphs 1-7 of this Counterclaim as if fully set forth herein.

**REPLY**:    Intermec repeats and incorporates its replies to paragraphs 1-7 above.

173.    On August 22, 2006 the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,096,049 (the ''049 Patent'') to Palm, Inc. for an invention entitled "Wireless transaction enabled handheld computer system and method." A true and correct copy of the '049 patent is attached hereto as Exhibit B.

**REPLY**:    Intermec admits that U.S. Patent No. 7,096,049 ("the '049 patent") is

entitled "Wireless transaction enabled handheld computer system and method," and was issued

on August 22, 2006, and admits that Exhibit B is a purported copy of the '049 Patent. Intermec

denies the remainder of this paragraph, leaving Palm to its proofs.

174.    Palm, Inc. is the sole holder of the entire right, title, and interest in the '049 Patent.

**REPLY**:    Intermec is without knowledge or information sufficient to form a belief

as to the truth of the allegations in this paragraph, and accordingly denies same, leaving Palm to

its proofs.

175.    On information and belief, Intermec has been and is infringing, literally and/or under the doctrine of equivalents, contributing to the infringement of, and/or actively inducing the infringement of one or more claims of the '049 patent by making, using, offering for sale, selling, causing to be sold, and/or importing one or more products, including, without limitation the CN3 Mobile Computer (the "Accused Products").

**REPLY**:    Intermec denies the allegations of this paragraph.

176.    By reason of Intermec's infringement of the '049 patent, Palm has suffered, is suffering, and will continue to suffer injury to its business and property rights, for which it is entitled to damages in an amount to be proven at trial.

**REPLY**:    Intermec denies the allegations of this paragraph.

177.    By reason of Intermec's infringement of the '049 patent, Palm has suffered, is suffering, and will continue to suffer irreparable harm unless such acts are enjoined by the Court.

**REPLY**:        Intermec denies the allegations of this paragraph.

## REQUEST FOR RELIEF

Intermec denies that Palm is entitled to the relief it requests.

## STATEMENT OF AFFIRMATIVE DEFENSES

Defendant Intermec, for its statement of affirmative defenses pursuant to Fed. R. Civ. P. 8(c), respectfully states as follows:

1.    One or more of the patent claims allegedly infringed by Intermec are invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§ 101 *et seq.*

2.    One or more of the patent claims allegedly infringed by Intermec are not infringed either directly or under the doctrine of equivalents.

3.    Prosecution history estoppel and prosecution disclaimer bar Palm from asserting and proving infringement of one or more asserted claims literally or under the doctrine of equivalents, inasmuch as Palm is estopped from asserting a scope of those claims sufficient to cover the products accused of infringement and that are allegedly made, used, sold, or offered for sale by Intermec.

4.    Palm has failed to state a claim for relief with respect to its claims for Inequitable Conduct and/or Infectious Unenforceability.

## INTERMEC'S COUNTERCLAIMS
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY

Intermec, by its undersigned attorneys, and for its Counterclaims against Palm, alleges as follows:

**JURISDICTION AND VENUE**

1.    These counterclaims arise under the patent laws of the United States, 35 U.S.C. §§ 101 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

2.    This Court has personal jurisdiction over Palm to adjudicate these counterclaims because Palm has continuous, systematic, and substantial contacts with the State of Delaware, and has already submitted itself to this Court's jurisdiction.

3.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

**PARTIES**

4.    Intermec is incorporated under the laws of the State of Washington, and has its principal place of business at 6001 36th Ave. West, Everett, Washington 98203.

5.    On information and belief, Palm is a corporation organized and existing under the laws of Delaware, having a place of business at 950 West Maude Avenue, Sunnyvale, CA 94085.

**EXISTENCE OF A JUSTICIABLE CONTROVERSY**

6.    This action concerns the invalidity and non-infringement of the following United States Patents, which Palm alleges it owns:  the '803 Patent and the '749 Patent (collectively the "Palm Patents").

7.    Palm claims to be the present owner of all right, title and interest to the Palm Patents.

8.    Palm has filed counterclaims against Intermec in this judicial district accusing Intermec of infringing certain claims of the Palm Patents.

9.      There exists a justiciable controversy between Intermec and Palm concerning the validity, enforceability, and/or infringement of the asserted claims of the Palm Patents as set forth in Palm's Third Amended Counterclaims and in Intermec's Reply thereto.

### FIRST CLAIM FOR RELIEF AGAINST PALM
(Declaratory Judgment of Invalidity of the Palm Patents)

10.     Intermec repeats and re-alleges the allegations contained in paragraphs 1 to 9 hereof.

11.     Intermec is entitled to a declaratory judgment that one or more of the asserted claims of the Palm Patents are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, §§ 101 et seq.

### SECOND CLAIM FOR RELIEF AGAINST PALM
(Declaratory Judgment of Non-Infringement of the Palm Patents)

12.     Intermec repeats and re-alleges the allegations contained in paragraphs 1 to 9 hereof.

13.     Intermec is entitled to a declaratory judgment that it has not infringed, contributed to infringement by others or induced others to infringe any otherwise valid and asserted claim of the Palm Patents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
   *Attorneys for Plaintiff*
   *Intermec Technologies Corp.*

OF COUNSEL:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
(312) 360-6000

June 13, 2008


2368150

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2008, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP

I further certify that I caused to be served copies of the foregoing document on

June 13, 2008, upon the following in the manner indicated:

Richard L. Horwitz                                   *VIA HAND AND ELECTRONIC MAIL*
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Robert T. Haslam                                     *VIA ELECTRONIC MAIL*
Nitin Subhedar
Jaideep Venkatesan
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025
robert.haslam@hellerehrman.com
nitin.subhedar@hellerehrman.com
jay.venkatesan@hellerehrman.com

Robert D. Fram                                       *VIA ELECTRONIC MAIL*
Michael M. Markman
Robert J. Williams
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
robert.fram@hellerehrman.com
michael.markman@hellerehrman.com
robert.williams@hellerehrman.com

*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)