**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERMEC TECHNOLOGIES CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 07-272-SLR |
| PALM, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**RULE 30(b)(6) NOTICE OF DEPOSITION TO PALM, INC.**

PLEASE TAKE NOTICE that commencing at 9:00 a.m. on August 18, 2008, and continuing day-to-day thereafter until completed at a location mutually agreed upon by counsel, Intermec Technologies Corp. shall take the deposition of the person or persons designated to testify as to matters known or reasonably available to Palm, Inc. pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, concerning the topics listed in Exhibit A, in accordance with the provided definitions.

This examination may be recorded by audio, visual, or stenographic means before a Notary Public or other person authorized to administer oaths pursuant to Rule 28 of the Federal Rules of Civil Procedure.

- 2 -

You are invited to attend and cross-examine.

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        */s/ Rodger D. Smith II*
        Jack B. Blumenfeld (#1014)
        Rodger D. Smith II (#3778)
        1201 N. Market Street
        P.O. Box 1347
        Wilmington, DE  19899
        jblumenfeld@mnat.com
        rsmith@mnat.com
        (302) 658-9200
          *Attorneys for Plaintiff Intermec Technologies Corp.*

OF COUNSEL:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
(312) 360-6000

July 25, 2008


2425973

- 3 -

**Exhibit A**

Intermec Technologies Corp. ("Intermec") incorporates by reference the definitions contained in Intermec's First Set of Requests for Documents Directed to Palm, Inc. ("Palm") and in Intermec's First Set of Interrogatories to Palm. Intermec notes that the categories listed herein are focused on issues relating to the design, use, and operation of Palm's Accused Products. Intermec reserves the right to supplement or otherwise amend this list of categories to address other issues in this case.

Palm shall designate and produce the person(s) most knowledgeable to testify on its behalf regarding each of the following issues:

1. The functionality of Palm's Accused Products including, but not limited to, all functionality referred to in Intermec's infringement contentions and/or Palm's non-infringement contentions.

2. The facts supporting Palm's position that any or all of the Intermec Patents are invalid.

3. The facts supporting Palm's position that any or all of the Intermec Patents are not infringed.

4. The facts supporting Palm's position that any or all of the Intermec Patents are unenforceable.

5. The facts supporting Palm's position that any or all of the Intermec Patents are unenforceable as a result of alleged inequitable conduct by Intermec.

6. The facts supporting Palm's position that any or all of the Intermec Patents are unenforceable as a result of infectious unenforceability.

7. The facts supporting Palm's position that it does not infringe any or all of the claims of the Intermec Patents as a result of prosecution history estoppel and/or prosecution disclaimer by Intermec.

8. The facts supporting the positions taken by Palm in its Preliminary Invalidity Contentions.

9. The facts supporting Palm's position that its Accused Products are not "computerized processing models."

10. The facts supporting Palm's position that its Accused Products do not include "optical reader means."

11. The facts supporting Palm's definition of the terms "optical reader," "optical indicia reader," and "indicia reader input system."

12. The facts supporting Palm's position that its Accused Products do not have a "means for registering the path of movement of a stylus."

13. The facts supporting Palm's position that its Accused Products do not have an "indicia reader input system."

14. The facts supporting Palm's position that its Accused Products do not include any elements that read on the "shell module" limitation.

15. The facts supporting Palm's position that its Accused Products do not include a component that reads on the claimed "non-contact reader."

16. The facts supporting Palm's position that its Accused Products do not accept handwritten input without third party modification, and the significance of this modification.

17. The facts supporting Palm's position that the camera on its Accused Products could not be an "instant" reader because it does not instantly decode indicia.

18. The manner in which Palm's Accused Products operate with any "server station" and Palm's relationships with server station providers.

19. The facts supporting Palm's position that its Accused Products do not include an equivalent to the communications means in the '678 Patent.

20. The facts supporting Palm's position that its Accused Products do not have a "means for generating," and the necessity for a "means for generating" in the '678 Patent.

21. The facts supporting Palm's position that its Accused Products do not contain the "communication means" and "RF means" in the '678 Patent.

22. The facts supporting Palm's position that its Accused Products do not contain the "means for translating a memory altering request" in the '678 Patent.

23. The facts supporting Palm's position that its Accused Products do not contain the "means … for receiving and translating said needed data from its second style to its first style" in the '678 Patent.

24. The facts supporting Palm's position that its Accused Products do not execute application programs pursuant to the Intermec Patents.

25. The facts supporting Palm's position that its Accused Products do not operate with any server station that stores application programs to be executed by the Accused Products.

26. The facts supporting Palm's position that its Accused Products do not interoperate with servers that contain the necessary structure.

27. The facts supporting Palm's position that the Intermec Patents require that application programs must be partitioned into a "root module" and an "overlay module" and that Palm's accused products do not contain this feature.

28. The facts supporting Palm's interpretation of a "first style" and another "style."

29. The facts supporting Palm's interpretation of "address[ing] overlay modules."

30. The facts supporting Palm's position concerning whether the "needed data," as defined in the '678 Patent, must be stored on a server station and not on the accused device itself.

