## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERMEC TECHNOLOGIES CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | C.A. No. 07-272-SLR/LPS |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| PALM, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## PALM, INC.'S FIRST NOTICE OF DEPOSITION OF
## INTERMEC TECHNOLOGIES CORP.

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Defendant and Counterclaimant Palm, Inc. ("Palm"), by and through its attorneys,

will take the deposition of Plaintiff and Counterdefendant Intermec Technologies Corp.

("Intermec") by oral examination at the offices of Heller Ehrman LLP, 701 Fifth Avenue, Suite

6100, Seattle, WA 98104.  Intermec is directed to designate one or more officers, directors,

managing agents, or other persons to testify on its behalf with respect to the matters set forth in

Exhibit A.

The deposition will commence at 9:00 a.m. on August 11, 2008, or at a time and date to

be mutually agreed upon among the parties.  The deposition will be recorded stenographically

and by video by an officer authorized to administer oaths.

OF COUNSEL:                                POTTER ANDERSON & CORROON LLP

Robert T. Haslam
Nitin Subhedar                             By:  /s/ David E. Moore
Jaideep Venkatesan                              Richard L. Horwitz (#2246)
HELLER EHRMAN LLP                               David E. Moore (#3983)
275 Middlefield Road                            Hercules Plaza, 6th Floor
Menlo Park, California  94025                    1313 North Market Street
Tel:  (650) 324-7000                            Wilmington, DE 19801
                                                Tel:  (302) 984-6000
Robert D. Fram                                  rhorwitz@potteranderson.com
Michael M. Markman                              dmoore@potteranderson.com
Robert J. Williams
HELLER EHRMAN LLP                          *Attorneys for Defendant/Counterclaim Plaintiff*
333 Bush Street                            *Palm, Inc.*
San Francisco, CA  94104-2878
Tel:  (415) 772-6000

Dated:  July 25, 2008
876089 / 31950

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1.      "INTERMEC" means Plaintiff and Counterdefendant Intermec Technologies Corp., any corporate predecessor, any joint venture to which it is or was a party, and any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control for any purpose whatsoever.

2.      "INTERMEC PATENS-IN-SUIT" means the patents asserted by INTERMEC in this action: U.S. Patent Nos. 5,349,678; 5,568,645; 5,987,499; 5,468,947; and 5,892,971.

3.      "PALM" means Defendant and Counterclaimant Palm, Inc., its subsidiaries, divisions, predecessor companies, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, INCLUDING any person who served in any such capacity at any time.

4.      "INTERMEC PATENTED PRODUCTS" means all INTERMEC products, apparatuses, systems, services, or methods that incorporate or embody an alleged invention of the INTERMEC PATENTS-IN-SUIT.

5.      "PALM ACCUSED PRODUCTS" means the Palm Centro, Treo 680, Treo 700p, Treo 700w, Treo 700wx, Treo 750 and Treo 755p that INTERMEC has accused of infringing one or more claims of the INTERMEC PATENTS-IN-SUIT.

6.      The terms "INCLUDE" and "INCLUDING" shall always be construed to mean "without limitation," so as to acquire the broadest possible meaning.

7.      The terms "RELATED TO," "RELATING TO," "RELATE TO" and "RELATED," or any variant thereof, INCLUDE, but are not limited to, the following meanings: referring to, supporting, located in, considered in connection with, bearing, bearing on,

evidencing, indicating, reporting on, recording, alluding to, responding to, concerning, opposing, favoring, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting and being.

8.    The designation "PERSON" or "PARTY" or "ENTITY" refers to and INCLUDES any natural person, as well as any juristic person (e.g., corporation) or any business entity (e.g., partnership or joint venture) and his or her, its or their officers, agents and employees.

