IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERMEC TECHNOLOGIES CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 07-272 (SLR) |
| v. | ) ) | |
| PALM, INC., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) | |

**AMENDED RULE 30(b)(6)**
**NOTICE OF DEPOSITION TO PALM, INC.**

PLEASE TAKE NOTICE that commencing at 9:00 a.m. on August 21, 2008, at Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, Wilmington, DE 19801, or at a date, time, and place to be agreed upon by counsel giving due regard to the scheduling order in this case, and continuing day-to-day thereafter until completed at a location mutually agreed upon by counsel, Intermec Technologies Corp. shall take the deposition of the person or persons designated to testify as to matters known or reasonably available to Palm, Inc. pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, concerning the topics listed in Exhibit A, in accordance with the provided definitions.

This examination may be recorded by audio, visual, or stenographic means before a Notary Public or other person authorized to administer oaths pursuant to Rule 28 of the Federal Rules of Civil Procedure.

You are invited to attend and cross-examine.

- 2 -

          MORRIS, NICHOLS, ARSHT & TUNNELL LLP

          */s/ Rodger D. Smith II*

          _____
          Jack B. Blumenfeld (#1014)
          Rodger D. Smith II (#3778)
          1201 N. Market Street
          P.O. Box 1347
          Wilmington, DE  19899
          (302) 658-9200
             *Attorneys for Plaintiff*
             *Intermec Technologies Corp.*

*Of Counsel*:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
(312) 360-6000

August 12, 2008
2446480

**Exhibit A**

Intermec Technologies Corp. ("Intermec") incorporates by reference the definitions contained in Intermec's First Set of Requests for Documents Directed to Palm, Inc. ("Palm") and in Intermec's First Set of Interrogatories to Palm.  Intermec notes that the categories listed herein are focused on issues relating to the design, use, and operation of Palm's Accused Products.  Intermec reserves the right to supplement or otherwise amend this list of categories to address other issues in this case.

Palm shall designate and produce the person(s) most knowledgeable to testify on its behalf regarding each of the following issues:

1. The manner in which Palm's products work, operate, or function, including the facts supporting any statements made in Palm's responses to Intermec's Interrogatory No. 10 concerning the manner in which Palm's products work, operate or function.

2. The assembly of the Accused Products including the use of a camera, screen, memory, operating screen and communication devices.

3. The manner in which the Accused Products are capable of both wireless communication and image-capture.

4. The specification for, operation, installation and/or function of the camera installed in any of the Accused Products.

5. The construction, installation, assembly, and operation of the display of Palm's Products, including, but not limited to, the operation in conjunction with the stylus that is provided with each of the Accused Products.

- 2 -

6. The hardware and software with each Accused Product is designed, manufactured, or assembled for the purpose of receiving, obtaining, translating, or otherwise processing the input of the camera installed on each of the Palm Products.

7. The design, manufacture, assembly, function and/or use of the Accused Products in conjunction with any power-supply, cradle, dock, or other apparatus designed or marketed by Palm to provide a source of power and/or exchange of data between the Accused Products and a computer.

8. The design, marketing, function, and/or use of any Accused Products with software designed by Palm or any third-party to accept handwritten input via contact between the Accused Products' stylus and the display screen and/or the display screen's associated surfaces.

9. The manner in which the Accused Products interface with servers.

10. The manner in which the Palm synchronization operation works in the Accused Products.

11. The manner in which the Accused Products' hardware and/or software operates, functions, or otherwise performs the "Wireless Sync" application included on the Accused Products.

12. The manner in which Accused Products' hardware and/or software operate in conjunction with Microsoft Exchange Servers, IBM Domino Server, and/or Novell Servers to accomplish wireless synchronization of contacts, email, calendars, and/or any other information that is synchronized through wireless communication.

13. Palm's sales, marketing, or provision of network and/or enterprise solutions.

- 3 -

14. The manner in which the Accused Products communicate wirelessly, whether through WiFi connection, cellular connection, or otherwise.

15. The manner, use and functionalities of any multi-tasking operating system on any of the Accused Products.

16. The operation of the operating systems installed on the Accused Products.

17. The manner in which the operating systems installed on the Accused Products process more than one operation in a given period of time, including, but not limited to, the manner in which Window Mobile OS handles such operations and the manner in which Palm OS handles such operations.  (By way of example, the deponent should be prepared to testify about how the operating system manages allocation of processing on the Accused Products to track battery power-level, the signal strength of any wireless signal, and the processing of any user operation at essentially the same time.)

