## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERMEC TECHNOLOGIES CORP., a Delaware corporation, | ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) C.A. No. 07-272-SLR/LPS ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| PALM, INC., a Delaware corporation, | ) ) ) ) |
| Defendant/Counterclaim Plaintiff. | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT PALM INC.'S <u>MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS</u>

OF COUNSEL:

Robert T. Haslam
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Tel: (650) 632-4700

Michael M. Markman
Robert J. Williams
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Tel: (415) 591-6000

Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Defendant/Counterclaim Plaintiff Palm, Inc.*

Dated: September 11, 2009
932836 / 31950

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II. NATURE AND STAGE OF THE PROCEEDING............................................................ 1

III. STATEMENT OF FACTS .................................................................................................... 2

    A. The '678 Patent Claims............................................................................................... 2

    B. The Mixed Claims Of The '499 Patent...................................................................... 3

IV. ARGUMENT ........................................................................................................................ 4

    A. The Terms "First Style" And "Second Style" Used In The '678 Patent Are Insolubly Indefinite .................................................................................................................... 4

        1. The Terms "First Style" And "Second Style" Do Not Have A Particular Meaning In The Art ................................................................................................................ 4

        2. The Terms "First Style" And "Second Style" Do Not Have A Plain Meaning That Can Be Discerned By Use In The Intrinsic Record ................................................. 5

        3. The Terms "First Style" And "Second Style" Are Used Ambiguously And Inconsistently Throughout The Claims ................................................................... 5

            a. Inconsistencies In Claim 1 Of The '678 Patent ............................................ 6

            b. Inconsistencies In Claim 6 Of The '678 Patent ............................................ 6

            c. Inconsistencies In Claims 9 And 10 Of The '678 Patent.............................. 7

        4. "First Style" And "Second Style" Are Insolubly Ambiguous In The '678 Patent Claims As Reflected By Intermec's Shifting Theories............................................. 8

    B. Claims 15 And 16 Of The '499 Patent Attempt To Mix System And Method Claim Limitations Rendering Them Insolubly Ambiguous.................................................. 9

V. CONCLUSION................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Competitive Techs., Inc. v. Fujitsu Ltd.*,
   185 Fed. Appx. 958 (Fed. Cir. 2006)..................................................................................4, 11

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005)....................................................................................................4

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)................................................................................................1, 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..................................................................................4

*PODS, Inc. v. Porta Stor, Inc.*,
   484 F.3d 1359 (Fed. Cir. 2007), *cert. denied*, 128 S.Ct. 618 (2007)...........................................6

*Toshiba Corp. v. Juniper Networks, Inc.*,
   C.A. No. 03-1035-SLR, 2006 WL 1788479 (D. Del. Jun. 28, 2006)........................................10

**STATUTES**

35 U.S.C. § 112................................................................................................................1, 9, 10

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Palm, Inc. ("Palm") seeks summary judgment that several of the patent claims asserted by Intermec Technologies Corp.("Intermec") are invalid as indefinite under 35 U.S.C. § 112. There are two grounds for Palm's motion.

*First*, claims 1 and 9 of U.S. Patent No. 5,349,678 ("the '678 Patent") use the terms "first style" and "second style." Those terms, however, have no discernible meaning to a person of ordinary skill in the art. A plain, dictionary meaning makes no sense in view of the context provided by the patent specification, and the patent never teaches what the first or second styles might be.

*Second*, claims 9, 11, 13, 15-16, and 17 of U.S. Patent No. 5,987,499 ("the '499 Patent") are indefinite for improperly mixing statutory classes of subject matter. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). These claims all purport to be system claims. Each of them, however, include a series of functional, method steps that must be performed to infringe the claim. This makes it impossible to determine whether a product infringes the claim directly, or whether infringement would require a user to perform the method steps required by these claims. Although Intermec recently dropped its allegations concerning infringement by Palm of claims 9, 11, 13, and 17, claims 15 and 16 are still asserted.

## II. NATURE AND STAGE OF THE PROCEEDING

Intermec accuses Palm of infringing five patents, two of which are at issue on this motion. Palm asserts that two of its patents are infringed by Intermec's CN3 handheld computers. Both fact and expert discovery have completed, and pursuant to the Scheduling Order entered in this case on August 16, 2007 (D.I. 18) (as amended in D.I. 99, 124, 130, 146) the parties are submitting motions for summary judgment and opening claim construction briefs

to the Court concurrently herewith, and the Court has set a hearing date of December 22, 2009. No trial date has been set.

