**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERMEC TECHNOLOGIES CORP., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-272-SLR |
| | ) | |
| PALM, INC., | ) | **REDACTED – PUBLIC VERSION** |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**INTERMEC'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF
<u>U.S. PATENT NOS. 6,665,803 AND 7,096,049</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

OF COUNSEL:

Carson P. Veach
Leland W. Hutchinson, Jr.
David S. Becker
Jacob D. Koering
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000

September 11, 2009 – Original Filing Date
September 18, 2009 – Redacted Filing Date

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... III

NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

SUMMARY OF ARGUMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................5

    A.    Palm's Allegations of Infringement ..............................................5

    B.    Alleged Typographical Errors in the Palm Patents ........................5

    C.    The '803 Patent ............................................................................7

    D.    Palm's Allegations of Infringement for the '803 Patent ..............8

    E.    The '049 Patent ..........................................................................10

    F.    Palm's Allegations of Infringement of the '049 Patent ..............11

    G.    Invalidity of the '803 Patent – the Intermec Trakker ................13

    H.    Invalidity of the '049 Patent – the 700 Mono and Koenck '523 ................................................................................14

    I.    Indefinite and Non-Enabled Claims in Palm's '049 Patent ........15

ARGUMENT .....................................................................................................16

    I.    THE COURT SHOULD ENTER SUMMARY JUDGMENT REGARDING PALM'S INFRINGEMENT CLAIMS ........................16

    A.    Palm Has Failed to Provide Evidence Showing Infringement of the Claims with "Typographical Errors" ........17

    B.    The Undisputed Facts Demonstrate Intermec's CN3 Does Not Infringe the '803 Patent Claims ........................................19

        1.    The CN3 Uses Power to Trigger Changes to its Power Management Functions, not a "Signal" on a "Signal Line" ..............................................................19

        2.    The CN3 Does Not "Suspend[ the] Execution of a Programmed Event" ................................................20

3. The Dependent Claims are Not Infringed......................................20

C. The Undisputed Facts Demonstrate the CN3 Does Not Infringe the '049 Patent Claims..................................................................21

1. The CN3 Does Not Have an Operational Mode Meeting the "Low Level" Limitation ............................................21

2. Palm Lacks Evidence Showing the CN3 Meets its Interpretation of the "Low Level" Limitation................................21

3. The CN3, When Plugged into External Power, Does Not Power its RF Transceiver Using the Battery..........................22

4. The Dependent Claims are Not Infringed......................................23

II. IF PALM'S CONSTRUCTIONS ARE ADOPTED, THE COURT SHOULD ENTER SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS ARE INVALID...................................................................23

A. Palm's Interpretation of the '803 Patent Claims Would Result in the Claims Being Invalid.............................................................23

B. Palm's Contentions and its Interpretation of the "Low Level" Limitation Render the Asserted Claims of the '049 Patent Invalid............................................................................................25

III. THE COURT SHOULD ENTER SUMMARY JUDGMENT THAT CLAIMS 3 AND 9 OF THE '049 PATENT ARE INVALID AS NOT ENABLED AND INDEFINITE............................................27

CONCLUSION..............................................................................................................29

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Airport Surface Technologies LLC v. FieldTurf, Inc.,*
268 F. Supp. 2d 999 (N.D. Ill. 2003) ........................................................................................18

*AquaTex Indus., Inc. v. Techniche Solutions,*
419 F.3d 1374 (Fed. Cir. 2005) ................................................................................................16

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,*
345 F.3d 1318 (Fed. Cir. 2003) ................................................................................................18

*Automotive Techs. Int'l, Inc. v. BMW of North America, Inc.,*
501 F.3d 1274 (Fed. Cir. 2007) ................................................................................................23

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,*
296 F.3d 1106 (Fed. Cir. 2002) ................................................................................................19

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..................................................................................................................17

*Chimie v. PPG Indus., Inc.,*
402 F.3d 1371 (Fed. Cir. 2005) ................................................................................................27

*Consolidated World Housewares, Inc. v. Finkle,*
831 F.2d 261 (Fed. Cir. 1987) ..................................................................................................18

*Golden Bridge Tech., Inc. v. Nokia, Inc.,*
527 F.3d 1318 (Fed. Cir. 2008) ................................................................................................23

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n,*
341 F.3d 1332 (Fed. Cir. 2003) ................................................................................................28

*Leggett & Platt, Inc. v. VUTEk, Inc.,*
537 F.3d 1349 (Fed. Cir. 2008) ................................................................................................23

*Monsanto Co. v. Syngenta Seeds, Inc.,*
503 F.3d 1352 (Fed. Cir. 2007), *cert. dismissed,* ___ U.S. ___ (2008) ......................18, 20, 23

*Morton International, Inc. v. Cardinal Chem. Co.,*
5 F.3d 1464 (Fed. Cir. 1993) ....................................................................................................28

*Upsher-Smith Laboratories, Inc. v. Pamlab, L.L.C.,*
412 F.3d 1319 (Fed. Cir. 2005) ................................................................................................26

## RULES AND STATUTES

35 U.S.C. § 112.................................................................................................................27, 28

35 U.S.C. §§ 254-55 ...............................................................................................................18

Fed. R. Civ. P. 56(c) ........................................................................................................16, 23

## NATURE AND STAGE OF THE PROCEEDINGS

In July and August of 2007, Palm counterclaimed against Intermec for infringement of two patents, U.S. Patent Nos. 6,665,803 ("the '803 Patent") and 7,096,049 ("the '049 Patent"). (D.I. 7, 11).  Fact and expert discovery have now closed.  Pursuant to the Court's Scheduling Order of May 19, 2009 (D.I. 130), Intermec hereby submits this opening brief in support of its motion for summary judgment of non-infringement and invalidity of the asserted claims of Palm's '803 and '049 Patents.

