# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTERMEC TECHNOLOGIES CORP.,  )
a Delaware corporation,  )
  )
    Plaintiff/Counterclaim Defendant,  )    C.A. No. 07-272-SLR/LPS
  )
v.  )    **JURY TRIAL DEMANDED**
  )
PALM, INC.,  )    **PUBLIC VERSION**
a Delaware corporation,  )
  )
    Defendant/Counterclaim Plaintiff.  )

## DEFENDANT/COUNTERCLAIMANT PALM INC.'S OPPOSITION TO INTERMEC'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT OF U.S. PATENT NOS. 6,665,803 and 7,096,049

OF COUNSEL:

Robert T. Haslam
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Tel: (650) 632-4700

Michael M. Markman
Robert J. Williams
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Tel: (415) 591-6000

Dated: October 16, 2009
Public Version Dated: October 26, 2009
939244 / 31950

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim Plaintiff Palm, Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY OF ARGUMENT ................................................................................. 2

III.    STATEMENT OF FACTS ........................................................................................ 4

IV.     ARGUMENT ............................................................................................................. 5

    A.    Palm Has Proven That Intermec's CN3 Infringes the '803 Patent ........................ 5

        1.    Intermec Infringes The Asserted Claims Regardless of
           Typographical Errors. ................................................................................. 5

        2.    The '803 patent does not require that power management be
           triggered by a signal on a signal line. ....................................................... 8

        3.    The CN3 infringes the '803 by changing modes ...................................... 10

    B.    Palm Has Proven That Intermec's CN3 Infringes the '049 Patent ...................... 11

        1.    The '049 patent does not require a "third power level" ............................ 11

        2.    The CN3 has a transmitter that is powerable by the battery as
           required by the '049 patent. ..................................................................... 12

    C.    The '803 Patent is Not Invalid ............................................................................ 14

        1.    Intermec Failed To Disclose Any Expert Opinion Concerning The
           "Intermec Trakker" During Discovery And The Court Should
           Strike Intermec's New Theory ................................................................. 14

        2.    Intermec Lacks Admissible Evidence That The Trakker Was Prior
           Art ............................................................................................................ 14

         3.    Intermec Makes No Showing That The Trakker Included All
           Elements Of The Asserted Claims ........................................................... 16

    D.    The '049 Patent is Not Invalid ............................................................................ 17

        1.    Intermec Lacks Clear and Convincing Evidence of Anticipation by
           the Mono 700 ......................................................................................... 17

             a)    Intermec Has Provided No Clear and Convincing Evidence
               the 700 Mono is Prior Art. ......................................................... 17

             b)    Intermec has not proven the 700 Mono anticipated the
               elements of the '049 patent ......................................................... 19

2.    The Koenck '523 patent does not invalidate the '049 patent................... 20

    a)    The Koenck '523 patent does not teach a handheld computer system as required by all claims of the '049 patent................................................... 21

    b)    The Koenck '523 patent does not teach that the recharger provides charge to both the battery and the transceiver directly, as required by all claims of the '049 patent.................... 21

    c)    The Koenck '523 patent does not teach that the transceiver can transmit when the power source is connected but the battery level is too low to power transmission transmit, as required by all claims of the '049 patent. ...................................... 22

    d)    The Koenck patents do not teach or render obvious a charger that is a recharging cradle as required by Claim 2........... 22

    e)    The Koenck '523 patent does not teach a system where the recharger is a synchronization cradle as required by Claims 4, 5 6 and 9.................................................................. 22

    f)    Koenck '523 patent does not teach "draining the rechargeable battery to a charge level at which the transceiver is unable to establish an RF link" as required by Claim 11.............................................................. 23

    g)    Koenck '523 patent does not teach" receiving an email," "receiving a cell phone call," having an "email program," or having "an always-on email program," as required by Claims 12, 13, 16 and 17. ........................................... 23

E.    Claims 3 And 9 Of The '049 Are Not Indefinite And Are Enabled. .................... 23

V.    CONCLUSION................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akzo N.V. v. U.S. Int'l Trade Comm'n,*
   808 F.2d 1471 (Fed. Cir. 1986).................................................................16

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,*
   345 F.3d 1318 (Fed. Cir. 2003).................................................................8

*Bai v. L & L Wings,*
   160 F.3d 1350 (Fed. Cir. 1998).................................................................12

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,*
   296 F.3d 1106 (Fed. Cir. 2002).............................................................3, 8

*Hoffer v. Microsoft Corp.,*
   405 F.3d 1326 (Fed. Cir. 2005).......................................................2, 6, 7, 8

*I.T.S. Rubber Co. v. Essex Rubber Co.,*
   272 U.S. 429, 47 S. Ct. 136 (1926).......................................................2, 6

*Novo Indus., L.P. v. Micro Molds Corp.,*
   350 F.3d 1348 (Fed. Cir. 2003).............................................................7, 8

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005).................................................................10

*Schumer v. Lab. Computer Sys., Inc.,*
   308 F.3d 1304 (Fed. Cir. 2002).................................................................16

*Woodland Trust v. Flowertree Nursery Inc.,*
   148 F.3d 1368 (Fed.Cir. 1998).................................................................18

STATUTES

35 U.S.C. § 102.................................................................................................16

35 U.S.C. § 254.................................................................................................7

35 U.S.C. § 255.................................................................................................7

OTHER

1927 Dec. Comm'r Pat. 228 (1926) ...............................................................2, 6

## I.    INTRODUCTION

Intermec's motion for summary judgment of non-infringement and invalidity of Palm, Inc.'s U.S. Patent Nos. 6,665,803 ("'803 patent") and 7,096,049 ("'049 patent") (collectively, the "Palm patents") is based on an erroneous claim construction and suffers from a serious failure of proof.

