IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERMEC TECHNOLOGIES CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-272-SLR |
| | ) |
| PALM INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 14th day of September, 2010, having heard oral argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of the following patents in suit, U.S. Patent Nos. 5,349,678 ("the '678 patent"), 5,568,645 ("the '645 patent"), 5,987,499 ("the '499 patent"), 5,468,947 ("the '947 patent"), and 5,892,971 ("the '971 patent", collectively "the Intermec patents"), as identified by the above referenced parties, shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:[1]

---

[1] The parties have identified dozens of disputed terms. The court has construed the terms most essential in view of the parties' infringement positions and positions regarding the validity of the Intermec patents. The court will stay construction of the disputed terms of U.S. Patent Nos. 6,665,803 and 7,096,049 (collectively "the Palm patents") pending completion of discovery regarding these patents.

1. "**[F]ormatted in a first style**"[2] and "**formatted in a second style different from said first style**"[3] are, for reasons stated in the court's memorandum opinion of the same date, indefinite.

2. "**[C]ommunication means for transmitting data between said server station and each of said plurality of client data collection terminals**"[4] is an RF transmission system with radio module 114 attached to the server station via an RS-232 serial communications interface, and a radio module 152 attached to each of the plurality of portable client data collection terminals via an RS-232 serial communications interface. The function is transmitting data between a server station and more than one client data collection terminals. This construction is consistent with the specification: col. 3:1-19; col. 6:29-37; col. 8:1-6; figure 3; figure 7.

3. "**[A]pplication programs**"[5] are sequences of machine-level instructions capable of execution on a processor. This construction is consistent with claims 13, 15, and 20, as well as the specification: col. 9:66-10:15.

4. "**[S]aid generated request identifying its terminal and a particular overlay module needed to continue the execution of its application program**"[6] means that the generated request particularly identifies its terminal and the particular overlay

---

[2] '678 patent, claims 1 and 9 (and dependent claims).

[3] '678 patent, claim 1 (and dependent claims).

[4] '678 patent, claim 8 (and dependent claims).

[5] '678 patent, claim 8 (and dependent claims).

[6] '678 patent, claim 8 (and dependent claims).

module needed to continue the execution of its application program. This construction is consistent with claims 1, 13 and 21, as well as the specification: col. 2:28-33; col. 3:1-3; col. 5:35-36.

5. "**[C]ommunication means for interconnecting said terminal and said server**"[7] is an RF transmission system with radio module 114 attached to the server via an RS-232 serial communications interface, and a radio module 152 attached to the client data collection terminal via an RS-232 serial communications interface. The function is interconnecting a server with a client data collection terminal. This construction is consistent with the specification: col. 7:58-59; col. 10:61-62; figure 3; figure 7.

6. "**[F]irst information portion**"[8] is a root module. This construction is consistent with the claim 2, the file history, and the specifications of both the '645 and '499 patents. (D.I. 177, ex. 10 at ITC0074214-215, ITC0074253-54; '645 patent, col. 9:51-55)

7. "**[A] communication system communicatively interconnecting said terminal and said server**"[9] is a wireless network system that enables a terminal and server to transmit and receive data using transceivers. This construction is consistent with the specification: col. 3:4-15; col. 6:24-31; col. 7:58-63; figure 3; figure 7.

---

[7] '645 patent, claim 1 ( and dependent claims).

[8] '645 patent, claim 1 (and dependent claims); '499 patent claim 1 (and dependent claims).

[9] '499 patent, claim 1 (and dependent claims).

8. "**[E]xecutable portions**"[10] are root modules or overlay modules. This construction is consistent with the specification: col. 9:44-57; col. 12:56-58; col. 14:28-31.

9. "**[A] display screen occupying substantially an entire broad side of the processing module**"[11] is a display screen that occupies the entire surface of the largest face, except for a small border, as shown in figure 9. This construction is consistent with the specification: col. 24:23-35; figure 2; figure 7; figure 9.

10. "**[O]ptical reader means for effecting the input of optical information**"[12] is a photoelectric sensor array, light source and decoding logic. The function is effecting the input of optical information.

Plaintiff argues that construction is not subject to 35 U.S.C. § 112 ¶ 6, asserting that "the word 'reader' is structural and not purely functional." (D.I. 150 at 29) (*citing TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1260 (Fed. Cir. 2008); *Phillips* 415 F.3d at 1311; *Watts v. XL Sys., Inc.*, 232 F.3d 877 (Fed. Cir. 2000)). Plaintiff fails to provide any evidence supporting this contention. The Federal Circuit, in *TriMed*, explained:

> Use of the word "means" in claim language creates a presumption that § 112 ¶ 6 applies. If, in addition to the word "means" and the functional language, the claim recites sufficient structure for performing the described functions in their entirety, the presumption of § 112 ¶ 6 is overcome—the limitation is not a means-plus-function limitation. Sufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions

---

[10] '499 patent, claim 15 (and dependent claims).