31. The facts supporting Palm's position that its Accused Products do not contain the "RF radio means" as defined by the Intermec Patents.

32. The facts supporting Palm's position that its Accused Products do not contain a "second radio means."

33. The facts supporting Palm's position that its Accused Products do not interoperate with a server that reads on a "memory program table."

34. The facts supporting Palm's position that its Accused Products do not use a server that contains a "second memory table."

35. The facts supporting Palm's position that its Accused Products "do not constitute a 'system for collecting data' to send to a 'main information center.'"

36. The facts supporting Palm's position that a "first information portion" and "second information portion" is a "root module" and an "overlay module."

37. The facts supporting Palm's position that its Accused Products do not contain the "information requesting means" in the '645 Patent.

38. The facts supporting Palm's position that its Accused Products do not contain the "first memory searching means" in the '645 Patent.

39. The facts supporting Palm's position that its Accused Products do not have a "server for said terminal."

40. The facts supporting Palm's position that its Accused Products have a "communication means" structure that includes the wireless transceiver connected and controlled by the server system.

41. The facts supporting Palm's interpretation of the claimed "server station."

42. The facts supporting Palm's interpretation of a "second memory searching means" and the facts supporting Palm's position that its Accused Products do not have such a function.

43. The facts supporting Palm's interpretation of a "second information portion" and "request encoded" as described in the '645 Patent.

44. The facts supporting Palm's position that its Accused Products do not constitute "a system for collecting data" to send to a "main information center."

45. The facts supporting Palm's position that information being "partitioned: requires a "root module."

46. The facts supporting Palm's position that its Accused Products do not contain a "first controller" as defined by the '499 Patent.

47. The facts supporting Palm's position that its Accused Products do not interoperate with any component that meets the limitation of being a "server for said terminal."

48. The facts supporting Palm's position that the '499 Patent requires that a "server" must be configured specifically to store application programs for a specific terminal.

49. The facts supporting Palm's interpretation of an "information call" as defined in the '499 Patent.

50. The facts supporting Palm's position that its Accused Products do not meet the "first computing device" requirement of the '499 Patent.

51. The facts supporting Palm's position that its Accused Products do not interoperate with any "server" that stores a "plurality of application programs" as well as "application-specific data."

52. The facts supporting Palm's interpretation of "remote data collection centers" as defined in the '499 Patent.

53. The facts supporting Palm's position that its Accused Products do not "selectively request" "application programs" from a "main information center" as defined in the '499 Patent.

54. The facts supporting Palm's position that its Accused Products do not receive application programs in "executable portions."

55. The facts supporting Palm's position that its Accused Products do not have "diagnostic routines" that the Accused Products perform "at fixed priority levels."

56. The facts supporting Palm's position that Intermec is barred from proving infringement of the Intermec Patents under the doctrine of equivalents.

57. The facts supporting Palm's position that the claims of any of the Intermec Patents are void, invalid and/or unenforceable.

58. The facts supporting Palm's position that the '645 and '499 Patents are unenforceable.

59. The facts supporting Palm's position that Intermec's claims are barred by the doctrines of laches, estoppel, waiver, implied license and/or unclean hands.

60. The facts supporting Palm's position that any prior art reference anticipates any asserted patent claim of the Intermec Patents.

61. The facts supporting Palm's position that any prior art reference, on its own, renders obvious any asserted patent claim of the Intermec Patents.

62. The facts supporting Palm's position that any combination of prior art references renders invalid any asserted patent claim of the Intermec Patents.

63. The manner in which Palm's Accused Products are capable of both wireless communication and image-capture.

64. The manner, use and functionalities of any multi-tasking operating system on any of Palm's Accused Products.

65. The assembly of Palm's Accused Products, including the use of a camera, screen, memory, operating screen and communication devices.

66. The operation of Palm's multitasking operating systems related to Palm's Accused Products.

67. The memory functions and storage capabilities of Palm's Accused Products.

68. The manner in which Palm's Accused Products store, access, use and obtain data stored in memory using an operating system.

69. The manner in which Palm's Accused Products interface with the Internet.

70. The manner in which Palm's Accused Products interface with servers.

71. The manner in which Palm's Accused Products retrieve information from the internet.

72. Palm's provisions of network solutions related to its Accused Products.

73. The manner in which the Palm's synchronization application works in Palm's Accused Products.

74. The manner and method in which Palm's Accused Products handle POP email.

75. The manner and timing of when Palm first became aware of any of the Intermec Patents.

76. The manner and timing of when Palm first became aware that it may be infringing any of the Intermec Patents.

77. Any actions taken by Palm to evaluate whether it was infringing any of the Intermec Patents or to avoid infringement of the Intermec Patents.

78. All facts including, but not limited to, statements forming the basis of Palm's claims for equitable estoppel, waiver, license, implied license, unfair competition, and fraud.

79. Each and every statement upon which Palm relies for its claims of estoppel, waiver, license, implied license, unfair competition, and fraud including the identification of the statement, the time and manner in which Palm became aware of the statement, and the manner in which Palm relied on the statement.