9.    "DOCUMENT" or "DOCUMENTS," or any variant thereof, shall be defined to the broadest extent permitted by Rule 34 of the Federal Rules of Civil Procedure and INCLUDES, whenever applicable and without limitation, both "documents" and "electronically stored information," and further INCLUDES to the extent that same are within the possession, custody, or control of INTERMEC, the originals (absent any original, a copy) of any recordation of any intelligence or information, whether handwritten, typed, printed or otherwise magnetically, optically, visually or aurally stored or reproduced, INCLUDING but not limited to letters, correspondence, memoranda, telegrams, notes, reports, compilations, data, notebooks, laboratory notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings (INCLUDING engineering, assembly and detail drawings), sketches, photographs, diaries, sales literature, advertising literature, agreements, minutes of meetings, punch cards, magnetic tape or wire, other machine producible records INCLUDING films, videotapes and sound reproductions, printout sheets, electronic records such as electronic mail, summaries of records of telephone conversations, personal conversations or interviews, and any and all other writings, typings, printings, drafts, copies and/or mechanical, magnetic, optic, or photographic reproductions of recordations thereof in the

2

possession, custody or control of INTERMEC or known to INTERMEC whether or not prepared by INTERMEC.

10. The term "LICENSE," or any variant thereof, means any DOCUMENT, agreement, contract, or arrangement pursuant to which a covenant not to be sued for practicing, or a right to practice, one or more alleged inventions claimed in any of the INTERMEC PATENTS-IN-SUIT is provided or conveyed, de jure or de facto, wholly or partially, exclusively or non-exclusively, from the patent owner to any other PERSON. As used herein, "LICENSE" INCLUDES, without limitation, such conveyance of rights regardless of whether the agreement to convey such rights is styled as a "license agreement," "settlement agreement," covenant not to sue," "joint marketing agreement," or otherwise.

11. For purposes of these requests, the term "PRIOR ART," or any variant thereof, means all DOCUMENTS or things, that are or may be "material to patentability" as that term is used in 37 C.F.R. § 1.56, regardless of whether such DOCUMENTS or things were disclosed to the examiner during prosecution, and regardless of when the reference became known to INTERMEC, that fall into any one or more of the following categories:

    (i)    a printed publication in this or a foreign country, published or available before the filing date of the application for the asserted patent, or

    (ii)    DOCUMENTS RELATING TO the public use or sale of any alleged invention

claimed in any of the asserted patent before the filing date of the application for the asserted patent, or

3

(iii)   an application for patent, published under 35 U.S.C. § 122(b), by another filed in the United States before the filing date of the application for the asserted patent, or

(iv)   a patent granted on an application for patent by another filed in the United States before the filing date of the application for the asserted patent, or

(v)   any DOCUMENT, material, or item that qualifies as "prior art" under 35 U.S.C. § 102.

12.   It is expressly noted and understood that the definition set forth in the preceding paragraph may be inconsistent with definitions of "Prior Art" adopted in relevant statutes and/or case law, and the production of DOCUMENTS responsive hereto shall not be deemed an admission that such DOCUMENTS comply with any such definitions adopted in the relevant statutes and/or case law.

13.   The term "RELATED APPLICATION" means any application listed within the "related U.S. Application Data" section of any of the INTERMEC PATENTS-IN-SUIT, any application claiming priority from any of the INTERMEC PATENTS-IN-SUIT, any application claiming priority from an application from which any of the INTERMEC PATENTS-IN-SUIT claims priority, any application disclosing substantially the same subject matter as any of the INTERMEC PATENTS-IN-SUIT, and any foreign counterpart applications of any of the foregoing.

14.   The term "DATE," or any variant thereof, means the exact day, month and year, if ascertainable, or if not, the best approximation thereof.

15.   The term "PRODUCT," or any variation thereof, means PRODUCT, apparatus, system, service, or method.

16.    The term "COMMUNICATION," or any variant thereof, INCLUDES any contact between two or more PERSONS by which any information or knowledge is transmitted or conveyed, or attempted to be transmitted or conveyed, between two or more PERSONS and shall INCLUDE, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mails, or any other DOCUMENT, and oral contact, such as face-to-face MEETINGS or telephone conversations.