18. The memory functions and storage capabilities of the Accused Products.

19. The manner in which the Accused Products store, access, use and obtain data stored in memory using an operating system.

20. The manner in which information and/or data is stored in memory on the Accused Products, including, but not limited to, the format of information, number of bits used, and/or any other specific information relating to the way bits and bytes of information are organized to convey actual data such as programs, addresses, phone numbers, email message, and/or other user data.

21. The manner in which the Accused Products retrieve information from the internet.

22. The function, use, and operation of any browser software installed on the Accused Products and provided on the Palm Products in their out-of-the-box condition.

23. The manner in which the Accused Products access and make available information and/or programs obtained by a user from the internet.

24. The manner and method in which the Accused Products handle POP email.

25. The hardware and/or software each Accused Product uses to accomplish wireless communication, including, but not limited to, any radio, transceiver, transmitter, receiver, or other means of sending or receiving a signal wirelessly.

26. The marketing and promotion of the Accused Products for use in combination with Microsoft Exchange Servers, Novell Servers, and/or IBM Domino servers, including, but not limited to any statements to customers indicating that the Palm Products can be used for remotely synchronizing and/or updating a user's contacts, datebook, and/or email accounts maintained on a server such as a server maintained by the user's employer.

27. All software installed by Palm onto the Accused Products that monitors the Accused Products' battery, monitors the signal strength of the wireless communications of the Accused Products, or performs any other diagnostic operations intended to provide either the system application or the user with information about the performance of the Accused Product.

28. The manner in which and timing of when Palm first became aware of any of the Intermec Patents.

29. The manner in which and timing of when Palm first became aware that it may be infringing any of the Intermec Patents.

30. Any actions taken by Palm to evaluate whether it was infringing any of the Intermec Patents or to avoid infringement of the Intermec Patents.

31. Sales, cost, and profit information for each of the Accused Products.

32. Any and all payments and/or royalties paid or received by Palm relating to the Accused Products.

33. Royalties received by Palm for the licensing any of the Palm Patents.

34. The rates paid by any licensee to Palm, and the terms of any such licenses, for the use of other patents comparable to the Palm patents.

35. Palm's policy and marketing program relating to its patents.

36. The commercial relationship between Palm and any licensee of the Palm Patents or related patents.

37. The advantages, utility, or benefits to end-users of the Palm Patents over prior existing technology.

38. The advantages, utility, or benefits to end-users of the Intermec Patents over prior existing technology.

39. The portion of the realizable profit on Palm's Products that Palm attributes to the Palm Patents.

40. The conception and reduction to practice of the subject matter claimed in each of Palm's Patents-in-Suit.

41. The drafting and prosecution of each of the Palm Patents-in-Suit and any patent application from which the Palm Patents-in-Suit issued, including but not limited to the addition, modification or withdrawal of any claims in any of the applications for each of the Patents-in-Suit.

- 6 -

42. Communications between Palm and any third party relating to the prosecution, validity, scope and/or enforceability of any one or more of the Palm Patents-in-Suit.

43. Any analysis or valuation of any of the Palm Patents-in-Suit.

44. The authentication and admissibility of documents produced by Palm in this litigation.

45. The methods to search for and produce relevant documents.

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Richard L. Horwitz, Esquire
>David E. Moore, Esquire
>POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on August 12, 2008, upon the following in the manner indicated:

Richard L. Horwitz                                                           *VIA HAND AND ELECTRONIC MAIL*
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Robert T. Haslam                                                             *VIA ELECTRONIC MAIL*
Nitin Subhedar
Jaideep Venkatesan
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025
robert.haslam@hellerehrman.com
nitin.subhedar@hellerehrman.com
jay.venkatesan@hellerehrman.com

Robert D. Fram                                                               *VIA ELECTRONIC MAIL*
Michael M. Markman
Robert J. Williams
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
robert.fram@hellerehrman.com
michael.markman@hellerehrman.com
robert.williams@hellerehrman.com

>/s/ *Rodger D. Smith II*
>Rodger D. Smith II (#3778)