### III. STATEMENT OF FACTS

#### A. The '678 Patent Claims

Intermec's '678 Patent is titled "Versatile RF Data Capture System."[1] The claimed system requires linked "terminals" and "servers," which communicate wirelessly. The patent describes the primary use of the preferred embodiment:

> The data capture system 10 is applicable to receive and collect a wide variety of data and has found particular application in warehouses or retail store [sic] where a data capture system 10 would be used to keep and up-to-date record of the products to be marketed. Typically, the system 10 would be capable of updating on a real time basis the inventory count of products, and to use stock locator data to identify where each product of the remaining inventory is stored, when a product is moved from one place to another, and which employee has current charge of that product. In addition, when a product is sold, the price and sales person who sold the product are recorded.

'678 patent, 1:40-53.

The terms "first style" and "second style" are used in multiple claims of the '678 patent. These include independent claims 1 and 9, and asserted claims that depend from those claims ('678 Patent claims 5-7, 10-12). Each of these claims use the terms "first style" and "second style" in differing, inconsistent ways, as will be discussed below. These uses are:

| Instance | Claim | Limitation |
|---|---|---|
| (a) | '678 Claim 1 | "first control means [of the terminal] operating on data formatted in a first style" '678 col. 15:9-10. |
| (b) | '678 Claim 1 | "second control means [of the server] operating on data formatted in a second style different from said first style" '678 col. 15:16-18. |
| (c) | '678 Claim 1 | "data stored in said mass memory means [of the server] being formatted in said second style" '678 col. 15:18-20. |

---

[1] Copies of the patents are included in the Joint Appendix, filed by Intermec.

2

| (d) | '678 Claim 6 | "said generating means [of the terminal] generates said memory altering request in said first style" '678 col. 15:68-col. 16:1. |
| --- | --- | --- |
| (e) | '678 Claim 6 | "second control means of said server station comprising means for translating said memory altering request from its first style to said second style" '678 col. 16:1-4. |
| (f) | '678 Claim 7 | "means coupled to said mass memory means of said server station for receiving and translating said needed data from its second style to its first style" '678 col. 16:6-9. |
| (g) | '678 Claim 9 | "each of said application programs is formatted in a first style" '678 col. 16:51-52. |
| (h) | '678 Claim 10 | "said control program of said database server formatted in a second style differing from said first style" '678 col. 16:56-58 |
| (i) | '678 Claim 10 | "said plurality of application programs stored in said mass memory means also being formatted in said second style" '678 col. 16:58-60. |
| (j) | '678 Claim 11 | "generating means of each terminal generates its memory altering request in said first style" '678 col. 16:62-63. |
| (k) | '678 Claim 11 | "second control means of said server station further comprises first means for translating said memory altering request from its first style to its second style" '678 col. 16:64-66. |
| (l) | '678 Claim 12 | "second control means of said server station further comprises means for translating said addressed overlay module from its second style to said first style" '678 col. 16:68-17:5. |

B. **The Mixed Claims Of The '499 Patent**

Intermec's '499 Patent is a grandchild of the '678 Patent, and shares the same title. Asserted claims 15 and 16 of the '499 Patent each claim "data collection systems." Each of the claims, however, incorporate limitations directed to the method of use of the system, and not just the apparatuses of the claimed system. The functional use-based limitations of the system of the asserted '499 Patent claims are detailed in the following table:

| Claim | Limitation |
| --- | --- |
| '499 Claim 15 | "each of the one or more terminals selectively requests the application programs from the main information center" '499 col. 16:33-35. |

3

| '499 Claim 15 | "the main information center delivers requested ones of the application programs in executable portions" '499 col. 16:36-37. |
|---|---|
| '499 Claim 16 | "the terminal establishes a communication link with the main information center to deliver the requests, and the requests are selectively forwarded to at least one of the plurality of servers for servicing" '499 col. 16:38-43. |

## IV.  ARGUMENT

### A.  The Terms "First Style" And "Second Style" Used In The '678 Patent Are Insolubly Indefinite

Claims that are "not amenable to construction" or are "insolubly ambiguous" are indefinite. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). In determining whether the claim terms are amenable to construction, "general principles of claim construction apply[, and] [i]ntrinsic evidence in the form of the patent specification and file history should guide a court toward an acceptable claim construction." *Id.* at 1348. One such guide is the use of the term in the claims themselves. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*) ("the claims themselves provide substantial guidance as to the meaning of particular claim terms"). "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id. See also Competitive Techs., Inc. v. Fujitsu Ltd.*, 185 Fed. Appx. 958, 966 (Fed. Cir. 2006) (holding that "internally inconsistent" claims are properly "invalid because of indefiniteness").