## SUMMARY OF ARGUMENT

Palm's allegations of infringement regarding the '803 and '049 Patents focus on Intermec's CN3 product.  The allegations rely on an overly-broad reading of the claims of the '049 and '803 Patents that is directly contradicted by the specification and prosecution history of the patents.  When the claim language is correctly construed, the undisputed facts demonstrate that Intermec's accused products do not infringe the asserted claims.  On the other hand, if the Court should choose to adopt Palm's proposed constructions for those claims, the undisputed facts demonstrate the patents are invalid over, amongst other prior art, at least certain products that were made, used and sold by Intermec well before the critical dates of the asserted patents. The bases for this motion are the following:

1.      Palm has contended that a number of the claims in the '049 and '803 patents include typographical errors.  During discovery and expert disclosures, Palm has asserted infringement of those claims based on the claim language as Palm contends it should be re-written, not as the claim language is actually written.  Because the proper forum for correcting supposedly typographical errors is at the USPTO, and because Palm has not sought to correct the alleged errors using that process, there is no current jurisdictional basis for this Court to alter the language of the claims.  Thus, the claims must be addressed in this case as written.  Intermec is

- 1 -

entitled to summary judgment that its products do not infringe the claims as written because Palm has provided no evidence that the products do, in fact, infringe the claims in their current form.

2.      Intermec's CN3 does not infringe the asserted claims of the '803 patent because its power management system is triggered by power, not a "signal on a signal line." Properly construed, the "signal" in the '803 Patent claims (a) must be a voltage other than power, and (b) must be the cause of the "suspension of the execution of a programmed event." Because Intermec's devices use power to control their power management systems, they fall outside the scope of the '803 Patent claims.

3.      Furthermore, Intermec's accused products do not infringe because their power-management capabilities do not "suspend the execution of a programmed event." During the prosecution of the '803 Patent, the applicant differentiated the "suspension of the execution of a programmed event" from a process of switching between operational modes. Intermec's accused products, when connected to an external power source, switch between a "battery power" mode and an "external power" mode. In doing so, Intermec's devices do not "suspend the execution of a programmed event," but instead simply switch from one mode to another. Thus, Intermec's products cannot infringe the asserted claims of the '803 Patent.

4.      Intermec's CN3 does not infringe the asserted claims of the '049 patent because, when the charge on its battery drops below a set point, the device shuts off at the same time that the RF transceiver ceases to operate. Properly construed, the "low level" limitation in the '049 claims requires a device to have a battery charge level at which the device is operational but is unable to power its RF transceiver. Because the CN3 shuts down its RF transceivers at the same

- 2 -

time that the device shuts down, it does not have a battery charge level meeting the "low level" requirement.

5.     Furthermore, even if the "low level" requirement were not construed as Intermec contends, Palm has still failed to provide evidence showing the CN3 has a "low level" battery charge as Palm contends.  To show infringement, even Palm admits that it must show a battery having a charge (a) at which the battery is unable to power the transceiver, but (b) at which the transceiver can send and receive data when plugged into an external power source.  Palm has failed to provide any evidence that such a specific battery charge level exists.  Indeed, because Palm's expert failed to observe directly the battery charge level of the CN3 during physical testing, Palm lacks evidence showing that there is "a low level" of battery charge meeting the requirements of the '049 Patent claims.

6.     For the '803 Patent, Palm offers an impermissibly broad reading of the claims. Specifically, Palm contends the "signal on the signal line" does not need to be the cause of the "suspension of a programmed event."  This interpretation of the claim language is unsupported by the specification.  Even if it were correct, however, Palm's allegation that an infringing device independently (a) detects a "signal on a signal line," and (b) has power management capabilities renders the asserted claims of the '803 Patent invalid.  The undisputed facts show that Intermec has been selling products since 1988 that (a) detect a signal devoted to indicating whether the products are connected to a communication device, and (b) have power management capabilities. Assuming Palm's construction of the claims is correct, the claims of the '803 Patent are therefore invalid.

7.     For the '049 Patent, Palm has essentially admitted that its patent is invalid. During discovery, Palm accused Intermec's 700 Series products of infringement, and provided a

- 3 -

claim chart asserting how that product met each of the elements of the '049 Patent. One of the 700 Series products, however, was offered for sale and on sale prior to the invention date of the '049 Patent. Specifically, Intermec's 700 Mono product was on sale at least as early as February 2001, prior to the filing date of the '049 Patent. As such, the 700 Mono anticipates the claims of the '049 Patent.

8.      Furthermore, and as with the '803 Patent, Palm offers an overbroad reading of the '049 Patent claims that renders them invalid. Palm contends that the '049 Patent claims are infringed by any product that (a) has a rechargeable battery that can be discharged to a point that the RF transceiver ceases operating, and (b) is able to send and receive data when the discharged device is connected to external power. U.S. Patent No. 4,885,523, issued to Intermec's expert Steven Koenck more than a year prior to the filing date of the '049 Patent, discloses a device that (a) has an RF transceiver, (b) has a rechargeable battery that can be discharged to a point where the device will not operate, and (c) that can power the rechargeable battery and the RF transceiver when plugged into external power. As such, if the '049 Patent claims are as broad as Palm contends, they are invalid.

9.      Finally, as Intermec has identified in its claim construction brief, Claims 3 and 9 of the '049 Patent are indefinite as written, and not enabled, and are therefore invalid. Specifically, these claims recite a "recharger connector" and a "charger connector," which terms are undefined and ambiguous. Inasmuch as the claims already recite a "recharger," which "provides charge to the rechargeable battery," one of skill in the art would not be informed regarding the scope of those claims, rendering them indefinite. Nor would one of skill in the art be able to make or use an invention requiring a "recharger connector" or a "charger connector." Thus, the claims are invalid.

- 4 -

## STATEMENT OF FACTS

Intermec submits that each of the following facts is undisputed (cited to as "SF ¶ __"):

### A.   Palm's Allegations of Infringement

1.      Palm has asserted infringement of Claims 1-30 of the '803 Patent, and Claims 1-7, 9-17 of the '049 Patent (collectively the "Asserted Claims").   IA-2471-2872 (Expert Rep. of Dr. Kevin C. Almeroth Concerning Infringement of U.S. Patent Nos. 6,665,803 and 7,096,049 ("Almeroth Op. Rep."), Ex. D, *generally*).

2.      Palm originally alleged that three products infringed the Asserted Claims, including Intermec's CN3 Series Mobile Computer ("CN3"), Intermec's CN2 Handheld Computer ("CN2"), and Intermec's 700 Series Handheld Computers ("700 Series"). (Defendant/Counterclaimant Palm Inc's Response to Plaintiff Intermec Technology Corp.'s Interrogatory No. 10 ("Infringement Contentions"), *generally*).   When it came time for expert reports, however, Palm offered no allegations of infringement regarding the CN2 or 700 Series products.   IA-2494 (Almeroth Op. Rep.) at ¶ 62.   Instead, Palm, through its expert, offered opinions regarding infringement relative to the CN3 only.   (*Id.*).