First, with respect to the infringement and validity of claims 6, 8, and 12 of the '803 patent and 12, 16, and 17 of the '049 patent, Intermec failed to develop any evidence that would rebut Palm's prima facie case. The Court should grant Palm summary judgment that those claims are infringed and are not invalid.

Second, Intermec's motion for summary judgment of non-infringement hinges on distorting the plain meaning of the claims by importing limitations from the specification, and treating claims with minor typographical errors as incurably defective. Both approaches to evading the scope of patent claims have been soundly rejected by the Federal Circuit. With the claims properly construed, the evidence strongly supports a jury finding that Intermec's CN3 infringes the Palm patents and thus summary judgment cannot be entered for Intermec.

Third, Intermec's motion for summary judgment of invalidity of the '803 patent relies on a prior art system called the "Trakker 944X." Intermec never before identified its Trakker product as an allegedly anticipating reference, and Intermec should be precluded from now relying on it.[1] But Intermec has failed to prove with admissible evidence that this product is prior art, and it has not proved it anticipates the '803 patent claims. Thus, summary judgment of invalidity of the '803 patent should be denied.

---

[1] Palm is filing concurrent with this brief, Palm Inc.'s Motion To Strike Evidence and Argument Pertaining to the Intermec "Trakker" Product, asking the Court to strike the Koenck declaration and exclude any reliance by Intermec on the Trakker.

Intermec's invalidity motion as to the '049 patent rests on two references, (1) an allegedly prior art Intermec product called the "700 Mono," and (2) the "Koenck '523 patent." Intermec has not presented admissible evidence that could support a finding of invalidity as to the 700 Mono, which Intermec has also failed to show with competent evidence was actually prior art. As for the Koenck '523 patent, there is no genuine dispute that it **does not** teach the '803 claims.

Finally, with respect to the other issues raised by Intermec's motion, the Court should not ignore the numerous triable factual issues precluding summary judgment that Intermec itself has overlooked.

## II.    SUMMARY OF ARGUMENT

Intermec sets forth nine bases for its motion.  D.I. 163 (Intermec Op. Br.) at 1-4.  They are all wrong as a matter of law.

1.      Intermec is wrong that simple typos, such as misspelling "subsequent" as "susbequent," preclude a finding of infringement.  Intermec Op. Br. at 1.  It is black letter law that the Court has the power and the duty to correct such simple typographical errors where the intended meaning is clear.  *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 47 S. Ct. 136 (1926); 1927 Dec. Comm'r Pat. 228 (1926); *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005).

2.      Intermec erroneously argues that the CN3 does not infringe because its power management system is not triggered by detecting a signal on a signal line.  Intermec Op. at 2. But the '803 patent does not require any causal connection between a signal detection and suspending a future power savings event.  It would be improper as a matter of law to rewrite the

claims to add such a limitation. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1115 (Fed. Cir. 2002).

3.      Intermec *concedes* that when the CN3 is placed into its charging dock, it shuts off a power savings feature scheduled to occur at a later time (such as a screen dimming after a period of activity). Intermec says this is not a "suspension of a programmed event" (as required by the '803), but rather a "switch[] from one mode to another." Yet there is nothing in the '803 patent or its prosecution history that would exclude a "switch of modes" that results in suspending a future programmed event.

4.      Intermec is wrong that the '049 patent requires the existence of a battery power level where the CN3 is useable but cannot transmit. There is nothing in the claim to require such a level and it would be improper as a matter of law to rewrite the claims to add such a limitation.

5.      Palm's expert Dr. Almeroth has demonstrated that the CN3 can transmit when in its docking station even if the battery level is too low to power transmission. Intermec's own expert confirmed one of those tests, and has provided no evidence to contradict Dr. Almeroth's conclusion. So Intermec is wrong that infringement of this element has not been proven.

6.      Intermec improperly asserts that its Trakker product is a prior art product that allegedly anticipates some claims of the '803 patent. As more fully set forth in Palm's contemporaneously filed motion to strike, Intermec obviously was aware of its own Trakker product but never identified it as an anticipating reference during discovery, nor in any expert invalidity report, and Intermec should now be precluded from relying on it. Even if Intermec could rely on the Trakker product, it has failed to prove that it is prior art or that it anticipates the '803 claims. For example, there is no admissible proof that the Trakker product suspended the future execution of a power saving feature, as required by all claims of the '803 patent.

3

7.      Intermec alleges that the 700 Mono product invalidates the '049 patent, but Intermec has failed to provide any proof that it anticipates the asserted claims. Intermec does not provide evidence on which a jury could find that the 700 Mono was even prior art. Moreover, Intermec's expert provides no demonstration of how the 700 Mono allegedly anticipates the '049 patent. Intermec instead relies solely on an early infringement contentions submitted by Palm. But Palm's contentions were directed to a different product - the 700 Color version. The 700 Mono may have had a different housing not meeting the requirements of the '049 patent, or may not have had the built-in transceiver components of the later Color system. Intermec has no proof that would answer those questions. And even the 700 Color lacks essential features of the '049 patent, such as a synchronization cradle under the now agreed construction of that term.

8.      Intermec wrongly claims that U.S. Patent 4,885,523 invalidates the '049 patent. The '523 patent reference does not teach directly powering the transceiver by the recharger as required by the asserted claims of the '049. Moreover, the '523 does not teach the requirements of synchronizing, receiving email, or receiving cell phone calls.

9.      Intermec wrongly argues that the terms "recharger connector" and "charger connector" are indefinite. A POSITA would have no trouble understanding, from the plain language and the specification, that the recharger connector and charger connector are connectors on the recharger or charger respectively.