[11] '947 patent, claim 1 (and dependent claims).

[12] '947 patent, claim 1 (and dependent claims).

> of the specification or extrinsic evidence for an adequate understanding of the structure.

*TriMed, Inc. v. Stryker Corp.*, 514 F.3d at 1259-60 (citations omitted). Here, "reader" does not provide sufficient structure for performing the function of effecting the input of optical information. As discussed below, it is necessary to resort to the specification to adequately understand the requisite structure. Therefore, plaintiff has failed to overcome the presumption that this term is subject to § 112 ¶ 6.

The parties agree that a photoelectric sensor array is corresponding structure. (D.I. 180, ex. A at ¶ 1.5) Plaintiff asserts that the limitation also includes a scanner or equivalents including a CCD or CMOS digital camera. (*Id.*) Defendant asserts that the limitation also includes bar code scanner module 212 and scanner tip 214, a light source, and decoding logic. (*Id.*)

A corresponding structure for purposes of 35 U.S.C. § 112, ¶ 6 must be disclosed within the four corners of the patent or clearly within the intrinsic record. *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1208 (Fed. Cir. 2002) ("Structure disclosed **in the specification** is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.") (citation omitted) (emphasis added). The exact term "optical reader" is referenced only once in the specification:

> Various optical type scanners are also of substantial utility for quick, easy and highly accurate input of existing printed data, e.g., bar codes, text, and graphical information. **Instant type optical readers** which may be integrated into a hand-held shell module according to the present invention are disclosed in a pending application of the present inventors U.S. Ser. No. 894,689 filed Aug. 8, 1986, (now U.S. Pat. No. 4,877,949 issued Oct. 31, 1989), and the disclosure including the drawings of this

5

>pending application are incorporated herein by reference in their entirety as illustrating arrangements which may be embodied in a peripheral shell such as indicated at 250 in FIG. 10.

('947 patent, col. 11:16-27) (emphasis added).[13] The specification teaches numerous examples of readers that use optical means in reference to reading and decoding bar codes. (See e.g. '947 patent, col. 11:18-19; col. 17:1-39; col. 18:12-36) Plaintiff argues that decoding is not a limitation; that "[t]he specification discloses corresponding structures that capture an image but do not decode it." (D.I. 150 at 30) (citing '947 patent, col. 18:38-44) Plaintiff ignores the paragraph immediately preceding the cited portion, which discusses digital signal processing used in decoding the image captured:

>An image sensor has the advantage that it establishes an absolute dark signal as indicated at 331, FIG. 13A, and at 332, FIG. 13B, at the beginning of each reading operation. This allows the reader electronics the ability to always properly set up for detecting all bars and spaces of a label. . . . Digital signal processing according to the present embodiment will result in proper detection of a first black bar on a white background as illustrated in FIG. 13A and will not insert bars or spaces in the case of either FIG. 13A or FIG. 13B.

('947 patent, col. 18:9-37) Plaintiff further argues that "[t]he specification also incorporates U.S. Patent 5,019,699 to Koenck, which discloses a device for capturing digital images of printed text for **later** Optical Character Recognition processing (i.e., decoding)." (D.I. 150 at 31) (citation omitted) (emphasis added) The mere inclusion of a patent by reference does not clearly link or associate that structure to the function recited in the claim.

---

[13]U.S. Patent No. 4,877,949 is entitled "Hand Held Instant Bar Code Reader System with Automated Focus Based on Distance Measurements."

11. "**[A]n indicia reader input system**"[14] is a system for obtaining the information encoded in a symbol. This construction is consistent with the claims as well as the specification: col. 3:45-53, col. 4:56-57, col. 5:49-6:4, col. 6:17-21, col. 7:13-21; col. 7:63-65.

12. "**[A] multitasking operating system**"[15] is an operating system that permits the user to execute two or more application programs at the same time. This construction is consistent with the claims, as well as the specification: col. 3:63-4:2; col. 27:59-65; col. 30:1-4; col. 31:10-31; col. 35:43-48.

*[signature]*
United States District Judge

---

[14] '971 patent, claim 1 (and dependent claims).

[15] '971 patent, claim 1 (and dependent claims).