80. Sales, cost, and profit information for each of the Accused Products.

81. Any and all payments and/or royalties paid or received by Palm relating to the Accused Products.

82. Any and all payments and/or royalties paid or received by Palm relating to the Palm Patents and/or any other patent owned by Palm upon which Palm may base a calculation of a reasonable royalty.

83. The facts supporting Palm's position as to the reasonable royalty that it should pay for a license to use each of the Intermec Patents.

84. The facts supporting Palm's position with respect to the *Georgia Pacific* factors as related to Palm's claims of patent infringement against Intermec, including:

    a. royalties received by Palm for the licensing, if any, of the Palm Patents;

    b. the rates paid by any licensee to Palm, and the terms of any such licenses, for the use of other patents comparable to the Palm patents;

    c. Palm's established policy and marketing program to maintain its patent monopoly;

    d. the commercial relationship between Palm and any licensee of the Palm Patents or related patents;

    e. Palm's position as to the commercial relationship between Intermec and Palm;

    f. the effect of selling products that read on the Palm patents in promoting the sales of other products;

    g. the duration of the Palm Patents and the duration of any licenses for the same;

h. the established profitability of the product(s) made under the Palm Patents, the commercial success of such products and the popularity of the same;

i. the advantages and utility of the Palm Patent property over prior art;

j. benefits to the end user of the Palm Patents or products which incorporate the Palm Patents;

k. the extent to which Intermec has made use of the Palm Patents and any evidence probative of the same;

l. the portion of the profits or of the selling price that may be customary in the industry allocated for the use of the invention or analogous inventions;

m. the portion of the realizable profit that should be credited to the invention of the Palm Patents;

n. what would have formed the basis of a license for the Palm Patents had Palm and Intermec entered into an arms-length negotiation for the use of the Palm Patents by Intermec.

85. The facts supporting Palm's position with respect to the *Georgia Pacific* factors as related to Palm's infringement of the Intermec Patents, including:

a. rates paid by Palm to any licensor for the use of other patents comparable to the Intermec patents and the terms of any such licenses;

b. the commercial relationship between Palm and Intermec with respect to the Intermec Patents;

c. the commercial success of the Intermec Patents and the commercial success of Palm's Accused Products;

        d.    the portion of the profit or of the selling price that may be customary in the industry allocated for the use of the invention or analogous inventions;

        e.    the portion of the realizable profit that should be credited to the invention of the Intermec Patents;

        f.    what would have formed the basis of a license for the Intermec Patents had Palm and Intermec entered into an arms-length negotiation for the use of the Intermec Patents by Palm.

86. The facts supporting Palm's allegation that Intermec infringes U.S. Patent No. 6,665,803.

87. The facts supporting Palm's allegation that Intermec infringes U.S. Patent No. 7,096,049.

88. Whether or not any Palm Products practice the Palm Patents and the identification of these products.

89. With respect to the injunction Palm seeks as a remedy against Intermec:

        a.    The irreparable injury, if any, suffered by Palm;

        b.    The facts supporting Palm's position that any injury it has allegedly suffered cannot be remedied by monetary compensation;

        c.    The facts supporting Palm's position that an equitable remedy is warranted after a balancing of the hardships.

        d.    The facts supporting Palm's position that the public interests are served by the entry of an injunction against Intermec.

90. With respect to the injunction Intermec seeks as a remedy against Palm:

    a. The facts supporting Palm's position that Intermec has not suffered irreparable injury;

    b. The facts supporting Palm's position that it can remedy Intermec's injury with monetary compensation;

    c. The facts supporting Palm's position that an equitable remedy is not warranted after a balancing of the hardships.

    d. The facts supporting Palm's position that the public interests are disserved by the entry of an injunction against Palm.

91. The authentication and admissibility of documents produced by Palm in this litigation.

92. The methods that Palm used to search for and produce relevant documents.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

    Richard L. Horwitz, Esquire
    David E. Moore, Esquire
    Potter Anderson & Corroon LLP

I further certify that I caused to be served copies of the foregoing document on July 25, 2008, upon the following in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz<br>David E. Moore<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com | *VIA HAND AND ELECTRONIC MAIL* |
| Robert T. Haslam<br>Nitin Subhedar<br>Jaideep Venkatesan<br>HELLER EHRMAN LLP<br>275 Middlefield Road<br>Menlo Park, CA  94025<br>robert.haslam@hellerehrman.com<br>nitin.subhedar@hellerehrman.com<br>jay.venkatesan@hellerehrman.com | *VIA ELECTRONIC MAIL* |
| Robert D. Fram<br>Michael M. Markman<br>Robert J. Williams<br>HELLER EHRMAN LLP<br>333 Bush Street<br>San Francisco, CA  94104-2878<br>robert.fram@hellerehrman.com<br>michael.markman@hellerehrman.com<br>robert.williams@hellerehrman.com | *VIA ELECTRONIC MAIL* |

                */s/ Rodger D. Smith II*
                _____
                Rodger D. Smith II (#3778)