17.    The term "MEETING," or any variant thereof, means any coincidence or presence of two or more PERSONS, whether or not such coincidence or presence was by chance, prearranged, formal or informal, or in connection with some activity.

18.    In order to bring within the scope of this Notice of Deposition, any and all conceivably relevant matters or information which might otherwise be construed to be outside the scope:

   (a)    The singular of each word shall be construed to include its plural and vice-versa;

   (b)    "and" as well as "or" shall be construed both conjunctively as well as disjunctively;

   (c)    "each" shall be construed to include "every" and vice-versa;

   (d)    "any" shall be construed to include "all" and vice-versa;

   (e)    "INCLUDING" shall be construed to mean "INCLUDING, without limitation."

   (f)    The present tense shall be construed to include the past tense and vice-versa; and

   (g)    The masculine shall be construed to include the feminine and vice-versa.

19.    The term "identify," or any variant thereof, means:

(a)    with respect to an individual, that INTERMEC is to provide his or her

name, current or last known address (business and home), e-mail address,

and current or last known telephone number (business and home); and

(b)    with respect to a DOCUMENT, that INTERMEC is to provide the DATE,

addressee and/or recipient, sender and/or author thereof, and the type of

writing (e.g., letter, inter-office memo, etc.).

## DEPOSITION CATEGORIES

1.     The organizational structure of INTERMEC and the identities and functions of INTERMEC'S employees and agents.

2.     The prosecution of the INTERMEC PATENTS-IN-SUIT and any RELATED APPLICATIONS in the United States Patent and Trademark Office (USPTO) or in any foreign patent offices.

3.     Conception and reduction to practice of the alleged inventions of the INTERMEC PATENTS-IN-SUIT, INCLUDING the identities and contributions to the alleged inventions of all PERSONS involved in the conception and reduction to practice and the nature of their involvement, and all DOCUMENTS evidencing the same.

4.     The factual basis for INTERMEC'S contention that they have complied with the notice provisions of 35 U.S.C. § 287 with respect to the INTERMEC PATENTS-IN-SUIT, INCLUDING any efforts by INTERMEC to mark PRODUCTS incorporating the alleged inventions of the INTERMEC PATENTS-IN-SUIT, and any actual notice that INTERMEC contends that INTERMEC provided to PALM prior to the filing of this suit.

5.     The factual basis for any contention that claims of the INTERMEC PATENTS-IN-SUIT are valid, INCLUDING secondary considerations such as commercial success, long felt need, or copying by others.

6.     U.S. Patent Nos. 5,218,188; 5,322,991; 4,972,463; and 5,239,662; and U.S. Application Serial No. 08/453,687, INCLUDING their prosecution in the USPTO, and PRIOR ART cited by the USPTO during their prosecution, specifically U.S. Patent Nos. 4,916,441 and 4,857,716.

7.    All facts related to INTERMEC'S failure to disclose PRIOR ART to the PTO during prosecution of the INTERMEC PATENTS-IN-SUIT, INCLUDING U.S. Patent Nos. 5,218,188; 5,322,991; 4,972,463; 5,239,662; 4,916,441; and/or 4,857,716.

8.    The factual bases for INTERMEC'S denials of PALM'S allegations that one or more of U.S. Patent Nos. 5,218,188; 5,322,991; 4,972,463; 5,239,662; 4,916,441; and/or 4,857,716 were material to the patentability of one or more claims of the INTERMEC PATENTS-IN-SUIT.

9.    When and under what circumstances INTERMEC first came to believe that PALM infringed the INTERMEC PATENTS-IN-SUIT.

10.    The identity of, market for, PRODUCT features, performance, use by customers, availability, commercial success, profitability, pricing, sales, or offers for sale of the INTERMEC PATENTED PRODUCTS.