#### 1.  The Terms "First Style" And "Second Style" Do Not Have A Particular Meaning In The Art

The parties' experts have both opined that the term "style" as referred to in these claims does not have any particular meaning within the art. *See* Palm Appendix, Ex. 1 (Expert Report Of Tim A. Williams, Ph.D. Regarding Invalidity Of United States Patent Numbers 5,349,678, 5,568,645, 5,987,499, 5,468,947, And 5,892,971 ("Williams Rpt.")) at ¶ 49 ("The use of

4

'formatted in a first style' and 'formatted in a second style' in this claim is unclear, since . . . these terms don't have any special meaning in the art."); Palm Appendix, Ex. 2 (Opening Expert Report Of Ray W. Nettleton, PhD ("Nettleton Rpt.")) at ¶ 103 ("The term 'style' does not have a particular technical meaning within the computer science arts.") These terms lack any special meaning.

### 2. The Terms "First Style" And "Second Style" Do Not Have A Plain Meaning That Can Be Discerned By Use In The Intrinsic Record

The parties' experts have both also had the opportunity to opine on the particular use of these terms in the specification of the '678 patent that helps illuminate the meaning of the term. Palm's expert, Dr. Tim Williams, rendered an opinion that there was no particular use of these terms in the specification that could help present a sensible meaning. *See* Williams Rpt. at ¶ 49 ("The use of 'formatted in a first style' and 'formatted in a second style' in this claim is unclear, since there is no discussion of what it means in the specification").

Intermec's expert, Dr. Nettleton, concludes that the "style" terms have a meaning. In 36 paragraphs of his opening expert report where he attempts to provide the basis for his proposed construction of this term, however, he does not cite to a *single passage in the specification* where he shows the use of the terms "style" in a way consistent with his theory. *See* Nettleton Rpt. at ¶¶ 101-137. The intrinsic record does not support his conclusions.

### 3. The Terms "First Style" And "Second Style" Are Used Ambiguously And Inconsistently Throughout The Claims

Numerous asserted claims of the '678 Patent have limitations referring to a "first style" or "second style." These include '678 Patent claims 1, 9, and asserted claims that depend from those claims ('678 Patent claims 5-7, 10-12). Each of these claims use the terms "first style" and "second style" in differing, inconsistent ways, as will be discussed below. These uses are set out in the chart in the statement of facts above.

### a. Inconsistencies In Claim 1 Of The '678 Patent

The Court need look no further than claim 1 of the '678 Patent to immediately see that the terms "first style" and "second style" are used in conflicting and inconsistent ways that render them incapable of construction. *See* Williams Rpt. at ¶ 49. Claim 1 recites the two limitations of *(a)* "first control means [of the terminal] operating on data formatted in a first style" and *(b)* "second control means [of the server] operating on data formatted in a second style different from said first style." Claim 1 also recites that the first control means of the terminal is also responsible for "generating [a] memory altering request and . . . transmit[ting] said generated request to said server station." '678 col. 15:24-29. Therefore the first control means, which only operates on "data formatted in a first style," generates the request which must also be received and processed by the server. *See* '678 Claim 1, col. 15:31-32 ("said server station responsive to said generated and transmitted request.")

Yet, the server can only operate on "data formatted in a second style different from said first style." Therefore any construction of the term "first style" would either conflict with limitation *(b)* requiring that the "second style [be] different from said first style," or with the limitation requiring that the server station "respon[d] to said generated and transmitted request." This contradiction prevents the terms "first style" and "second style" from being construed consistently even just within claim 1.

### b. Inconsistencies In Claim 6 Of The '678 Patent

Federal Circuit precedent requires that a "presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007), *cert. denied*, 128 S.Ct. 618 (2007). Here, the terms "first style" and "second style" appear in

6

numerous dependent claims in conflicting ways. This further shows that the terms are not amenable to construction and should be held invalid as indefinite.