### B.   Alleged Typographical Errors in the Palm Patents

3.      Palm has identified in its proposed constructions that it believes at least some of the claim language in the asserted claims contains a typographical error.   D.I. 145 (Joint Claim Construction Statement), Ex. B, generally).   Specifically, Palm has contended that elements 12.3, 12.8, and 23.1 of the '803 Patent, and elements 7.1 and 14 (regarding "byte housing" and "bakery charge") of the '049 Patent contain typographical errors.   (*Id.*, Ex. B, at 5, 10, 14-15) (collectively the "Typo Claims").

- 5 -

4.    Claims 13-22 and 24-30 of the '803 Patent, and Claims 9-13 and 15-17 of the '049 Patent depend from the Typo Claims.  IA-1213-1227 and 1449-1454 ('803 Patent and '049 Patent).

5.    Palm has never provided any notice that it may have filed any papers with the United States Patent and Trademark Office ("USPTO") attempting to correct the alleged typographical errors.  Nor has the USPTO issued a certificate of correction on these patents.  IA-1213, 1449 (*Id.*).

6.    Palm asserted infringement of the '049 Patent on July 20, 2007.  (D.I. 11).  Palm asserted infringement of the '803 Patent on August 10, 2007.  (D.I. 17).  Thus, over two years have passed since Palm first asserted infringement in this case.  (*Id.*).

7.    Palm's assertions of infringement regarding the Typo Claims are based the proposed corrected language for the Typo Claims.  IA-2602-08,(Almeroth Op. Rep., Ex. C, at 67-73, 83-89, 131-34, Ex. D, at 55-60, 90-91, 101-02).  For example, Palm includes no allegations in its contentions that Intermec's CN3 is "***adapted that is*** detachably coupleable to [a] communication device."  IA-2602-08 (Almeroth Op. Rep., Ex. C, at 67-73, *emphasis added*).  Nor does Palm include any allegations showing that Intermec's CN3 has a programming event that "would have otherwise occurred at a ***susbequent moment*** in time."  (*Id.*, Ex. C, at 83-89).  A similar lack of evidence exists showing that Intermec's CN3 has a processor "***counted to*** the signal line" (*id.*, at 131, 134), that anyone using the CN3 provides "***handheld computer wit***," (*id.*, Ex. D, at 55-60), that the CN3 has a "display supported ***byte housing***" (*id.*, at 90-91), or that the device ever has a "***bakery charge*** ... below the low level" (*id.*, at 101-02).

8.    Palm has not offered any evidence in this case that Intermec's devices infringe the claims as written.  (*Id.*, *see also* Infringement Contentions, *generally*).

- 6 -

C.    The '803 Patent

9.    The '803 Patent is entitled "System and Method for Detection of an Accessory Device Connection Status." IA-1213 ('803 Patent, Title Page). It issued on December 16, 2003, claiming priority to an application filed on April 23, 1999. (*Id.*). Palm has not alleged that the '803 Patent is entitled to an earlier invention date than April 23, 1999. IA-1693-94 (Palm's Resp. to First Set of Interrogatories, No. 11, *see also* Infringement Contentions).

10.    The asserted independent claims in the '803 Patent require that an accused device detect a connection to a "communication device." (*Id.*, Claims 1, 12, and 23). A common term for a "communication device" is a "dock." IA-2848 (Almeroth Op. Rep.) at ¶ 39 (referring to "communication device" as a "dock.")).

11.    The system in the '803 Patent will detect a connection to a dock through a specialized "signal line" that carries a signal (the "Docked Signal") "devoted to indicating whether or not the handheld is docked in a communication device." (Chart, Ex. B, p. 1, proposed constructions for "signal line"). Thus, detecting the Docked Signal is different than detecting a connection to external power, and is different than signals used for data transfer, parity, or "hot sync" functions. IA-1221 ('803 Patent) at 1:47-49; *see also* IA-2483-2484 (Almeroth Op. Rep.) at ¶¶ 38-39.

12.    The asserted independent claims also require that, upon detection of the Docked Signal, the portable computer "suspends execution of a programmed event that would have otherwise occurred at a [subsequent] moment in time." IA-1226-1227 ('803 Patent, Claims 12 and 23); *see also* IA-1226 ('803 Patent, Claim 1 ("suspending execution of a programmed event that was to occur at a subsequent moment in time.")). Each description of "suspending a programmed event" in the specification describes it happening as a result of insertion into a dock. (*Id.*, Fig. 5, 2:25-29; 3:2-8; 6:13-16; 6:46-50; and 10:6-11). There is no description in the

'803 Patent of an embodiment where the "suspension of a programmed event" happened when the device was *not* inserted into a dock.

13.     The term "programmed event" refers to a programming feature that is to occur sometime in the future. (Chart, Ex. B, p. 1-2, Element 1.7). One such "programmed event" is a "time-out feature" that is "a feature that occurs when the device detects inactivity for a predetermined duration of time." (*Id.*, Ex. B, p. 2, Element 2.2). Exemplary time out features in the '803 Patent include switching the computer from an "active mode" to a "sleep mode" or switching off the backlight after a period of inactivity. IA-1223 ('803 Patent, 5:59-6:12; 6:46-58).

14.     The "suspension" of a programmed event means that the future occurrence of that event is "halted or postponed." (Chart, Ex. B, p.1-2, Element 1.7). Suspending a programmed event is different than switching between modes of operation. IA-4662-63 (Koenck Resp. Rep.) at ¶ 51; IA-5050 (Almeroth Dep. at 136-37).

            D.      Palm's Allegations of Infringement for the '803 Patent

15.     Dr. Almeroth, on Palm's behalf, has offered opinions that the CN3 infringes Claims 1-30 of the '803 Patent. IA-2536-2701 (Almeroth Op. Rep., Ex. C). Of those claims, Claims 1, 12 and 23 are independent. IA-1226-27('803 Patent, Claims 1, 12, and 23).

16.     Intermec's CN3 includes power-management functionality, including an auto-shutoff function and a backlight-dimming function. IA-1571(CN3 Series Mobile Computer Manual v. 3 ("CN3 Manual v. 3") at 20; IA-1667-68 (CN3 Series Mobile Computer User's Manual v. 5 ("CN3 Manual v. 5") at 15-16). The auto-shutoff function ("Auto-Shutoff") will turn off the CN3 after a period of non-use. IA-2551(Almeroth Op. Rep., Ex. C, at 16). The backlight-dimming function ("Backlight Dimmer") will dim or turn off the backlight after a period of inactivity. (*Id.* at 18-19).