## III.    STATEMENT OF FACTS

Palm accuses Intermec of infringing the Palm patents by making and selling a handheld computer called the CN3. The CN3 is a handheld computing device with a transceiver in a unitary housing with a display screen. It can be used to make cell phone calls, to connect with

wireless networks, and to send and receive email messages. D.I. 177 (Palm's Opening Appendix

("PA")), Ex. 39 ("Almeroth Inf. Rpt.") at ¶¶ 63-68.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████ Palm has demonstrated that the CN3 infringes every asserted claim of the

Palm patents. *Id. passim.*

In its motion, Intermec has identified fifty-nine paragraphs of purportedly "undisputed"

facts. Palm disputes at least Intermec's fact numbers 2, 7, 8, 12, 14, 24, 27 - 29, 32, 36 - 45, 47 -

54, 56, and 59 for the reasons set forth in detail in this brief.

## IV.   ARGUMENT

### A.   Palm Has Proven That Intermec's CN3 Infringes the '803 Patent

#### 1.   *Intermec Infringes The Asserted Claims Regardless of Typographical Errors.*

Intermec incorrectly argues that it does not infringe certain claims of the '803 and '049

patents due to minor typographical errors. The following table shows the terms as printed versus

Palm's last amendments prior to allowance or the obvious intended meaning:

| TABLE 1 | | |
|---|---|---|
| **Patent and claim** | **Published language** | **File History Correction, or Obvious Correction** |
| '049 Claim 7 | "providing the handheld computer <u>wit</u> a rechargeable battery" '049 Pat. 5:44. | "providing the handheld computer <u>with</u> a rechargeable battery" *See, Applicant Amendment After Non-Final Rejection of 4/12/2004 at page 3.* |
| '049 Claim 14 | "a display support <u>byte</u> | "a display supported <u>by the</u> housing" |

5

| | housing" '049 Pat. 6:12. | *Applicant Amendment After Non-Final Rejection of 4/12/2004 at page 4.* |
|---|---|---|
| '049 Claim 14 | "the transceiver configured to send and receive data while the <u>bakery</u> charge is below the low level" '049 Pat. 6:21 | "the transceiver configured to send and receive data while the <u>battery</u> charge is below the low level" *Applicant Amendment After Non-Final Rejection of 4/12/2004 at page 4.* |
| '803 Claim 23 | "a processor <u>counted</u> to a signal line" '803 Pat. 14:1 | "a processor <u>coupled</u> to a signal line" *Applicant Amendment After Non-Final Rejection of 6/13/2003 at page 12* |
| '803 Claim 12 | "programmed to suspend execution of a programmed event that would have otherwise occurred at a <u>subequent</u> moment in time." | "programmed to suspend execution of a programmed event that would have otherwise occurred at a <u>subsequent</u> moment in time." *(obvious misspelling)* |
| '803 Claim 12 | "a portable computing device <u>adapted that is</u> detachably coupleable to a communication device"." | "a portable computing device <u>that is</u> detachably coupleable to a communication device"." *(obvious extraneous word)*[2] |

These are obvious typos in the context of the claims, and the context readily reveals the correct wording. The principal that, in a patent infringement suit, the courts could properly interpret a patent to correct an obvious error was enunciated by the Supreme Court in *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 47 S. Ct. 136 (1926), 1927 Dec. Comm'r Pat. 228 (1926), ("Essex") and recently reaffirmed in *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) ("When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents.").

_____

[2] In the Response to Office Action, dated June 13, 2003, the applicant made the following revision to what became claim 12 of the '803 patent: "a portable computing device adapted ~~to couple~~ <u>that is detachably coupleable</u> to the communication device, the portable device including:..." It is obvious that the entire phrase "adapted to couple" was intended to be deleted. In any event, there is no possible confusion about what the claim means: the portable computer device is detachably coupleable to a communication device. The word "adapted" has no substantive effect on the meaning of the claim language. PA Ex. 38 at 5.

6

Intermec is wrong to assert that the only way to correct such errors is by seeking a certificate of correction under 35 U.S.C. §§ 254 or 255. Intermec Op. Br. at. 18. **The Federal Circuit repudiated that position six years ago** in *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354, 57 (Fed. Cir. 2003) ("Nothing in the enactment of either *section 255 or 254* suggests that Congress intended to overrule *Essex* or to deny limited correction authority to the district courts.") (emphasis added).  Indeed, in *Novo Industries* the Federal Circuit set forth guidelines for exercising that authority holding that it may do so "if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Id.* at 1354, 1357.

In fact, failure to make such a correction is reversible error.  In the *Hoffer* case, a dependent claim referred back to claim "38" when it was obvious that the independent claim was intended to refer to was 21. The Federal Circuit reversed the district court for invalidating the claim instead of simply correcting it to reflect its obvious meaning. *Id.* at 1348.

As in *Essex* and *Hoffer*, the errors in question in this case are the type of "harmless error" that the Court can overcome to construe the terms and correct them. A POSITA would certainly understand that these typos were errors, and the correction would have been obvious to the POSITA.  PA Ex. 43 at 13-16.  Consistent with the *Novo Industries* guidelines, the "correction is not subject to reasonable debate based on consideration of the claim language and the specification," and there is nothing in the prosecution history that "would suggest a different interpretation." Indeed, as shown in Table 1, above, the prosecution history contains the correct language for 4 of the 6 errors, and for the other two the prosecution history is consistent with the obvious correction to the language.