11.    All profits and sales that INTERMEC alleges it lost due to the activities of PALM or the sales of the PALM ACCUSED PRODUCTS, INCLUDING the name of each customer, the DATE, the quantity, the price, all efforts by INTERMEC to market or sell PRODUCT to such customers, and the PERSON or PERSONS at INTERMEC who are or were involved in such marketing or attempted sales to such customers.

12.    The monetary or economic value of the alleged inventions of the INTERMEC PATENTS-IN-SUIT.

13.    The efforts and resources expended and the costs incurred in the discovery and development of the alleged inventions of the INTERMEC PATENTS-IN-SUIT.

14.    INTERMEC'S gross and net profits, by PRODUCT and by quarter, from sales of the INTERMEC PATENTED PRODUCTS and LICENSES of the INTERMEC PATENTS-IN-SUIT.

15.    INTERMEC'S marketing activities during the time period for which INTERMEC seeks damages from PALM, INCLUDING its marketing strategies, advertising campaigns, and the resources expended in connection with such activities, with respect to the INTERMEC PATENTED PRODUCTS.

16.    Any business, strategic, financial, or management plans, forecasts or reports concerning the INTERMEC PATENTS-IN-SUIT or INTERMEC PATENTED PRODUCTS.

17.    INTERMEC'S policies or practices for licensing patents or other intellectual property.

18.    The actual, proposed or potential sale, LICENSE, or other assignment of any rights in any INTERMEC Patent (in whole or in part) or RELATED or counterpart patents, whether alone or in conjunction with other patents, and offers, discussions and/or negotiations for such sales, LICENSES, or assignments, whether or not those offers, discussions and/or negotiations led to a sale, LICENSE or other assignment of rights, INCLUDING the DATES of the offer, discussion or negotiation, the outcome or status of the offer, discussion or negotiation, the identity of the INTERMEC representatives involved in the offer, discussion, or negotiation, the identity of all PERSONS to whom INTERMEC has sold, LICENSED, sought to LICENSE, or sought to sell rights to the INTERMEC PATENTS-IN-SUIT, the revenue received by INTERMEC in return for such rights, the royalty rates at which such rights were granted, and other terms of such grant of rights.

19.    All facts supporting INTERMEC'S claim for damages, INCLUDING, but not limited to, the precise manner in which those damages have been or would be calculated, and the DOCUMENTS INTERMEC relied upon or would rely upon in making INTERMEC'S damages calculations.

20.    The factual basis for any claim that INTERMEC is entitled to an injunction against PALM in this action, INCLUDING but not limited to an explanation of whether and how INTERMEC would be irreparably harmed in the absence of injunctive relief, why there is no adequate remedy at law to compensate INTERMEC, why the public interest would be harmed if there were no injunction, and why the balance of hardships weigh in favor of an injunction.

21.    All facts RELATED TO claim construction and infringement positions taken by INTERMEC in INTERMEC'S litigation with Symbol Technologies.

22.    The manner in which DOCUMENTS are retained and stored at INTERMEC and the procedures for the retention and destruction of DOCUMENTS, INCLUDING the policies and procedures for the retention and destruction of DOCUMENTS in the possession of employees who terminate their employment with INTERMEC.

23.    The steps INTERMEC took to collect and produce DOCUMENTS in response to PALM'S requests for production in this lawsuit, INCLUDING the identity and location of custodians of DOCUMENTS produced by INTERMEC in this litigation.

10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 25, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on July 25, 2008, the attached document was Electronically Mailed to the following person(s):

Jack B. Blumenfeld
Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19899
JBlumenfeld@MNAT.com
rdsefiling@mnat.com

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
cveach@freebornpeters.com
lhutchinson@freebornpeters.com
jkoering@freebornpeters.com

By: /s/ David E. Moore
    Richard L. Horwitz
    David E. Moore
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899-0951
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

805081 / 31950