Claim 6, which depends from claim 1, imposes the additional limitations that *(d)* "generating means [of the terminal] generates said memory altering request in said first style" and *(e)* "second control means of said server station comprising means for translating said memory altering request from its first style to said second style." These two limitations are also clearly inconsistent with the use of the terms "first style" and "second style" in independent claim 1.

Claim 1, which as mentioned requires through limitation *(b)* that the second control means "operat[es] on data formatted in a second style different from said first style," cannot also satisfy limitation *(e)* that the second control means "translat[e] said memory altering request from its first style to said second style." In order for the second control means to "translate . . . from [a] first style," it must "operate on data formatted in a first style," but limitation *(b)* requires that the second control means "operat[e] on data formatted in a second style <u>different</u> from said first style" (*emphasis added*).

### c. Inconsistencies In Claims 9 And 10 Of The '678 Patent

Claims 9 and 10, both of which depend from independent claim 8, also present conflicting meanings of what the "first style" and "second style" should mean. Claim 9 recites through limitation *(g)* that "each of said application programs is formatted in a first style." The "said application programs" are being both <u>executed</u> on the terminal and <u>stored</u> on the server. *See* '678 claim 8. Yet claim 10 recites in limitation *(i)* that "said plurality of application programs stored in said mass memory means also being formatted in said second style," which must be "differ[ent] from said first style" per limitation *(g)*. Therefore, the application programs must at once be "formatted in a first style" <u>and</u> be "formatted in a second style differing from

7

said first style." These terms cannot be construed to resolve this conflict and so should be found invalid for indefiniteness.

### 4. "First Style" And "Second Style" Are Insolubly Ambiguous In The '678 Patent Claims As Reflected By Intermec's Shifting Theories

The Court should find the terms "first style" and "second style" indefinite for the additional and independent reason that the terms are so vague that there is no way for one of ordinary skill to determine when they might be met. In the claims, the "first style" and "second style" limitations are applied to multiple different components of the system, including:

1. The type of data operated on by a control means, *(a)* and *(b)*

2. The format for the storage of data on a computer, *(c)*

3. The format of a memory altering request transmitted between a terminal and a server, *(d)*, *(e)*, *(f)*, *(j)*, and *(k)*.

4. The format of a program, *(g)*, *(h)*, *(i)* and *(l)*.

The mutability of these claim terms is reinforced by Plaintiff's own shifting theories of infringement in this case, which have progressively included:

1. Whether a computer processor uses a 16-bit ("first style") or 32-bit ("second style") architecture. *See* Williams Rpt. at ¶¶ 66-68; Nettleton Rpt. at ¶ 133.

2. Whether a computer uses a flat-file database format ("first style") or relational database format ("second style"). *See* Williams Rpt. at ¶¶ 70-72.

3. Whether a computer has a hard disk that stores files according to one disk management system ("first style") or another ("second style"). *See* Nettleton Rpt. at ¶¶ 131-132.

These factually incorrect and wholly disparate assertions of how Palm's accused products might meet the "first style" and "second style" limitations underscores exactly how ambiguous and

meaningless those claim terms are. Moreover, every one of those theories would require a construction that conflicts with one or more dependent claims, since no construction that would allow the claims to read on any of Intermec's infringement theories can be consistently applied across each use of the "first style" and "second style" limitations.

Accordingly, the "first style" and "second style" limitations are insolubly ambiguous and not amenable to construction. The Court should find them indefinite and hold the claims invalid.

### B. Claims 15 And 16 Of The '499 Patent Attempt To Mix System And Method Claim Limitations Rendering Them Insolubly Ambiguous

Asserted claims 15 and 16 of the '499 Patent each claim a "data collection system." The claims, however, include limitations directed to the function and use of the system, rather than to the apparatuses of the claimed system.

A claim that recites "both a system and the method for using that system . . . does not apprise a person of ordinary skill in the art of its scope, and . . . is invalid under section 112, paragraph 2." *IPXL Holdings*, 430 F.3d at 1384. This rule of law is premised on the statutory requirement that the claims of a patent "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 (2000) By confusing the apparatus that infringes with the operation of that apparatus, the public is not aware of "the 'metes and bounds' of protection involved," and would not know whether the claim is infringed "when one creates a system" or "when the [system] is actually use[d]." *Id.*

This is not a situation in which functional language is being used to define the system -- the limitations themselves require actual use in accordance with the functional limitations in the claim. Claim 15 of the '499 Patent requires that "each of the one or more terminals selectively requests the application programs from the main information center" '499 col. 16:33-35, and that "the main information center delivers requested ones of the application programs in executable

9

portions" '499 col. 16:36-37. These limitations require that the terminals "selectively request[]" "application programs," which requires some agent to perform the predicate selection of an application program.