17. The CN3 has two operational modes, one for when it is operating on battery power ("Battery Power Mode") and another for when it is operating on external power ("External Power Mode"). IA-1571 and 1667-68 (CN3 Manual v. 3 at 20; CN3 Manual v. 5 at 15-16).



18. The Auto-Shutoff and Backlight Dimmer functions can be configured to be active or inactive in either or both of the Battery Power Mode or the External Power Mode. IA-1571; 1667-8 (CN3 Manual v. 3 at 20; CN3 Manual v. 5 at 15-16). Similarly, the period of inactivity before the Auto-Shutoff and Backlight Dimmer functions will operate can be configured differently for each Mode. (*Id.*).

19. The CN3 will detect a connection to external power using Pins 14-16 in a 16-pin connector at its base. IA-0005-6 (CN3 Theory of Operation at 51-52).

20. 

21. Palm has accused Intermec's CN3 of infringing the asserted claims of the '803 Patent because (a) its power-management features can be configured to be "on" in the Battery Power Mode, and "off" in the External Power Mode, and (b) because Intermec's CN3 has the DOCK_DET signal. IA-2549, 2551, 2555 (Almeroth Op. Rep. Ex. C, at 14, 16, 20). Palm contends the switch between the Battery Powered Mode and the External Power Mode in this

configuration results in the power-management functionality in the Battery Power Mode being "suspended." (*Id.*).

22.     Dr. Almeroth has offered an opinion that the Intermec's CN3 infringes the claims of the '803 Patent even if there is no causal link between the DOCK_DET signal and the alleged "suspension" of the power-management features in the CN3.  IA-5049 (Deposition of Dr. Kevin C. Almeroth ("Almeroth Dep."), at 89).  Thus, Palm has contended that a device that (a) detects a connection to a communication device, and (b) separately has power-management functions that can be "suspended" for any reason, will infringe the claims of the '803 Patent.  (*Id.*; *see also* IA-2536-2701 (Almeroth Op. Rep., Ex. C).

E.     The '049 Patent

23.     The '049 Patent is entitled "Wireless Transaction Enabled Handheld Computer System and Method."  It issued on August 22, 2006, claiming priority to an application filed on May 25, 2001.  (*Id.*).  Palm has not alleged that the '049 Patent is entitled to an earlier invention date than May 25, 2001.  IA-1693-4 (Palm's Resp. to First Set of Interrogatories, No. 11); *see also* IA-1820-21 (Infringement Contentions).

24.     The asserted independent claims of the '049 Patent each require a device having a rechargeable battery with a "low" charge level, the level being one "below which the handheld is useable but too low to allow radio transmission."  IA-2494 (Almeroth Op. Rep.) at ¶ 60.  In other words, the '049 Patent requires an accused device to have an operational mode in which (a) the device is operational, but (b) the RF transceiver is not.  IA-4675-76 (Koenck Resp. Rep.) at ¶¶ 100-03.

25.     Originally, Palm proposed a construction for the "low level" limitation that is identical to the construction used in Dr. Almeroth's report.  In the Joint Claim Construction Statement filed by the parties, however, Palm has now changed its position and proposed that the

limitation is "clear and can be easily understood by a jury, no special construction necessary." (D.I. 145).

26.     The '049 Patent discloses in the specification one particular embodiment in which a power supply connection is provided from the battery, in which embodiment power that is delivered to the battery is provided to the RF transceiver via the battery while the battery is charging.  IA-1453 ('049 Patent, 4:43-48).

27.     Claims 1-6 of the '049 Patent recite a "handheld computer system" with a "recharger coupled to the recharging connector" and "a radio frequency transceiver" that is "configured to send and receive data while the ... recharger provides charge to the rechargeable battery and to the transceiver."  IA-1454 ('049 Patent, Claim 1).  Thus, the claim requires the recharger to provide power to the handheld computer system.  (Id.); IA-4683-84 (Koenck Resp. Rep.) at ¶¶ 126-28).

28.     In that same configuration, Claims 1-6 of the '049 Patent also require that the "radio frequency transceiver [be] powerable by the battery when the battery has a charge above a low level."  (Id.).

F.     Palm's Allegations of Infringement of the '049 Patent

29.     Intermec's CN3 device does not have an operational mode in which (a) the device is operational, but (b) the RF transceiver is not. IA-4675-6 (Koenck Resp. Rep.) at ¶¶ 100-03; see also IA-5053 (Almeroth Dep. at 239).

30.     The CN3 can be reactivated from the suspend mode by plugging the device into a powered dock.  (Id.; see also IA-4674-76 Koenck Resp. Rep.) at ¶¶ 99-103).



31.     Dr. Almeroth has provided an opinion that the CN3 infringes the asserted claims of the '049 Patent.  IA- 2702-2815 (Almeroth Op. Rep., Ex. D).   In providing his opinions regarding the "low level" limitation of the '049 Patent claims, Dr. Almeroth relied upon the System Set Points section in the CN3 Theory of Operation document, pages 265-87 of the deposition of Arvin Danielson, and physical testing of the CN3 by Dr. Almeroth.   IA-2727 (Almeroth Op. Rep., Ex. D, at 26).

32.

33.

34.

35.

36.



G.    Invalidity of the '803 Patent – the Intermec Trakker

37.    Despite the clear language of the claims and the specification in the '803 Patent, Palm has alleged that the '803 Patent Claims do not require a device to utilize the detection of a dock as a trigger for power management.  IA-5049 (Almeroth Dep. at 88).

38.    Furthermore, Palm has alleged that switching between a battery-mode and an external-power mode, with differing power-management configurations for those modes, infringes the claims of the '803 Patent.  IA-2550-56 (Almeroth Op. Rep., Ex. C, at 15-21).

39.    Intermec has made, used, sold and/or offered for sale a product called the Intermec 944X Trakker Reader ("Trakker") since at least as early as 1988.  Declaration of Steve Koenck in Support of Intermec's Motion for Partial Summary Judgment on Certain Invalidity Claims Concerning U.S. Patent Nos. 5,349,678, 5,568,645 and 5,987,499 ("Koenck Decl.") at ¶ 5.  The Trakker was a handheld device that included both power management functionality and the ability to detect a connection to a dock.  (Id.).