7

Intermec's reliance on *dicta* in a footnote in *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1331, n.1 (Fed. Cir. 2003) is misplaced.  There the court addressed a *disputed construction* of the term "base" -- *not the correction of an error*.  In a footnote, the court noted that the patentee argued that the term to be construed should be "base end" but dismissed this position stating "[T]he difference in terminology has no substantive impact on our analysis."  Thus, its further comment in that footnote is mere *dicta* having no bearing on the Court's holding.  In the footnote, the Court stated it will not rewrite claims, citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1115 (Fed. Cir. 2002).  The *Cardiac* case rejected a proposed construction that would have been inconsistent with the claim language[3] -- and again the case had *nothing to do with correcting an obvious typo*.  Federal Circuit decisions after the *Arlington* case, such as *Novo Industries* and *Hoffer,* both of which directly address correcting obvious errors, underscore that the principles set forth by the Supreme Court in the *Essex* case remain valid.

2. ***The '803 patent does not require that power management be triggered by a signal on a signal line.***

Intermec argues that the CN3 does not infringe the '803 patent because it does not switch from battery mode to external power mode <u>based on</u> detecting a docking signal, but rather based on detecting the power supplied by the docking station.  Intermec Op. Br. at 7 (¶ 12), and 19-20. This argument wrongly presumes that the '803 patent requires a causal connection between the detection of a docking signal on a signal line, and suspension of a future power savings event. *Id.*

---

[3] In rejecting the proposed construction the court in *Cardiac* stated that the proposed "construction would render the first "monitoring" term meaningless. That construction is therefore improper; this court will not rewrite claims." *Id.* at 1115 (Fed. Cir. 2002)

Claim 12[4] of the '803 provides:

12. A detachable assembly, comprising:
[1] a communication device; and
[2] a portable computing device adapted that is detachably coupleable to the communication device, the portable computing device including:
[3] a signal line that is adapted to couple to an output node of the communication device;
[4] and a processor coupled to the signal line,
[5] wherein the processor is configured to determine when the communication device is actively connected to the portable computing device;
[6] wherein the processor is programmed to suspend execution of a programmed event that would have otherwise occurred at a subsequent moment in time in order to reduce power consumption of the portable computing device.

Claim 12 requires that "the processor is programmed to suspend execution of a programmed event that would have otherwise occurred at a subsequent moment in time in order to reduce power consumption of the portable computing device," but it plainly does not require any causal link between that function and detection of a signal on a signal line. Indeed, detection of a signal is not even mentioned in the claim. Thus the basis for Intermec's non-infringement argument -- that the claim requires the suspension of the future power saving event to be *caused by* detecting a signal on the signal line (Intermec Op. Br. at 7 (¶ 12), 19-20) -- is wrong.

That Intermec wishes to rewrite an element of the claim to insert requirements that do not exist is clear from Intermec's proposed construction:

| '803, claim 12 | Palm proposed construction | Intermec proposed construction |
| --- | --- | --- |
| wherein the processor is programmed to suspend execution of a programmed event that would have otherwise occurred at a susbequent moment in time in order to reduce power consumption of the portable | the processor is programmed to stop or postpone the future execution of a power saving feature that was programmed to occur at a later time | **In response to determining a communication device is actively connected,** the processor is programmed to stop or postpone the future execution of a power saving feature that was programmed to occur at a later time without switching the computer's state |

---

[4] The differences between Claims 12 and 23 are not material to this discussion.

| computing device | | of operation. |
|---|---|---|

The bolded text in Intermec's construction has no basis at all in the language to be construed. Intermec is explicitly attempting to import limitations into the claim based on embodiments in the specification. Intermec Op. Br. at 7 (¶ 12). The Federal Circuit has repeatedly held that importing limitations not found in the claim based on the specification to be error. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. ... In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.") When that erroneous added limitation is rejected, infringement is clearly established.[5]

### 3.     *The CN3 infringes the '803 by changing modes*

Intermec argues that the CN3 does not infringe the '803 because it does not "suspend" the "power management functions" but rather it "switches from a mode where the functions are 'on' to a mode where the functions are 'off.'" Intermec Op. Br. at 8 (¶¶ 13-14) and 20. The Court should reject this word game. Obviously, if switching modes results in turning off a power saving function like dimming of the screen after a period of inactivity, then the processor is

---

[5] There is no genuine dispute at all that the CN3 comes with a communication device (a docking station)[1], is a computing device [2], has a signal line carrying the DOCK_DET signal [3], has a processor connected to the signal line [4] and has a programmable power saving event (dimming the screen) that can be scheduled to occur at a later time (after a period of inactivity) [6]. *See*, D.I. 176 at 14-15. Nor is there any dispute that the processor uses the signal on the signal line to determine when the dock is actively connected to the CN3 [5]. *Id.* at 15-19. Finally, there is no genuine dispute that by switching from battery mode to external power mode, the CN3 can be configured to turn off a power saving event that would have later occurred - such as screen dimming after a period of activity. *Id.* at 19-20; Intermec Op. Br. at 8 (¶¶ 13-14) and 20 ("the CN3 ...switches from a mode where the functions are 'on' to a mode where the functions are 'off.'").

programmed to "suspend [turn off] execution of a programmed event [dimming the screen] that would have otherwise occurred at a susbequent moment in time [after a period of inactivity] in order to reduce power consumption [screen dimming saves power]." There is nothing in the claim that would exclude accomplishing what the claim describes simply it is "switching modes." As discussed in more detail in Palm's claim construction briefing, there is nothing in the file history that would carve out "mode switching" as a way to practice this claim.