This not a situation in which 35 U.S.C. §112 ¶ 6 applies, allowing the patentee to use functional language to describe a system where the structures for performing those functions are disclosed in the specification (and the claim is limited to those structures). The claim limitations are not drafted in "means for" language. Further, the claims correspond to claims in Intermec's '678 (and '645) patents, where "means for" language was used in the context of substantially similar claim limitations. Nor are these claims for which the patentee merely used a more active voice in drafting the claims, or in which the system merely must be "configured to" accomplish the stated limitations. *See Toshiba Corp. v. Juniper Networks, Inc.*, C.A. No. 03-1035-SLR, 2006 WL 1788479 at *4 (D. Del. Jun. 28, 2006).

This is a method-of-use limitation, since it addresses the use of the claimed terminals rather than the structure of those terminals. These limitations also require that the "main information center" "deliver[]" those "selectively request[ed]" application programs, which also requires the selection of an application program by an unspecified agent -- a use of the claimed system. Moreover, since this limitation requires that the "main information center" "deliver[]" those application programs, the public would now know whether it would infringe this claim by making a device that had only the structural limitations of this claim, or whether it would only be an infringement if the terminal were used to "attempt to locate each portion of a selected one of the plurality of application programs," as the claim recites. *Id.*

For those reasons, claim 15 of the '499 Patent is indefinite for improperly mixing system claims with method-of-use claims, and therefore invalid. Since claim 15 of the '499 Patent is

indefinite, asserted claim 16, which depends from claim 15, is also indefinite, and therefore invalid. *See Competitive Techs.*, 185 Fed. Appx. at 960-961 (where a claim is found invalid for indefiniteness, claims that depend from that claim are also invalid).

## V. CONCLUSION

For the foregoing reasons, asserted claims 1, 9, 15, and 16 of the '678 Patent should be found indefinite and therefore invalid. The Court should also find that claims 15 and 16 of the '499 Patent improperly mix system and method claim limitations in a way that renders those claims insolubly ambiguous, and therefore invalid as indefinite.

Respectfully submitted,

| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
|---|---|
| Robert T. Haslam<br>COVINGTON & BURLING LLP<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA 94065<br>Tel: (650) 632-4700 | By: */s/ David E. Moore*<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>D. Fon Muttamara-Walker (#4646)<br>Hercules Plaza, 6th Floor<br>1313 North Market Street |
| Michael M. Markman<br>Robert J. Williams<br>COVINGTON & BURLING LLP<br>One Front Street<br>San Francisco, CA 94111<br>Tel: (415) 591-6000 | Wilmington, DE 19801<br>Tel: (302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com<br>fmuttamara-walker@potteranderson.com |
| Dated: September 11, 2009<br>932836 / 31950 | *Attorneys for Defendant/Counterclaim Plaintiff Palm, Inc.* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on September 11, 2009, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on September 11, 2009, the attached document was Electronically Mailed to the following person(s):

Jack B. Blumenfeld
Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19899
JBlumenfeld@MNAT.com
rdsefiling@mnat.com


Sean T. O'Kelly
Cross & Simon, LLC
913 North Market Street, 11th Floor
PO Box 1380
Wilmington, DE 19899
sokelly@crosslaw.com

Carson P. Veach
Leland W. Hutchinson, Jr.
Jennifer L. Fitzgerald
Steven M. Evans
Jacob D. Koering
David S. Becker
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
cveach@freebornpeters.com
lhutchinson@freebornpeters.com
jfitzgerald@freebornpeters.com
sevans@freebornpeters.com
jkoering@freebornpeters.com
dbecker@freebornpeters.com


By:   /s/ David E. Moore
      Richard L. Horwitz
      David E. Moore
      D. Fon Muttamara-Walker
      POTTER ANDERSON & CORROON LLP
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      fmuttamara-walker@potteranderson.com

805081 / 31950