40.    The Trakker was sold to work with a specially-designed dock.  (Id. ¶ 10).  Trakker couples to the dock using a pin connector, which includes one pin that will carry a signal called IO SENS.  (Id. ¶ 9).  The IO SENS signal is used to detect a connection to the dock by pulling

the IO SENS signal to ground when connected. (*Id.* ¶¶ 11-12). Thus, the connection of the Trakker to the dock results in the IO SENS signal transmitting a voltage to the processor in the Trakker. (*Id.*).

41.     One dock that the Trakker is compatible with is a communication dock. IA-390. The communication dock allows transmission of data between the Trakker and an asynchronous host computer, terminal, or concentrator. (*Id.*).

42.     The Trakker further has power-management functionality, namely an Auto-Shutoff function that is normally configured to shut off the Trakker after a period of inactivity. IA-389; *see also* Koenck Decl. at ¶¶ 12-13. The Auto-Shutoff functionality can be configured to either be on or off, or can be configured to activate after a set number of minutes. IA-391. Such a shutoff feature is intended to reduce power consumption of the device. Koenck Decl. at ¶ 13.

43.     The Trakker could be plugged into a battery charger, which would deliver A/C power to the battery for charging. IA-390.

H.     Invalidity of the '049 Patent – the 700 Mono and Koenck '523

44.     Intermec's 700 Series Mono products were on sale in this country prior to May 25, 2001. IA-4701 (Koenck Inv. Rep.) at ¶ 28. The 700 Mono was released for manufacturing on February 8, 2001. (*Id.*).

45.     Palm originally asserted in this case that Intermec's 700 Series products, including the 700 Mono, infringe each and every asserted claim of the '049 Patent. IA-1820-1863 (Invalidity Contentions). Palm has never withdrawn or modified its infringement allegations regarding the 700 Series products.

46.     U.S. Patent No. 4,885,523, issued to Steven E. Koenck ("Koenck '523") on December 5, 1989. IA-446 (Koenck '523, Title Page).

47.     Koenck '523 discloses each of the basic elements of the product claims, showing a housing, IA-5106 (Koenck Inv. Rep.) at ¶¶ 34-35, a display supported by the housing (*Id.* ¶¶ 36-37), a processor coupled to the display (*Id.* ¶¶ 38-39), a rechargeable battery configured to power the processor and the display (*Id.* ¶¶ 41-43), and a recharging connector coupled to the rechargeable battery, (*Id.* ¶¶ 44-49). Further, the device in Koenck '523 can be connected to a power source by coupling a recharger to the recharging connector. (*Id.* ¶¶ 51-53).

48.     Koenck '523 discloses the basic elements of the method claim of Claim 7, in that the device includes a rechargeable battery that, by its nature, can be discharged, a transceiver that, by its nature, requires power to operate, and a recharger for recharging the rechargeable battery. (*Id.* ¶¶ 63-66).

49.     In addition to disclosing these basic elements, Koenck '523 discloses a device that will power the transceiver on the device when plugged into a dock. (*Id.* ¶¶ 89-90).

50.     According to Palm, all that is required in order to infringe the claims of the '049 Patent is a battery that can be depleted, and the ability to transmit when plugged into a power source. IA- 2727 (Almeroth Op. Rep., Ex. D, at 26).

       I.     Indefinite and Non-Enabled Claims in Palm's '049 Patent

51.     Intermec has identified in its claim construction briefing that Claims 3 and 9 of the '049 Patent are invalid as indefinite. (CC Brief at 65).

52.     The '049 specification does not define what a "recharger connector" is. IA-1449-454 ('049 Patent). Nor does the '049 specification define what a "charger connector" is. IA-1449-54 (*id.*)

53.     Neither a "recharger connector" nor a "charger connector" are shown in the Figures in the '049 Patent. IA-1450-1451 (*id.*)

- 15 -

54.     There is no dictionary definition for the terms "recharger connector" or "charger connector."

55.     Claim 3 states that a "recharger connector is configured to couple to the recharging connector." IA-1452 (*id.*)

56.     The "recharging connector" is shown in Figure 3 directly connected to a recharger.   IA-1451 (*id.*) Fig. 3.   The specification does not disclose any other structure connected to the recharging connector.   IA 1452 (*id.*) Fig. 3.

57.     The recharger in the '049 is shown directly connected between a power source (360) and the recharging connector (340) in Figure 3.  IA 1451 (*id.*) Fig. 3.  Figure 3 is the only figure that depicts the recharger.  IA-1451 (*id.*).

58.     Claim 9 states that the "synchronization cradle [has] a charger connector."

59.     A "synchronization cradle" is shown in Figure 2 of the '049 Patent.  IA-1452 (*id.*) Fig. 2.  The cradle is shown with a "power or data cord 134."  IA-1453 (*id.*) Fig. 2; 3:49-56. No structure is shown in Fig. 2 as a "charger connector."

<u>ARGUMENT</u>

I.     THE  COURT  SHOULD  ENTER  SUMMARY  JUDGMENT
       <u>REGARDING PALM'S INFRINGEMENT CLAIMS</u>

The undisputed facts in this case demonstrate that summary judgment should be entered regarding non-infringement of the asserted claims of the '803 and '049 Patents, because Palm has failed to introduce any evidence on certain key elements of those claims showing infringement.   Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d

1374, 1379 (Fed. Cir. 2005).   In a patent case, because the patentee bears the burden of establishing infringement, summary judgment is appropriate if Intermec establishes "an absence of evidence to support the nonmoving party's case."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

> A.   Palm Has Failed to Provide Evidence Showing
> Infringement of the Claims with "Typographical Errors"

Despite having over two years time to correct the alleged "typographical errors" in its patent claims, Palm has failed to file papers with the USPTO to do so.   (SF ¶¶ 3-6).   Instead, Palm has simply attempted to substitute its proposed corrections to the identified claims, and asserted infringement based on the claims as it contends they should be corrected.   (SF ¶¶ 7-8). Yet, in doing so, Palm has offered no evidence regarding how Intermec's devices might infringe the claims *as written.*   (SF ¶ 7).   Specifically, Palm's allegations of infringement regarding Claims 12 and 23 of the '803 Patent and Claims 7 and 14 of the '049 Patent include no allegations showing how Intermec's devices meet the following limitations:

- a portable computing device "*adapted that is* detacheably coupleable to a communication device" (*id., see also* IA-1226 (Claim 12, '803 Patent));
- the processor being "programmed to suspend execution of a programmed event that would have otherwise occurred at a *susbequent* moment in time" (*id.*);
- the processor being "*counted to the signal line*" (*id.; see also* IA-_1227 Claim 23, '803 Patent));
- providing a "*handheld computer wit*" (*id.; see also* IA-1454 (Claim 7, '049 Patent));
- a "display supported *byte housing*" (*id.; see also* IA-1454 (Claim 14, '049 Patent)); and
- a battery having a "*bakery charge*" (*id.*).