### B.    Palm Has Proven That Intermec's CN3 Infringes the '049 Patent

#### 1.    *The '049 patent does not require a "third power level"*

Intermec incorrectly argues that the '049 requires a power level "below which the handheld is useable but too low to allow radio transmission." Intermec Op. Br. at 21. The claim language only requires a level below which the handheld's battery cannot power transmission ("the low level being a level at which the battery is unable to power the transceiver when the charge is below the low level"), and above which it can ("powerable by the battery when the battery has a charge above a low level"). Nothing in the claim requires that the handheld be "useable" when the battery is below the low level. There is nothing in the specification that would suggest, much less mandate, that plain clear language of the claim be limited in the manner required by Intermec's construction.

Dr. Almeroth demonstrated that one can run down the battery in the CN3 to a level where it no longer powered radio transmission. PA Ex. 43 (Almeroth Inf. Rpt.) Exh. D, at 26; Intermec. Op. Br. at 12 (¶ 34). So clearly there is a low level "at which the battery is unable to power the transceiver when the charge is below the low level"." And there is no dispute that when the battery has a high enough charge, it can be removed from the charging dock and the transceiver will continue to operate.   Koenck Rebuttal Rpt. at ¶¶ 99-100 (IA-4674-5); Intermec Br. at 11-12 (¶ 30); Almeroth Dep. at 221-222 (IA-5051-2). Thus the CN3 is "powerable by the

11

battery when the battery has a charge above a low level". Intermec argues that because Dr.

Almeroth did not actually measure the level at which the battery cannot power the transmission,

he did not demonstrate infringement. Intermec Op. Br. at 21-22. There is nothing in the claim

that requires such a measurement.

### 2. *The CN3 has a transmitter that is powerable by the battery as required by the '049 patent.*

Intermec argues that its CN3 devices does not infringe the '049 patent because when the

CN3 is receiving external power, the transmitter is not powered by the battery. Intermec's

argument hinges on construing the '049 to require that the CN3's transmitter be powered by the

battery when the device is connected to the recharger and the recharger is connected to external

power. Intermec Op. Br. at 22.

By making this argument, Intermec is attempting to rewrite claim 1. Claim 1 is a system

claim.[6] A system capable, in ordinary use, of meeting the requirements of the claim, infringes.

*See Bai v. L & L Wings*, 160 F.3d 1350, 1352 (Fed. Cir. 1998). Element 7 of claim 1 requires "a

radio frequency transceiver coupled to the processor and powerable by the battery when the

battery has a charge above a low level." Thus, the sole question for this claim requirement is

---

[6] 1. A handheld computer system, comprising:
[1] a housing;
[2] a display supported by the housing;
[3] a processor coupled to the display;
[4] a rechargeable battery configured to power the processor and the display;
[5] a recharging connector coupled to the rechargeable battery;
[6] a recharger coupled to the recharging connector;
[7] and a radio frequency transceiver coupled to the processor and powerable by the battery when the battery has a charge above a low level, the transceiver configured to send and receive data while the battery charge is below the low level and the recharger provides charge to the rechargeable battery and to the transceiver, the low level being a level at which the battery is unable to power the transceiver when the charge is below the low level.

whether the CN3 has a transceiver that can be powered by the battery when the battery's charge is strong enough.

Intermec has never disputed that the CN3 is a portable device whose transceiver can be powered by the battery when the CN3 is not in the recharging dock. Koenck Rebuttal Rpt. at ¶¶ 99-100 (IA-4674-5); Intermec Op. Br. at 11-12 (¶ 30); Almeroth Dep. at 221-222 (IA-5051-2). That alone meets the claim requirement.

But Intermec argues that the claim requires the battery to power the transceiver when the CN3 is in the recharging dock. When the CN3 is in the recharging dock, Mr. Koenck himself demonstrates that the CN3 is designed with a selecting circuit that senses whether the battery or the line from the recharger has a greater voltage, and selects the higher voltage line to power the transceiver. Koenck Rebuttal Rpt. at 35 (¶ 105). It follows that if the battery is charged and the recharging dock is not connected to power, the selecting circuit would select the battery to power the transceiver because the battery would have a higher voltage than the zero volts on the line from the recharger. Thus, even when the CN3 is connected to the recharging dock, the CN3's transceiver is powerable by the battery - so long as the recharging dock is not powered.

There is nothing in the claim language that requires the recharging dock to be powered when coupled to the CN3. It is significant that in the '803 patent, Intermec argues that the term "configured to determine when the communication device [i.e. dock] is **actively connected**" to the portable device means being able to "determine when the portable computing device is connected to the communication device **regardless of whether the communication device is connected to an external power source**." D.I. 145 (Jt. Statement), Exh. A at 1. Thus, Intermec not only concedes, but affirmatively argues, that an **active connection** with the dock, *does not* mean the dock is plugged into external power. It follows that the requirement in this claim of

merely being "coupled" with a recharger would not require the recharger to be powered.  Jt.

Statement, Exh. B at 12-13.

### C.   The '803 Patent is Not Invalid

#### 1.   *Intermec Failed To Disclose Any Expert Opinion Concerning The "Intermec Trakker" During Discovery And The Court Should Strike Intermec's New Theory*

Intermec attempts to invalidate claims of the '803 by arguing for the first time that

Intermec's Trakker product anticipates them.  Intermec should not be permitted to raise at this

late date prior art that clearly was in its possession (an Intermec product after all), but which it

never before identified as anticipating the '803.  *See* PA Ex. 33 (Koenck Inv. Rpt.), *passim*.

Palm has separately moved to strike any evidence or argument relying on the Trakker.

In the event that Intermec is permitted to rely on Trakker, Palm points out that (1) it has

not had an opportunity to cross examine Mr. Koenck on the opinions set forth in his declaration,

(2) Dr. Almeroth has not had an opportunity to respond to those opinions, and (3) discovery is

closed as to underlying facts of the features and availability of Trakker.  So, for example, Palm

has had not opportunity to take discovery of the Trakker device to verify the features Intermec

alleges.  Thus summary judgment should be denied on that basis.