Because claims 12 and 23 of the '803 Patent and Claims 7 and 14 of the '049 Patent are independent claims, Palm has similarly failed to offer evidence regarding infringement for the

- 17 -

dependent claims. *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007), *cert. dismissed*, ___ U.S. ___ (2008) ("According to § 112, ¶ 4, claims in dependent form include all the limitations of the claim incorporated by reference into the dependent claim.") Thus, Palm has offered no evidence showing infringement of Claims 12-30 of the '803 Patent, and Claims 7 and 9-17 of the '049 Patent.

Instead of offering evidence regarding these claims as written, Palm is apparently requesting that this Court correct the alleged typographical errors through claim construction. Yet, the proper forum for consideration of whether to correct such errors is at the United States Patent and Trademark Office. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1331 n.1 (Fed. Cir. 2003). There, following the proper procedures, a party can obtain a certificate of correction under 35 U.S.C. §§ 254 and 255 from the Director, assuming the correction is truly typographical in nature. Manual of Patent Examining Procedure §§ 1480-81. Sections 254 and 255 of the Patent Act vest authority in the Director of the USPTO to make the typographical corrections to patents, not the courts. *See* 35 U.S.C. §§ 254-55.

As the Federal Circuit has instructed, where Congress has created a statutory scheme for initial determination of patent-related issues at the USPTO, the federal courts lack subject matter jurisdiction to hear such claims unless and until the USPTO has made a determination. *Consolidated World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987). Where such a scheme exists, the proper course of action is for the court to reject jurisdiction, and "not usurp the exclusive power of an administrative agency once Congress has spoken on the issue." *Airport Surface Technologies LLC v. FieldTurf, Inc.*, 268 F. Supp. 2d 999, 1250 (N.D. Ill. 2003). Palm has never sought to have these alleged "typographical" errors corrected by the USPTO, despite having more than sufficient time to do so. (SF ¶¶ 5-6). The proper course of action here

is for this Court to refuse Palm's suggestion to correct alleged "typographic errors," and instead rule on the claims as written. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1105 (Fed. Cir. 2002) ("[T]his court will not re-write claims."). And, as written, Palm offers no evidence of infringement.

        B.     The Undisputed Facts Demonstrate Intermec's CN3 Does Not Infringe the '803 Patent Claims

Even assuming Palm could correct its asserted claims, the undisputed facts still demonstrate that the CN3 does not infringe the claims of the '803 Patent because (1) the CN3 does not change its power-management functions based on detecting insertion into the dock; and (2) the CN3 does not "suspend the execution of a programmed event."

        1.     The CN3 Uses Power to Trigger Changes to its Power Management Functions, not a "Signal" on a "Signal Line"

Properly construed, the claims of the '803 Patent require a causal connection between (1) the detection of a signal on "a signal line" in order "to determine when the communication device is actively connected to the portable computing device," and (2) the "suspen[sion of the] execution of a programmed event" based on detecting that signal. (SF ¶¶ 11-12; *see also* Op. CC Brief, p. 59). In this case, Palm has accused Intermec's devices of infringement because a user can (1) configure power-management functions on the CN3 to be "on" for the Battery Power Mode, and "off" for the External Power Mode, and (2) the CN3 will switch between these Modes when plugged into a powered dock. (SF ¶ 21). Yet, Intermec's CN3 devices do not switch between the two Modes based on detection of the dock. (SF ¶¶ 17-18). Instead, the CN3 will switch between these Modes based solely on the detection of *external power*, not the detection of the DOCK_DET signal. (*Id.*). Thus, the CN3 does not "suspend execution of a programmed event" as a result of "detecting a signal on a signal line," as required.

Because Intermec's CN3 will switch between Battery Power Mode and External Power Mode based on whether it detects external power, and not based on whether it is connected to a dock, it cannot infringe the claims of the '803 Patent.

2.   The CN3 Does Not "Suspend[ the] Execution of a Programmed Event"

Each of the independent claims of the '803 Patent also requires that a programmed event be "suspended." (SF ¶ 12). Properly construed, the "suspension" of a programmed event requires that the future execution of that event be stopped or postponed without switching the computer's state of operation. (SF ¶ 14, *see also* Op. CC Brief at 59). Even configured as Palm contends, with the power-management functions configured to be "on" in the Battery Power Mode and "off" in the External Power Mode, the CN3 never "suspends" the power-management functions. Instead, the CN3 switches from a mode where the functions are "on" to a mode where the functions are "off." (SF ¶¶ 17-20). Switching between these operational modes is different, as Palm's own expert admits, from a configuration where a programmed event is scheduled to occur, and is then shut off due to detection of a dock. IA-5050 (Almeroth Dep. at 136:1-137:3).

Because Intermec's CN3 switches operational modes instead of "suspending execution of a programmed event," it cannot infringe the claims of the '803 Patent.

3.   The Dependent Claims are Not Infringed

The undisputed facts show that the CN3 does not include multiple elements from independent claims 1, 12 and 23 of the '803 Patent. *See Supra*, Section A.2.a and A.2.b. Because the remaining claims depend from these independent claims, the CN3 does not infringe those claims either. *Monsanto Co.*, 503 F.3d at 1359. Thus, the CN3 does not infringe any of Claims 1-30 of the '803 Patent.

C.   The Undisputed Facts Demonstrate the CN3 Does Not
Infringe the '049 Patent Claims

As with the '803 Patent, the undisputed facts demonstrate that the CN3 does not infringe

the claims of the '049 Patent because the CN3 does not have an operational mode meeting the

"low level" limitations of the claims.   Furthermore, even if Palm's interpretation of the "low

level" limitation is correct, Palm has failed to provide evidence showing that Intermec's CN3

meets that limitation.   Finally, the CN3 does not infringe Claims 1-6 of the '049 Patent because

the device, when plugged in, does not use its battery to power the RF transceiver.