#### 2.   *Intermec Lacks Admissible Evidence That The Trakker Was Prior Art*

Finally, Intermec has failed to provide clear and convincing evidence that the Trakker

was sold in the United States during the prior art period, or that the Trakker anticipates all claim

elements of the '803 patent.  No claim chart has been provided, much less an expert report as

required by the Federal Rules.

Intermec's sole basis for asserting the Trakker is prior art at all is the unsupported

assertion made by Mr. Koenck:

14

> "I was able to obtain information regarding an Intermec product [the 944X Trakker] that was in use and on sale at least as early as 1988."

D.I. 157 (Koenck Decl.) ¶ 5. Mr. Koenck points to no evidence whatsoever -- let alone admissible evidence -- to support this contention. He does not say what information he was "able to obtain" that led him to his conclusion. Without clear an convincing evidence of priority, Trakker may not even be considered as prior art.

Moreover, as more fully discussed in Palm Inc.'s Motion To Strike Evidence and Argument Pertaining to the Intermec "Trakker" Product, filed concurrently with this brief, Mr. Koenck's declaration is filled with unsupported, incompetent, *ipse dixit* statements that are not even evidence - much less clear and convincing evidence. For example, he asserts without proof of competence as a factual witness and without documentary support:

> "[Trakker] included power management mode shifting of the sort Palm claims forms the basis of Intermec's CN3 devices' purported infringement". *Id.* ¶ 5.

> "It [the Trakker] was also sold for use with a specially designed dock that provided a data connection and a support for the device while place in the dock." *Id.* ¶ 10.

> All of paragraphs 7-8 alleging that all elements of the '803 claims are met by the Trakker. *Id.* ¶ 7.

As if these unsupported statements by Mr. Koenck were not enough, Intermec's brief makes additional factual assertions not even supported by Mr. Koenck's declaration:

> "The Auto-Shutoff functionality can be configured to either be on or off, or can be configured to activate after a set number of minutes." Intermec Op. Br. at 14 (¶ 42).

Because these assertions have no evidentiary support, they should be stricken or ignored. When these comments are properly ignored, there is no support for the assertion that the Trakker anticipates any claim of the '803 patent. In particular, there is no admissible proof that the Trakker in fact was prior art, that it had a future power saving event feature, that it had a

15

recharging dock, or that a future power saving feature could be suspended when the device was in a recharging dock - all essential requirements for a finding of anticipation.

### 3. Intermec Makes No Showing That The Trakker Included All Elements Of The Asserted Claims

Intermec has not made an effort to show that the Trakker taught other claim requirements. These include at least the following:

> "wherein the portable computing device downloads a program using the communication device once the occurrence of the time-out feature is suspended" (*e.g.* claim 17)

> "wherein the processor executes the program once the occurrence of the time-out feature is suspended, wherein the program provides a display content selected from a group of displays consisting of a clock, a digital image, and a display of real-time information provided by a data network." (*e.g.* claim 18)

> "wherein the processor suspends execution of the programmed event by suspending a time-out feature for switching off a backlight of a display while the communication device is coupled to the portable computing device." (*e.g.* claims 21, 30)

> "wherein the processor executes the program once the occurrence of the time-out feature is suspended, wherein the program provides a display content selected from a group of displays consisting of a clock, a digital image, and a display of real-time information provided by a data network." (*e.g.* claim 22).

Even Mr. Koenck's untimely and conclusory declaration is silent concerning whether each of these elements is found in the Trakker 944X. Of course, it is Intermec's burden on summary judgment (and at trial) to show by clear and convincing evidence that every element of the claims is found in the prior art reference in order for the prior art to anticipate the claim. *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1479 (Fed. Cir. 1986)("Under 35 U.S.C. § 102, anticipation requires that each and every element of the claimed invention be disclosed in a prior art reference"); *Schumer v. Lab. Computer Sys., Inc.* 308 F.3d 1304, 1315-1316 (Fed. Cir. 2002) ("Evidence of invalidity must be clear as well as convincing …. The burden of proving invalidity on summary judgment is high.)

16

In the absence of competent evidence as to these assertions, Intermec has utterly failed to prove that the Trakker invalidates any claim of the '803. Intermec is thus not entitled to summary judgment. In fact, as a matter of law a jury *could not* find that the Trakker invalidates any claim of the '803 patent.

**D.    The '049 Patent is Not Invalid**

    *1.    Intermec Lacks Clear and Convincing Evidence of Anticipation by the Mono 700*

Intermec alleges (Intermec Op. Br. at 26) that the 700 Mono products invalidates the '049 patent, but Intermec has utterly failed to provide clear and convincing proof, that the product anticipates any claim.

    a)    <u>Intermec Has Provided No Clear and Convincing Evidence the 700 Mono is Prior Art.</u>

Before the 700 Mono can anticipate anything in the '049, it must be proven to be prior art. Intermec fails to do so. ███████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

    █████

███████████████████████████████████████████████

██████████████████

███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

███████████████

███████████████████████████████████████████

████████████

███████████████████████████ Mr. Danielson's uncorroborated recollection, eight

years after the fact, of when the 700 Mono was actually available for sale cannot constitute

"clear and convincing evidence" of anticipation.  *Woodland Trust v. Flowertree Nursery Inc.*,

148 F.3d 1368, 1369 (Fed.Cir. 1998) ("[U]ncorroborated oral testimony, particularly that of

interested persons recalling long-past events, does not, of itself, provide the clear and convincing

evidence required to invalidate a patent on this ground of [prior knowledge or use by others].")