1.   The CN3 Does Not Have an Operational Mode
Meeting the "Low Level" Limitation

Properly construed, the claims of the '049 Patent require a device having a rechargeable

battery with a "low" charge level, the level being one "below which the handheld is useable but

too low to allow radio transmission." (SF ¶ 24; *see also* Op. CC. Brief, p. 64).   In other words,

the '049 Patent requires an accused device to have an operational mode in which (1) the device is

operational, but (2) the RF transceiver is not. (SF ¶ 4).   The CN3 has no such operational mode.

(SF ¶ 4).   Instead, the CN3 will shut off its transceiver at the same time as it shuts off the device.

(SF ¶ A).   And, when the CN3 is reactivated, the transceiver is operational as well. (SF ¶ 3A).   It

does not have a mode when the device is usable but the RF transceiver is not. (SF ¶ A).

Because Intermec's CN3 does not include a rechargeable battery with a "low level" as

required by the '049 Claims, it does not infringe the claims of the '049 Patent.

2.   Palm Lacks Evidence Showing the CN3 Meets its
Interpretation of the "Low Level" Limitation

Although Palm originally agreed with Intermec's proposed construction for the "low

level" limitation, Palm has now changed its position and proposed that the limitation is "clear

and can be easily understood by a jury, no special construction necessary." (SF ¶ 36).   Looking

at the exact claim language, however, Palm lacks evidence to establish that Intermec's CN3 device meets the "low level" limitation.  Specifically, Palm has not identified any specific battery charge level for which (1) the RF transceiver will not operate on battery power; but (2) will operate when connected to an external power source.  (SF ¶ 36).  As such, it has failed to demonstrate that the CN3 meets even its interpretation of the '049 Claims.



### 3. The CN3, When Plugged into External Power, Does Not Power its RF Transceiver Using the Battery

Claims 1-6 of the '049 Patent relate to a particular configuration in which a handheld computer is connected to a recharger, and the recharger "provides charge to the rechargeable battery and to the transceiver."  (SF ¶ 27).  In this configuration, Claims 1-6 require that the "radio frequency transceiver [be] powerable by the battery when the battery has a charge above a low level."  (SF ¶ 28).  Intermec's CN3 product, however, has an RF transceiver that is powerable by external power when the battery has a charge above a low level and the device is plugged in.  (SF ¶ 4).  The CN3 does not use its battery to power the transceiver in that configuration.  (SF ¶ 4).  Because Claim 1 requires a device to (1) be connected to external

power, and (2) to power the transceiver by the battery, the CN3 cannot infringe that claim or its dependents.  Therefore, the CN3 does not infringe Claims 1-6 of the '049 Patent.

4.   The Dependent Claims are Not Infringed

The undisputed facts show that the CN3 does not include multiple elements from independent claims 1, 7 and 14 of the '049 Patent.  *See Supra*, Section A.3.a, A.3.b, and A.3.c. Because the remaining claims depend from these independent claims, the CN3 does not infringe those claims either.  *Monsanto Co.*, 503 F.3d at 1359.  Thus, the CN3 does not infringe any of Claims 1-7, and 9-17 of the '049 Patent.

II.   IF PALM'S CONSTRUCTIONS ARE ADOPTED, THE COURT SHOULD ENTER SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS ARE INVALID

Under Federal Rule of Civil Procedure 56(c), "summary judgment is appropriate where 'there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law.'"  A finding of invalidity requires clear and convincing evidence.  *Automotive Techs. Int'l, Inc. v. BMW of North America, Inc.*, 501 F.3d 1274, 1281 (Fed. Cir. 2007). Anticipation "may be decided on summary judgment if the record reveals no genuine dispute of material fact."  *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008), quoting *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).

A.   Palm's Interpretation of the '803 Patent Claims Would Result in the Claims Being Invalid

Despite the clear language of the claims and the specification, Palm has alleged that the '803 Patent Claims do not require the detection to a dock as a trigger for power management. (SF ¶ 37).  Furthermore, Palm has alleged that switching between a battery-mode and an external-power mode, with differing power-management configurations for those modes, infringes the claims of the '803 Patent.  (SF ¶ 38).  Based on these assertions, and assuming the

- 23 -

Court adopts Palm's positions regarding claim construction, these positions render at least claims 1-4, 7-8, 10, 12-16, 19-20, 23-24, and 27-29 of the '803 Patent invalid.

Given Palm's interpretation of the '803 Patent, Intermec's Trakker product will anticipate the identified asserted claims.



Thus, the Trakker anticipates each and every element of claims 1-4, 7-8, 10, 12-16, 19-20, 23-24, and 26-29 of the '803 Patent.  Specifically, relative to Claim 1, a user of a Trakker would "coupl[e] a signal line accessible through an outlet of the portable computing device" when placing the Trakker into a dock (SF ¶ 40-41), and the Trakker would "detect[] a signal on the signal line to determine whether the communication device is actively connected to a portable computing device" when it senses the IO SENS voltage level (SF ¶ 40), and "suspend[] execution of a programmed event that was to occur at a subsequent moment in time" when it

shuts off the Auto-Shutoff based on detecting external power (SF ¶ 42).  The Auto-Shutoff feature is used by the Trakker "to reduce power consumption of the portable computing device." (SF ¶ 42).  Claims 12 and 23 are anticipated for the same reasons.

Claims 2, 4, 14, and 24 are anticipated because the Auto-Shutoff feature on the Trakker is a "time-out feature."  (SF ¶ 13).

Claim 3 is anticipated because the Trakker can send and receive communications using its pin connector connection to the dock.  (SF ¶ 40).

Claims 7, 10, 15, 19, 20, 26, 28 and 29 are anticipated because the Trakker has a signal line extending to a pin element of a pin connector forming an outlet on the device (SF ¶ 40), and because the IO SENS signal on that line carries a voltage level that, when the Trakker is connected to a dock, can be detected by the processor in the Trakker to determine that it is actively connected to a dock.  (SF ¶ 40).

Claims 8, 16, and 27 are anticipated because the Auto-Shutoff feature in the Trakker can be modified by a user.  (SF ¶ 42).

Claim 13 is anticipated because the dock for the Trakker can be plugged into a power supply and can provide power to the Trakker.  (SF ¶ 43).

Thus, given Palm's interpretation of the '803 Patent, claims 1-4, 7-8, 10, 12-16, 19-20, 23-24, and 26-29 are anticipated by the Trakker.