In fact, the testimony does not actually establish anticipation.  Palm filed the '049 patent on May

25, 2001, and thus if the 700 Mono went on sale on May 31, it is not prior art.  ███████████

███████████████████████████████████████████

███████████████████████████████████ And there is no

showing that the alleged anticipating features of the product were all present when it was

released.  On summary judgment, Intermec points to no competent evidence that a 700 Mono

device with all anticipating features was sold prior to the filing date of the '049 patent.

Intermec's expert, Mr. Koenck mis-cites this uncorroborated testimony and adds his own

uncorroborated and unfounded comments:

> 28. Specifically, the monochromatic version of the 700 was on sale before May 25, 2001.
> ███████████████████████████████████ While the first
> production release of the 700 mono was in May of 2001, the device was being marketed
> to customers before that time. Intermec's engineering drawings demonstrate that the 700
> mono was released for manufacturing on February 8, 2001. (ITC0090070)

PA Ex. 33 (Koenck Inv. Rpt.) at 8.  There is no testimony from Danielson that the 700 was "on

sale *before May 25, 2001*" as Mr. Koenck erroneously states.  Mr. Koenck's comment that "the

device was being marketed ... before that time" must be stricken as completely unfounded.

18

There is no showing the Mr. Koenck is independently competent to testify to that fact, nor is there any other competent evidence cited by Intermec to support the statement. Mr. Koenck's final statement about engineering drawings does not prove anything relevant. When the 700 Mono was actually offered for sale with all the anticipating features is the relevant issue.

> b)   Intermec has not proven the 700 Mono anticipated the elements of the '049 patent

Intermec does not attempt to show where each element of the asserted claims of the '049 patent is found in the 700 Mono device, even if one assumes the 700 Mono was in fact prior art. Instead of attempting to make this showing, Intermec attempts to point to one of Palm's infringement contentions, served early in the case prior to significant discovery, in which Palm considered accusing Intermec's *later* 700 *Color* device of infringement. Palm determined not to accuse the 700 Color of infringement because it lacked essential features of the '049 patent, such as a synchronization cradle under the agreed construction of the parties.

Additionally, Palm did not adduce evidence that the 700 Color synchronized its data with another computer. Nor does Intermec now point to such evidence. The parties agree that the construction of "synchronization cradle" requires the ability to synchronize data with a computer or other device:

> a device for holding the handheld computer, including a data connection *that can be used to synchronize data between the handheld computer and another computer*, and provides power.

Jt. Statement, Exh. B at 13 (D.I. 145). Intermec's expert, Mr. Koenck, notes that the synchronization process is more than merely having a data port:

> "140. As a person of ordinary skill, I understand data synchronization to be a process of establishing consistency among the data residing on more than one computer. For example, a user may have entered a meeting on June 5 on one computer and a birthday on

June 30 on another. When the two are "synchronized," the date entries should be correctly reflected on the calendar programs of both systems."

PA Ex. 33 (Koenck Inv. Rpt.) at 31.   Intermec provides no evidence that any such capability was present in the 700 Mono (or color) devices, and thus the 700 Mono does not anticipate the claims 4, 5, 6, and 9 of the '049.

In attempting to use Palm's early infringement contentions concerning a *different* and *later* device as a short-cut to arguing that the earlier 700 Mono anticipated the '049 patent, despite the fact that Palm determined there was insufficient evidence to maintain an infringement contention concerning the later device, Intermec has failed to satisfy its burden on summary judgment. It lacks any evidence, let alone clear and convincing evidence, that the 700 Mono anticipates the '049 patent. Given this failure of proof, the Court can and should enter partial summary judgment against Intermec concerning the 700 Mono.

### 2.   *The Koenck '523 patent does not invalidate the '049 patent*

The Koenck '523 patent is focused on a system for improving the performance of a battery in a portable computing device. '523 patent, Abstract (IA-446), Spl. PA Ex. 45 at 110. The principle function of the "communication means" described in the Koenck '523 patent is to provide information about the status of the battery. '523 patent col. 1:60-2:5 (IA-467); Spl. PA Ex. 45 at 110-111.

While the Koenck '523 refers to an RF transceiver, there is no detail provided about how the RF transceiver is connected to other components of the described device. In particular, there is no disclosure anywhere in the Koenck '523 patent that a recharger would simultaneously provide power to charge a battery and power to operate an RF transceiver. PA Ex. 45 (Almeroth Rebuttal Rpt.) at 111-112. This limitation is exactly the problem that the Palm '049 patent sought to improve upon. *See, e.g., id.*; IA-1452, col. 1:28-56 of the Palm '049 patent.

The Koenck '523 patent describes limited use of the RF transceiver—only communicating with an RF base station, instead describing data transfer functions using the local area network (LAN) interface.  Koenck '523 col. 19:15-29 (IA-476); PA Ex. 45 (Almeroth Rebuttal Rpt.) at 112.  In paragraphs 66-72 of his report, Mr. Koenck essentially concedes that the Koenck '523 patent does not disclose a specific kind of recharger, specifically a cradle or dock, much less a synchronization cradle, because he relies on unmotivated combinations with other references for those limitations.  *Id.* [7]

> a)   The Koenck '523 patent does not teach a handheld computer
>      system as required by all claims of the '049 patent.

Under Palm's construction, the Koenck patents do not describe a handheld computer system.  The Koenck patents do not described the specific size limitations of the described device and Mr. Koenck has offered no argument that the device is small enough to fit "in a pocket" as required by Palm's construction of the term "handheld computer." *Id.* at 125.

> b)   The Koenck '523 patent does not teach that the recharger
>      provides charge to both the battery and the transceiver directly,
>      as required by all claims of the '049 patent.

As discussed above, the Koenck '523 patent does not describe a handheld computer system in which the recharger provides charge directly to both the battery and to the transceiver. *Id.* at 110-112, 128.