> B.   Palm's Contentions and its Interpretation of the "Low Level" Limitation Render the Asserted Claims of the '049 Patent Invalid

Palm's position regarding the meaning of the phrase "low level" appears to be that a handheld device that (1) will power down to a level where it stops transmitting, and (2) is capable of transmitting when connected to a recharger, infringes the claims of the '049 Patent. Furthermore, Palm has asserted that Intermec's 700 Series products, including the 700 Mono,

infringe each and every asserted claim of the '049 Patent. (SF ¶¶ 2, 45). Based on these assertions, if the Court adopts Palm's positions regarding claim construction, the asserted claims are invalid.

First, assuming Palm's infringement contentions are correct, Intermec's 700 Mono device renders each and every asserted claim invalid, inasmuch as that product was on sale prior to May 25, 2001. (SF ¶ 44). Despite the fact that Palm has omitted the 700 Mono from its expert reports, it still asserted earlier in this case that the claims of the '049 Patent read on the operation of the 700 Series products. (SF ¶ 45). It has never withdrawn these contentions. Thus, the '049 Patent claims are invalid, as Palm admits. *Upsher-Smith Laboratories, Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("A century-old axiom of patent law holds that a product 'which would literally infringe if later in time anticipates if earlier.'").

Second, given Palm's interpretation of the "low level" limitation in the '049 Patent claims, Koenck '523 discloses each and every element of at least Claims 1, 7 and 14 of the '049 Patent. (SF ¶ 47). Specifically, Koenck '523 discloses each of the basic elements of the product claims, showing a housing (SF ¶ 47), a display supported by the housing (SF ¶ 47), a processor coupled to the display (SF ¶ 47), a rechargeable battery configured to power the processor and the display (SF ¶ 47), and a recharging connector coupled to the rechargeable battery (SF ¶ 47). Further, the device in Koenck '523 can be connected to a power source by coupling a recharger to the recharging connector. (SF ¶ 47). Finally, Koenck '523 discloses the basic elements of the method claim of Claim 7, in that the device includes a rechargeable battery that, by its nature, can be discharged, a transceiver that, by its nature, requires power to operate, and a recharger for recharging the rechargeable battery. (SF ¶ 48).

In addition to disclosing these basic elements, Koenck '523 discloses a device that will power the transceiver on the device when plugged into a dock. (SF ¶ 49). According to Palm, this is all that is required to infringe the claim, and presumably to meet the "low level" limitation. Yet, assuming Palm is right regarding the scope of its claims, the ability of the Koenck '523 Patent to use its RF transceiver when charging its rechargeable battery renders the independent claims invalid. Specifically, given Palm's position, Koenck '523 would disclose a device with:

> a radio frequency transceiver coupled to the processor and powerable by the battery when the battery has a charge above a low level, the transceiver configured to send and receive data while the battery charge [bakery [sic] charge] is below the low level and the [recharging connector receives power from a power source and] recharger provides charge [power] to the rechargeable battery and to the transceiver, the low level being a level at which the battery is unable to power the transceiver when the charge is below the low level.

'049 patent, Claims, 1, 14. Similarly, the Koenck '523 device, in use, would be capable of:

> establishing an RF link using the transceiver while the battery has a relatively low charge and the handheld computer is coupled to the recharger.

'049 patent, Claim 7. These key elements, in addition to the basic elements disclosed above, render each of Claims 1, 7 and 14 anticipated.

### III. THE COURT SHOULD ENTER SUMMARY JUDGMENT THAT CLAIMS 3 AND 9 OF THE '049 PATENT ARE INVALID AS NOT ENABLED AND INDEFINITE

To be valid, the claims of a patent must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. This requirement is known as the "definiteness" requirement of Section 112. Because the claims perform the fundamental function of delineating the scope of the invention, *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005), the purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately

notifies the public of the patentee's right to exclude, *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003). Thus, where the scope of a claim is indefinite as written, the claim is invalid. *Morton International, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993).

In addition to having definite claims, the specification of a patent must also "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112, ¶ 1.

Claims 3 and 9 of the '049 Patent claim a "recharger connector" and a "charger connector," respectively. These terms are not defined in the specification. SF ¶ 52. Nor is a "recharger connector" or "charger connector" shown in the figures of the '049 Patent. SF ¶ 53. The terms are not defined in dictionaries. In fact, the only information about what a "recharger connector" or "charger connector" might be comes from Claims 3 and 9 themselves. The claims state that the "recharger connector" is "configured to couple to the recharging connector," and that the "synchronization cradle [has] a charger connector." Yet, the only structure shown "configured to couple to the recharging connector" is the "recharger" element, already claimed in Claim 1. And, the only "connectors" shown for the synchronization cradle is a data connection. Thus, the specification does not provide any identification of what, exactly, a "recharger connector" or a "charger connector" might be.

Because these terms are undefined, and because the specification lacks any means to help understand what they mean, they are indefinite. And, because the specification lacks any information on what these terms relate to, one of skill in the art would not be able to make and

use a system having a "recharger connector" coupled to the recharging connector, or a "synchronization cradle" having a "charger connector."   Thus, the claims as written are indefinite and not enabled, and therefore invalid.

## CONCLUSION

For the above-stated reasons, the Court should enter summary judgment that Intermec's CN3 does not infringe the asserted claims of the '803 and '049 Patents.  If, however, the Court were to adopt Palm's positions regarding the scope of the '803 and '049 Patent claims, at least the above-identified claims are rendered invalid by Intermec's Trakker product, Intermec's 700 Mono product, and by Koenck '523.  Finally, Claims 3 and 9 of the '049 Patent are invalid as indefinite and not enabled.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *Intermec Technologies Corp.,*

OF COUNSEL:

Carson P. Veach
Leland W. Hutchinson, Jr.
David S. Becker
Jacob D. Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
(312) 360-6000

September 11, 2009 – Original Filing Date
September 18, 2009 – Redacted Filing Date

3116878

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on September 18, 2009, upon the following in the manner indicated:

Richard L. Horwitz                                                    *VIA ELECTRONIC MAIL*
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Robert T. Haslam                                                     *VIA ELECTRONIC MAIL*
COVINGTON & BURLING
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065
rhaslam@cov.com

Michael M. Markman                                                   *VIA ELECTRONIC MAIL*
Robert J. Williams
COVINGTON & BURLING
One Front Street
San Francisco, California  94111
mmarkman@cov.com
rwilliams@cov.com

*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)