---

[7] In paragraphs 63-65 of his report, Mr. Koenck claims he can provide additional information that is not contained in the patent because he was the inventor.  But that additional information is irrelevant to what is actually disclosed in the Koenck '523 patent.

      c)    <u>The Koenck '523 patent does not teach that the transceiver can transmit when the power source is connected but the battery level is too low to power transmission transmit, as required by all claims of the '049 patent.</u>

A system that uses the recharger to recharge the battery but not to directly power the transceiver, cannot meet the requirement of this claim. In such a system, the transceiver is receiving power solely from the battery, so the transceiver cannot begin transmitting while the battery level is too low to power transmission. Thus, the system cannot meet the requirement of being able to transmit when in the charger and the battery is too low to power transmission. Thus, the system described in the Koenck '523 cannot meet the requirements of this claim. *Id.* at 110-112, 128.

      d)    <u>The Koenck patents do not teach or render obvious a charger that is a recharging cradle as required by Claim 2</u>

As discussed above, the Koenck patents nowhere discloses a recharger that is a recharging cradle. *Id.* at 110-112, 135.

      e)    <u>The Koenck '523 patent does not teach a system where the recharger is a synchronization cradle as required by Claims 4, 5 6 and 9.</u>

Mr. Koenck apparently concedes that the Koenck '523 patent does not teach a synchronization cradle, because he cites no such teaching and instead relies on other prior art references for that claim element. IA 5167-5169, 5175 (Koenck Inv. Rpt.).[8] As noted above, the parties agree that the construction of "synchronization cradle" requires the ability to synchronize data with a computer or other device. Jt. Statement, Exh. B at 13 (D.I. 145). Also, as noted above, Mr. Koenck himself points out that the synchronization process is more than merely

---

[8] As shown in Palm's summary judgment motion, there is no genuine dispute that those references do not teach a synchronization cradle either. D.I. 176 (Palm 803/049 MSJ) at 13-14.

having a data port. IA-5127 (Koenck Inv. Rpt.) at 31.  Mr. Koenck has made no showing that

Koenck '523 patent teaches synchronizing the data of a handheld computer with another

computer using a synchronization cradle, and thus no evidence that the Koenck '523 patent

anticipates claims 4, 5, 6 and 9 of the '049.

<blockquote>
f)      Koenck '523 patent does not teach "draining the rechargeable battery to a charge level at which the transceiver is unable to establish an RF link" as required by Claim 11
</blockquote>

Mr. Koenck provides no citation from the Koenck '523 patent that describes this

limitation.  PA Ex. 45 (Almeroth Rebuttal Rpt.) at 164.

<blockquote>
g)      Koenck '523 patent does not teach" receiving an email," "receiving a cell phone call," having an "email program," or having "an always-on email program," as required by Claims 12, 13, 16 and 17.
</blockquote>

In his analysis of the validity of claims 12, 13, 16 and 17, Mr. Koenck does not even

mention the Koenck '523 patent.  PA Ex. 33 (Koenck Inv. Rpt.), Exh. A, at pdf pages 81-82, 90-

91.  Mr. Koenck provides no citation from the Koenck '523 patent that describes these

limitations.

## E.      Claims 3 And 9 Of The '049 Are Not Indefinite And Are Enabled.

Intermec argues that claims 3 and 9 of the '049 are indefinite.  Intermec is wrong.  The

terms "recharger connector" and "charger connector" are easily understood by laypeople, and

would certainly be understood by a POSITA.

For example, Figure 3 shows that the handheld device has a "recharging connector" that

connects to the "recharger (cradle)".  Claim 3 says that "the recharger includes a recharger

connector configured to couple to the recharging connector."

There can be no confusion that the recharger connector is the connector on the recharger

that is designed to interface with the recharging connector on the handheld device.  Claim 9 says

that "the synchronization cradle having a charger connector." The recharger and the charger

each have a connector, called a recharger connector or a charger connector respectively. That

connector interfaces with the connector on the handheld -- called the "recharging connector" --

for recharging the handheld. There terms are essentially self defining, and the patent

specification and figures removes any doubt.


## V.    CONCLUSION

For the reasons given in this brief, the Court should deny Intermec's motion for summary

judgment of non-infringement and invalidity of the '803 and '049 patents.


OF COUNSEL:

Robert T. Haslam
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065
Tel:  (650) 632-4700

Michael M. Markman
Robert J. Williams
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA  94111
Tel:  (415) 591-6000

Dated:  October 16, 2009
Public Version Dated: October 26, 2009
939244 / 31950

POTTER ANDERSON & CORROON LLP


By:  /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    Wilmington, DE 19801
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim Plaintiff
Palm, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 26, 2009, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on October 26, 2009, the attached document was Electronically Mailed to the following person(s):

Jack B. Blumenfeld
Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE  19899
JBlumenfeld@MNAT.com
rdsefiling@mnat.com

Sean T. O'Kelly
Cross & Simon, LLC
913 North Market Street, 11th Floor
PO Box 1380
Wilmington, DE  19899
sokelly@crosslaw.com

Carson P. Veach
Leland W. Hutchinson, Jr.
Jennifer L. Fitzgerald
Steven M. Evans
Jacob D. Koering
David S. Becker
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, IL  60606
cveach@freebornpeters.com
lhutchinson@freebornpeters.com
jfitzgerald@freebornpeters.com
sevans@freebornpeters.com
jkoering@freebornpeters.com
dbecker@freebornpeters.com

By:    /s/ David E. Moore
       Richard L. Horwitz
       David E. Moore
       POTTER ANDERSON & CORROON LLP
       Tel:  (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

805081 / 31950